**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Stanford Glaberson, et al., | ) | Civil Action No. 03-6604 |
| | ) | |
| Plaintiffs, | ) | The Honorable John R. Padova |
| | ) | |
| v. | ) | |
| | ) | |
| Comcast Corporation, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**CLASS PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR CERTIFICATION OF REVISED PHILADELPHIA CLASS AND
OPPOSITION TO DEFENDANTS' MOTION TO STRIKE**

103198

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION ........................................................................................................1

ARGUMENT .............................................................................................................1

    I.       COMCAST CANNOT DELAY ACTION ON THE MOTION FOR
           CERTIFICATION BY IGNORING THE COURT'S BRIEFING ORDER. ......... 1

    II.     THE SUPREME COURT'S OPINION DOES NOT  PRECLUDE CLASS
           PLAINTIFFS' MOTION FOR CERTIFICATION. ................................................ 2

    III.    THIS COURT'S CONTINUING JURISDICTION OVER CLASS
           PROCEEDINGS UNDER RULE 23(C)(1)(C) IS UNDISPUTED AND
           INDISPUTABLE. ................................................................................................ 8

    IV.    COMCAST'S ARGUMENTS AGAINST THE EXERCISE OF THIS COURT'S
           CONTINUING AUTHORITY AND DISCRETION FAIL. .................................. 9

    V.     PLAINTIFFS' MOTION IS NOT FUTILE BECAUSE THE EXPERT REPORTS
           PROVIDE RELIABLE ANALYSES THAT SATISFY THE SUPREME
           COURT'S CONCERNS. ...................................................................................... 18

CONCLUSION........................................................................................................22

# TABLE OF AUTHORITIES

**PAGE**

## Cases

*Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304 (2013) ................................................ 17

*American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974) ...................................................... 10

*Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943 (3d Cir.1985).................................... 2

*Behrend v. Comcast Corp.*, 264 F.R.D. 150 (E.D. Pa. 2010) ................................................ 20, 21

*Behrend v. Comcast Corp.*, No. 03-6604, 2012 WL 1231794 (E.D. Pa. Apr. 12, 2012) ............ 21

*Carcieri v. Salazar*, 555 U.S. 379 (2009) ..................................................................................... 3

*Clarke v. Baptist Mem'l Health Care Corp.*, 264 F.R.D. 375 (W.D. Tenn. 2009) ...................... 12

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) ............................................................ passim

*Coopers & Lybrand v. Livesay*, 437 U.S. 463 (1978).................................................................... 8

*Dukes v. Wal-Mart Stores, Inc.*, No. C 01-02252, 2012 WL 4329009 (N.D. Cal. Sept. 21, 2012) ....................................................................................................................................... 7

*Fleischman v. Albany Med. Ctr.*, 06-CV-0765, 2010 WL 681992 (N.D.N.Y. Feb. 16, 2010) ...................................................................................................................................... 10

*Gene & Gene, L.L.C. v. BioPay, L.L.C.*, 541 F.3d 318 (5th Cir. 2008)........................................ 4

*Gene & Gene, L.L.C. v. BioPay, L.L.C.*, 624 F.3d 698 (5th Cir. 2010)................................... 4, 5

*General Tel. Co. v. Falcon*, 457 U.S. 147 (1982)......................................................................... 8

*In re Fed. Home Loan Mortg. Corp.*, Nos. 09 Civ. 832, 09 MD 2072, 2012 WL 4435292 (S.D.N.Y. Sept. 26, 2012)..................................................................................... 11

*In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3d Cir. 2008)...................................... 10

*In re Initial Pub. Offering Sec. Litig.*, 483 F.3d 70 (2d Cir. 2007) ........................................ 6, 11

*In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006) .............................................. 6

*In re Piper Aircraft Distrib. Sys. Antitrust Litig.*, 551 F.2d 213 (8th Cir. 1977).......................... 9

*In re Sanford Fork & Tool Co.*, 160 U.S. 247 (1895) .................................................................. 2

*Ladik v. Wal-Mart Stores, Inc.*, No. 13-cv-123, 2013 WL 2351866 (W.D. Wis. May 24, 2013) ................................................................................................ 7

*McNamara v. Felderhof*, 410 F.3d 277 (5th Cir. 2005)......................................... 11

*Mogel v. UNUM Life Ins. Co. of Am.*, 677 F. Supp. 2d 362 (D. Mass. 2009) ............................. 12

*Quern v. Jordan*, 440 U.S. 332 (1979) ..................................................................... 2

*Schilling v. Transcor Am.*, LLC., No. C 08-941, 2012 WL 4859020 (N.D. Cal. Oct. 11, 2012) ....................................................................................... 13

*Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939) ............................................ 2

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) .................................. 8, 10

*Washington v. Vogel*, 158 F.R.D. 689 (N.D. Fla. 1994) ...................................... 12

*Wells Fargo & Co. v. Taylor*, 254 U.S. 175 (1920)................................................. 2

*Yang v. Odom*, 392 F.3d 97 (3d Cir. 2004)............................................................ 9

**Rules**

Fed. R. Civ. P. 23 ............................................................................................. 6, 9, 12

Fed. R. Civ. P. 23(b)(2)......................................................................................... 12

Fed. R. Civ. P. 23(b)(3)..................................................................................... 11, 12

Fed. R. Civ. P. 23(c)(1)(C) ............................................................................... passim

Fed. R. Civ. P. 23(f)............................................................................................ 5, 11

Fed. R. Civ. P. 24 ................................................................................................... 13

**Other Authorities**

6 NEWBERG ON CLASS ACTIONS  § 7: 47 (4th ed. 2002) ...................................... 8, 14

Class Plaintiffs submit this reply in support of Plaintiffs' Motion for Certification of Revised Philadelphia Class ("Motion for Certification") and in opposition to Defendants' Motion to Strike Plaintiffs' Motion for Certification of Revised Philadelphia Class ("Motion to Strike") and to request that the Court grant the Motion for Certification and deny the Motion to Strike in all respects.

## INTRODUCTION

Comcast chose not to respond in detail to the Motion for Certification in spite of the Court's Order that "Defendant shall file a Response to the Motion no later than September 19, 2013." Order (ECF No. 554 at 1). It opted instead to try to delay action on the Motion to Certify by filing a Motion to Strike. As we explain in this reply brief, the Court should treat the Motion to Strike as Comcast's substantive response to the Motion for Certification, proceed to the merits of the Motion for Certification, and grant certification of the Philadelphia class and all other appropriate relief.

## ARGUMENT

I.  **COMCAST CANNOT DELAY ACTION ON THE MOTION FOR CERTIFICATION BY IGNORING THE COURT'S BRIEFING ORDER.**

Comcast's Motion to Strike should be deemed its substantive response to Class Plaintiffs' class certification motion. Class Plaintiffs understood from the status conference hearing on June 19, 2013, that the Court wished to resolve consideration of Class Plaintiffs' motion on an expedited basis consistent with the Court's desire to move this extended case forward efficiently. As the Court knows, both parties briefed the issue of whether the Court has jurisdiction to consider a motion for certification in the joint status conference statement submitted on June 12, 2013. Following the status conference hearing, this Court's Order dated June 21, 2013, directed that "Defendant shall file a Response to the Motion no later than September 19, 2013" and

103198

allowed Plaintiffs to file their response no later than October 21, 2013. Order (ECF No. 554 at

1). Comcast's response should have but did not include all substantive grounds for opposing

Class Plaintiffs' recertification motion, in compliance with the Court's Order.  Below we answer

the substantive points that Comcast chose to highlight in its Motion to Strike.  Class Plaintiffs

respectfully urge the Court to rule upon the Motion for Certification at the Court's earliest

convenience.

## II.   THE SUPREME COURT'S OPINION DOES NOT  PRECLUDE CLASS PLAINTIFFS' MOTION FOR CERTIFICATION.

Class Plaintiffs' motion is consistent with the Supreme Court's opinion and allowed

under rule of mandate precedent.  At no point does Comcast dispute the basic rule of mandate

principles set forth in Class Plaintiffs' Memorandum in Support of Motion for Certification of

Revised Philadelphia Class ("Pls.' Mem.") (incorporated here by reference). The Supreme Court

has repeatedly stated that under the rule of mandate, a district court is free to consider any matter

left open by the Supreme Court's mandate. *See* Class Pls.' Mem. at 2 (collecting Supreme Court

precedent) (ECF No. 561, under seal).[1] The Third Circuit agrees. *Bankers Trust Co. v. Bethlehem

Steel Corp.*, 761 F.2d 943, 950 (3d Cir.1985) (noting that the trial court "may consider, as a

---

[1] In a footnote, Comcast attempts to dismiss the primary Supreme Court decisions defining the rule of mandate cited by Class Plaintiffs – *Quern v. Jordan*, 440 U.S. 332, 348 n.18 (1979); *Wells Fargo & Co. v. Taylor*, 254 U.S. 175, 181-82 (1920); *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 256 (1895) – on the wholly formalistic grounds that one of them dates to 1895 and that they involve an appellate court remanding a case. Defs.' Mem. at 6 n.2. These oft-cited rule of mandate cases remain good and controlling law. None focused on or considered determinative whether remand or reversal was involved. Indeed, in its 1979 decision in *Quern*, the Supreme Court clearly expressed a core rule of mandate principle: "'While a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues.'" *Quern*, 440 U.S. at 347 n.18 (citing *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939), *citing In re Sanford Fork & Tool Co.*). *Sprague* itself did not involve a remand but came to the Supreme Court on the grant of certiorari from the appellate court's affirmance of a dismissal by the district court. *Id*. at 162. In *Sprague*, the Supreme Court determined that the issue before it was not previously disposed of in a prior decision of the Supreme Court and therefore the district court remained free to address the issue under the rule of mandate. *Id*. at 168-69. Comcast does not address, nor dispute, the controlling principle established in repeated Supreme Court decisions cited by Class Plaintiffs under the rule of mandate--that the district court may consider any matter left open by the Supreme Court's mandate. In the same footnote, Comcast seeks to discount as a "smattering of inapposite Third Circuit cases" cited by Class Plaintiffs. Comcast does not challenge the point made in the Third Circuit decisions that the absence of "remand" in an appellate court reversal does not prevent a defendant's re-trial. *See* Pls.' Mem. at 5.

103198

matter of first impression, those issues not expressly or implicitly disposed of by the appellate decision"). Nor does Comcast dispute that the only matter before the Supreme Court was the Third Circuit's decision affirming a different and broader class based on Dr. McClave's previous damages model. By its own reasoning, the Supreme Court did not have before it a damages analysis tying class wide damages to the single antitrust impact theory credited by this Court. Class Plaintiffs have now satisfied entirely the Supreme Court's criticism by submitting a motion for a narrowly-tailored class, supported by the new expert reports of Dr. McClave and Dr. Williams directly tying the effects of Comcast's anticompetitive conduct to class wide damages based exclusively on the single theory of antitrust impact allowed by this Court. Doing so is entirely permissible under Rule 23 jurisprudence[2] and the rule of mandate, allowing this Court to consider any matter left open and not foreclosed by the Supreme Court's opinion. *See* Pls.' Mem. at 2-3 (collecting cases).

Comcast argues that there is a difference between a decision to reverse and to remand, citing *Carcieri v. Salazar*, 555 U.S. 379 (2009) (Souter, J., dissenting). Defs.' Mem. at 5. In *Carcieri*, the Department of Interior had accepted a parcel of land in trust for use by an Indian tribe. *Id*. at 382. The State and others challenged its action. *Id*. The district court granted summary judgment for DOI. *Id*. at 386. On appeal, the Supreme Court's majority interpreted the phrase "now under Federal jurisdiction" in the governing federal statute to refer to a tribe under federal jurisdiction at the time of the statute's enactment. *Id*. at 382. Since the record indicated the tribe was not then under federal jurisdiction, the Supreme Court, having decided the dispositive issue of law before it, understandably reversed the summary judgment in favor of DOI. *Id*. at 382-83. Justice Souter in dissent simply stated that he would reverse and remand,

---

[2] Rule 23(c)(1)(C) allows the court to reconsider its class certification decision at any time before final judgment. *See* Pls.' Mem. at 1-2 and Part III, *infra*.

103198

3

dissenting from the majority's "straight reversal." *Id.*at 401. The case does nothing to advance Comcast's cause, or to address the question of whether Class Plaintiffs' motion is within rule of mandate jurisprudence.

Nor do Class Plaintiffs erroneously rely upon the Third Circuit's mandate rather than the Supreme Court's opinion. Defs.' Mem. at 5. Comcast misunderstands Class Plaintiffs' position. The Third Circuit's mandate, remanding the matter to this Court for "proceedings consistent with the Supreme Court's opinion," is, in turn, entirely consistent with the Supreme Court's opinion and further supports this Court's ongoing authority to entertain Class Plaintiffs' motion. *See* Pls.' Mem. at 3-4.

The Fifth Circuit's ruling in *Gene & Gene, L.L.C. v. BioPay, L.L.C.*, 624 F.3d 698 (5th Cir. 2010), does not help Comcast. Defs.' Mem. at 5-6. In *BioPay*, plaintiff brought a class action alleging violations of the Telephone Consumer Protection Act, which prohibits sending advertisements by fax without consent. *Id.* at 700. After the district court granted class certification, the Fifth Circuit reversed and remanded. *Id.* The district court then reopened discovery and recertified the class. *Id.* at 700-01. On appeal, the Fifth Circuit reversed, finding that the district court had misinterpreted its mandate in reopening discovery following remand. *Id.* at 703-05. Importantly, the Fifth Circuit did so based on its earlier holding "that 'the determinative question of whether consent can be established via class-wide proof must, given the particular facts of this case, be answered in the negative.'" *Id.* at 700 (citing *Gene & Gene, L.L.C. v. BioPay, L.L.C.*, 541 F.3d 318, 329 (5th Cir. 2008)). In other words, the dispositive issue of consent and whether it could be established by class wide proof was previously before the court and decided in its earlier ruling. In this case, by contrast, the Supreme Court majority

103198

4

expressly left open the possibility of "another methodology" on remand. (*Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013)).

The Fifth Circuit also acknowledged the "significant discretion" in the district court under Rule 23(c)(1)(C), which extends on remand "'to all areas not covered by the higher court's mandate.'" *Id.* at 703 (citation omitted). Indeed, the Fifth Circuit stated that "a district court may properly alter or amend a certification order after remand from this court on a Rule 23(f) appeal" and that "a Rule 23(f) decision does not operate to automatically divest the district court of its powers under Rule 23(c)(1)(C)." *Id.* The court stressed that its decision was narrowly limited to the specific facts before it. *BioPay*, 624 F.3d at 704 n.4 ("We emphasize that our holding that the district court misinterpreted the mandate in this case is narrowly limited to the facts and procedural posture presented here."). By contrast, the Supreme Court in *Comcast* never ruled that classwide proof of damages could not be established. Rather, what was before the Supreme Court was only the certification of a broader class based on a damages analysis the Supreme Court determined included four theories of antitrust impact and not the Class Plaintiffs' proposed narrowed class based on a revised damages analysis meeting the Court's critique by measuring class wide damages on the single theory of antitrust injury accepted by this Court.

The Supreme Court's reasoning here and the language of the Court's majority opinion – including the majority's statement that "[w]ithout presenting another methodology, respondents cannot show . . . predominance;" the statement that Dr. McClave's methodology "might have been sound, and might have produced commonality of damages, if all four of those alleged distortions remained in the case;" and the Court's footnote 6 (*Comcast*, 133 S. Ct. at 1433, 1434 & 1435 n.6) – support Class Plaintiffs' motion to certify a narrowed class based upon a damages model satisfying the very concerns raised by the Supreme Court. Nothing in the Supreme Court's

103198

5

majority opinion forecloses this Court's consideration of Class Plaintiffs' motion.  Class

Plaintiffs' motion in no way deviates from but remains consistent with – and fully satisfies – the

Supreme Court's opinion.

Comcast's attempts to distinguish cases supporting Class Plaintiffs' position are

unavailing. In *In re Initial Public Offering Securities Litigation*, 471 F.3d 24 (2d Cir. 2006), the

Second Circuit articulated the standards to govern class certifications in the Second Circuit but

determined that remanding for application of the standards set by the court was not appropriate

because under the plaintiffs' allegations and evidence, the Rule 23 predominance requirement

"cannot be met under the standards as we have explicated them." 471 F.3d at 42. The court

concluded that with respect to "at least the factors of reliance and lack of knowledge of the

scheme, the Plaintiffs cannot satisfy the predominance requirement." *Id.* at 45. The court vacated

the district court's order granting class certification and "remand[ed] for further proceedings." *Id.*

at 45. In subsequently denying reconsideration, the Second Circuit made clear that it had

previously decided only the class certification order before it and that the district court remained

free to entertain a motion to certify a different class satisfying the court's decision. *In re Initial*

*Pub. Offering Sec. Litig.*, 483 F.3d 70, 73 (2d Cir. 2007) (stating that "our ruling rejected class

certification only of the class as certified by the District Court," and that "[n]othing in our

decision precludes the Petitioners from returning to the District Court to seek certification of a

more modest class"). The Second Circuit further stated that "[d]istrict courts have ample

discretion to consider (or to decline to consider) a revised class certification motion after an

initial denial." *Id.* (citations omitted). Indeed, the Second Circuit made clear that a district court's

authority to revise a class certification order under Rule 23(c)(1)(C) does not require the use of

language specifically reserving the authority. Thus, the Second Circuit's confirmation that its

earlier decision reversing class certification did not preclude the district court from considering a subsequent class certification motion directly supports this Court's ongoing authority to consider Class Plaintiffs' motion.

Similarly, Comcast's comments concerning *Dukes v. Wal-Mart Stores, Inc.*, No. C 01-02252, 2012 WL 4329009 (N.D. Cal. Sept. 21, 2012), are misplaced. Following the Supreme Court's opinion reversing – without remand – certification of a nationwide class, the Northern District of California allowed plaintiffs to move to certify a smaller class and to attempt to address the Supreme Court's stated concerns. The district court allowed plaintiffs to file a new class certification motion, reasoning that "[t]he failure of the Supreme Court to explicitly remand the case is not dispositive" and that "[a]n appellate ruling rejecting class certification does not change this ability to consider a renewed certification motion." *Id.* at *4-5. Comcast argues that narrowing the class geographically cannot remedy the deficiency identified by the Supreme Court in Plaintiffs' expert model. Defs.' Mem. at 7-8. Comcast ignores the fact that in addition to appropriately modifying the class, Class Plaintiffs have supported their motion with supplemental expert reports, including from Dr. McClave, that meet the specific critique of the Supreme Court's majority by measuring only damages attributable to the deterrence of overbuilding and thereby "bridg[ing] the difference between supra-competitive prices in general and supra-competitive prices attributable to the deterrence of overbuilding." *Comcast*, 133 S. Ct. at 1435. And the fact that the district court in *Dukes* subsequently denied the plaintiffs' new class certification motion under entirely different facts, does not address the threshold question of this Court's continuing jurisdiction to entertain Class Plaintiffs' motion under the facts of this case. *See* Pls.' Mem. at 5 n.2.[3]

---

[3] Comcast's similar reference to *Ladik v. Wal-Mart Stores, Inc.*, No. 13-cv-123, 2013 WL 2351866 (W.D. Wis. May 24, 2013), also misses the mark. *Ladik* involved an action by female employees of Wal-Mart Stores alleging sex

103198

### III.   THIS COURT'S CONTINUING JURISDICTION OVER CLASS PROCEEDINGS UNDER RULE 23(c)(1)(C) IS UNDISPUTED AND INDISPUTABLE.

Comcast concedes that district courts have "some discretion" to review "certain" class certification orders. Defs.' Mem. at 9. Actually, this Court's broad discretion to determine the appropriateness of class certification, and to revisit such determinations throughout the proceedings, is firmly established. *See* Fed. R. Civ. P. 23(c)(1)(C); *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 and n.11 (1978) (noting that a class certification order "is subject to revision in the District Court" and that "a district court's order denying or granting class status is inherently tentative"); *General Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982) (stating that "[e]ven after a certification order is entered, the  judge remains free to modify it in the light of subsequent developments in the litigation" and that "[t]his flexibility enhances the usefulness of the class-action device"); 6 NEWBERG ON CLASS ACTIONS  § 7: 47 (4th ed. 2002) (stating that "[b]ecause class rulings may be altered or amended at any time . . ., class rulings are often reconsidered, and subsequently affirmed, altered, modified, or withdrawn" and collecting cases).

Thus, this Court's continuing authority to entertain Class Plaintiffs' motion for a revised class, well within the rule of mandate and authorized under Rule 23(c)(1)(C), is beyond dispute. The question before the Court is whether that sound discretion should be exercised.

---

discrimination that was filed following the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). 2013 WL 2351866, at *1. Plaintiffs sought certification of a regional class. *Id*. The district court denied class certification at the pleadings stage "because plaintiffs have failed to identify any common questions of law or fact" in that "they have not shown how the class they propose solves any of the problems the Court found in *Dukes*." *Id*.  *Ladik* does not involve the issue of a district court's ongoing class certification authority following a Supreme Court decision overturning a previous class certification order. And the fact that the *Ladik* plaintiffs in the different facts of their Title 7 action were found not to have adequately addressed the different problems identified in the Supreme Court's *Dukes* decision says nothing about whether Class Plaintiffs have, as they submit, satisfied exactly the problem raised by the Supreme Court's majority opinion in *Comcast* by Dr. McClave focusing this revised damages analysis on the single antitrust impact theory approved by this Court.

103198

IV.   **COMCAST'S ARGUMENTS AGAINST THE EXERCISE OF THIS COURT'S CONTINUING AUTHORITY AND DISCRETION FAIL.**

While not disputing this Court's ongoing authority over class certification proceedings under Rule 23(c)(1)(C), Comcast contends that this Court should not exercise it. The cases Comcast relies upon are readily distinguishable. Not one of the cases Comcast cites (Defs.' Mem. at 9-12) involves a request for certification of a revised class following the changed circumstances and development in the litigation of an intervening Supreme Court decision. Each case Comcast relies upon involves quite different facts than those before this Court.

In an MDL case, *In re Piper Aircraft Distribution System Antitrust Litigation*, 551 F.2d 213 (8th Cir. 1977), the district court in Missouri had dismissed plaintiff's class action allegations based on collateral estoppel after plaintiff had been denied class status by a Florida court and then had promptly voluntarily dismissed the Florida action. *Id*. at 215 & n.1. The Eighth Circuit reversed, finding that collateral estoppel did not apply due to the absence of a final judgment. *Id*. at 219. In pure dicta, in the context of discussing arguments that could be advanced to allow application of collateral estoppel to a previous class action determination in multistate district litigation, the Eighth Circuit stated that "a plaintiff ought not to have unlimited bites at the apple until he can convince a single district court that he qualifies as a class representative under Rule 23." *Id*. Neither collateral estoppel, nor repeated attempts at qualifying appropriate class representatives is involved in the case before this Court. In any event, Class Plaintiffs here do not seek "unlimited bites at the apple" but rather seek the opportunity – in response to Comcast's multiple attempts to displace this Court's class certification order – to respond to new guidance by the Supreme Court.

*Yang v. Odom*, 392 F.3d 97 (3d Cir. 2004), is equally inapposite. In *Yang*, the Northern District of Georgia denied class status to investors in a securities fraud case. *Id*. at 99. Three

members of subclasses then filed their securities fraud lawsuit in the District of New Jersey,

which dismissed on statute of limitations grounds. *Id*. On appeal, the issue before the Third

Circuit was whether *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), should be

applied to toll the one-year statute of limitations which had run on plaintiffs' securities law

claims. *Id*. The Third Circuit held that *American Pipe* tolling "applies to the filing of a new class

action where certification was denied in the prior suit based on the lead plaintiffs' deficiencies as

class representatives," but does not apply "where certification was denied based on deficiencies

in the purported class itself." *Id*. Neither of these cases involved issues or facts comparable to

those before this Court.  Neither supports Comcast's contention that a subsequent class

certification motion must be supported by new facts. Defs.' Mem. at 9.[4] In any event, Class

Plaintiffs' motion here is supported by new facts encompassed in the new expert reports by Drs.

McClave and Williams.

Comcast argues that "a new damages model" does not support a renewed class

certification motion. Again, the cases Comcast relies upon are readily distinguishable. In

*Fleischman v. Albany Medical Center*, 06-CV-0765, 2010 WL 681992 (N.D.N.Y. Feb. 16,

2010), the district court had certified a class of registered nurses with respect to two issues,

whether there was an antitrust law violation and whether there was injury to the class. *Id*. at *1.

Plaintiffs then sought to amend the previous certification order to certify issues of impact and

damages as to a narrower class of registered nurses. *Id*. In discussing the discretion afforded

---

[4] Comcast does not cite any authority for its proposition that only new facts can warrant the exercise of this Court's continuing authority over class certification proceedings. Indeed, Comcast's view is not consistent with its approach in this litigation. For example, when Comcast moved to decertify the Philadelphia Class, it pointed to no new facts but relied upon issuance of the Third Circuit's decision in *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3d Cir. 2008). When Comcast urged the Third Circuit to reverse this Court's recertification order, it did so based not on new factual developments but issuance by the Supreme Court of its decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). *See* correspondence dated June 22, 2011 from Comcast's counsel to the Third Circuit citing *Dukes* as supplemental authority (*Behrend v. Comcast Corp*., No. 10-2865 (3d Cir.)). And, of course, Comcast did not rely upon new facts in its successive motions challenging Class Plaintiffs' pleadings.
103198

district courts to alter class certification rulings at any point before final judgment under Rule 23(c)(1)(C), the *Fleischman* Court expressed its view that "'there must be some development or change in circumstances to merit revisiting a class certification decision.'" *Id*. at *2 (citation omitted) (citing, *inter alia*, *McNamara v. Felderhof*, 410 F.3d 277, 281 (5th Cir. 2005) ("[T]he district court noted that [petitioners] have identified no new legal authority or a changed circumstance . . . .")). No such new legal authority or changed circumstances were before the court in *Fleischman*. Here, by contrast, the Supreme Court's decision constitutes a development in the normal course of this litigation, reflecting new legal authority and changed circumstances.

Comcast's reliance upon *In re Federal Home Loan Mortgage Corp.*, Nos. 09 Civ. 832, 09 MD 2072, 2012 WL 4435292 (S.D.N.Y. Sept. 26, 2012), is also misplaced. In that securities fraud case, the district court, after an evidentiary hearing, denied class certification after finding that plaintiff's expert was "unreliable and unpersuasive" and that plaintiff had failed to demonstrate that the market for the securities at issue was efficient, making the fraud on the market presumption inapplicable and resulting in individual issues of reliance predominating over common issues. *Id*. at *1. The district court denied reconsideration and the Second Circuit denied plaintiff's petition for an interlocutory appeal under Fed. R. Civ. P. 23(f). *Id*. While acknowledging that district courts have "'ample discretion' to consider a revised class certification motion after an initial denial," (citing *In re Initial Public Offering Securities Litig.*, 483 F.3d at 73), the district court determined the circumstances before it did not "warrant re-argument or additional expert testimony about the efficiency of the market." *Id.* Again, there was no intervening Supreme Court decision or other changed circumstances in that case.

Comcast also cites two cases in which district courts denied subsequent class certification motions based on Rule 23(b)(3) after plaintiffs initially unsuccessfully sought certification under

Rule 23(b)(2). In *Washington v. Vogel*, 158 F.R.D. 689 (N.D. Fla. 1994), plaintiffs alleged that defendants engaged in a policy targeting minorities for pretextual traffic stops designed to seize property from the persons stopped. *Id*. at 690. The district court denied class certification after determining that the plaintiffs lacked standing to seek injunctive relief. *Id*. at 691. Plaintiffs had sought class certification only under Rule 23(b)(2). *Id*. at 690-91. After the standing problem was identified and class certification denied, plaintiffs sought certification under Rule 23(b)(3). The court denied plaintiffs' request, because the subsequent motion to certify was not filed within the ninety-day period allowed under local rules and because plaintiffs failed to show good cause for their failure initially to seek certification under Rule 23(b)(3) in the alternative. *Id*. at 692. The court determined that there were no changed circumstances. *Id*. Essentially the same dissimilar fact pattern was present in *Mogel v. UNUM Life Insurance Co. of America*, 677 F. Supp. 2d 362, 366 (D. Mass. 2009) (noting that "class action plaintiffs can, and often do, move for certification under alternative provisions of Rule 23" and declining to allow plaintiffs to seek certification under Rule 23(b)(3) after a previous denial of certification under Rule 23(b)(2)). Neither case involved changed circumstances, including issuance of an intervening Supreme Court decision. And, of course, Class Plaintiffs have always and only invoked Rule 23(b)(3) in this litigation.

Also far afield is *Clarke v. Baptist Memorial Health Care Corp.*, 264 F.R.D. 375 (W.D. Tenn. 2009). Defs.' Mem. at 10. In that case, plaintiffs moved to intervene to add two additional class representatives. *Id*. at 376. The district court applied the multiple factors governing intervention motions and denied the request, finding that plaintiffs had knowledge about problems with their proposed class representatives more than two years before seeking intervention, and allowed a deadline to pass without filing a motion to intervene. *Id*. at 376, 377-78. The court reasoned that affording plaintiffs the chance to substitute class representatives

103198

12

under Rule 23 is common practice, but stated that under the facts before it "this Court must apply the timeliness test by looking solely at *this* particular case." *Id*. at 381. The district court simply denied intervention under Rule 24 under the particular, differing facts before it.

Comcast's citation to *Schilling v. Transcor America*, LLC., No. C 08-941, 2012 WL 4859020 (N.D. Cal. Oct. 11, 2012), is similarly unavailing. In *Schilling*, the district court granted defendants' motion for partial summary judgment, finding as a matter of law that the conditions of confinement plaintiff challenged did not, on a class basis, constitute violations of the Eighth or Fourteenth Amendments. *Id*. at *1. In other words, "there was a determination of *no liability* for the class as defined by the Court on plaintiffs' request." *Id.* Plaintiffs then moved to amend and certify subclasses. In denying leave to amend, the court recognized "its responsibility to continually review the appropriateness of a certified class in light of developments subsequent to class certification" but found that, under the specific facts before it, "the only relevant development was the Court's determination that plaintiffs could not demonstrate a constitutional violation on their claims as a class-wide matter." *Id.* The court emphasized the distinct factual scenario before it – where a district court had granted defendants' motion for summary judgment on a finding of no liability for the class and that decision had not been reversed on appeal. *Id.* By contrast, under the facts now before this Court, there has been no determination of "no liability" at summary judgment. To the contrary, this Court has allowed Class Plaintiffs' Section 1 market allocation claim to proceed to trial under the rule of reason standard and has allowed their Section 2 monopolization claims to proceed to trial as set forth in the Court's summary judgment decision. Nothing in the Supreme Court's decision reflects any determination that Class Plaintiffs could not establish class wide damages. Unlike the facts in *Schilling* and the other cases Comcast cites, the Supreme Court's opinion constitutes a new development and changed

circumstances subsequent to class certification, fully warranting consideration of Class Plaintiffs' motion based on updated expert reports fully conforming to the Supreme Court's majority decision.

Comcast also argues that Class Plaintiffs' motion should not be entertained because discovery has closed. That argument ignores the fact that this Court's authority over class certification proceedings under Rule 23(c)(1)(C) is ongoing. Rule 23(c)(1)(C) allows district courts to alter or amend class certification order "before final judgment." As a leading treatise states, "[t]he ability of a court to reconsider its initial class rulings . . . is a vital ingredient in the flexibility of courts to realize the full potential benefits flowing from the judicious use of the class action device." 6 NEWBERG ON CLASS ACTIONS § 7:47 (4th Ed. 2002) (further noting that there may be "important and legitimate reasons for moving for reconsideration of an initial class ruling, especially a class denial order, following trial on the merits . . ."). The fact that discovery closed before the Supreme Court issued its decision provides no basis for declining to exercise the Court's clear ongoing authority to consider Class Plaintiffs' motion. In any event, this Court entered an order explicitly scheduling the filing of the motion for a revised class by Plaintiffs and anticipating new expert reports thereby indicating that Plaintiffs' motion was consistent with the Court's pretrial plan.

Comcast resurrects its contention that Class Plaintiffs somehow made a "tactical" decision not to submit a revised damages analysis earlier. Class Plaintiffs already addressed this issue in their memorandum in support of class certification (Pls.' Mem. at 7-8, ECF No. 561) and at the June 19, 2013 status conference hearing (June 19, 2013 Status Conf. Tr. at 12-15, ECF No. 556).  Comcast lifts a sentence in the transcript of an earlier, April 24, 2012, scheduling conference convened by the Court after its summary judgment ruling. The Court, as part of a

103198

14

broader discussion, stated, "So let me give the parties a last-ditch effort to file supplemental expert report."  Apr. 24, 2012 Scheduling Conf. Tr. at 12 (ECF No. 525).  The fuller context from which that snippet is drawn was a trial preparation discussion in which the Court asked whether any *Daubert* or other motions were anticipated by the parties. *Id.* at 7. Comcast's then-lead counsel, Mr. Carroll, answered that for Comcast to definitely decide on the filing of *Daubert* motions, greater clarification of Class Plaintiffs' damages claims was needed following the Court's summary judgment ruling. *Id.* at 7-8. Class Plaintiffs' counsel, Mr. Goldberg, argued that Dr. McClave's damages methodology was consistent with the Court's class certification ruling, which had been affirmed by the Third Circuit, and with the Court's summary judgment decision. *Id*. at 9-10.  After listening to the parties' positions, the Court stated that "[m]y desire is to put each side in a position to try their best case, that's the idea of the adversary process." *Id.* at 12. The Court further explained that "it's in keeping with that desire for me to get a little more serious about what to do regarding damages here before we go to trial." *Id.*  The Court then gave the parties the opportunity to file a supplemental expert report. *Id.*  In his follow-up supplemental damages analysis submitted June 8, 2012 (ECF No. 512, at 9), Dr. McClave explained to the Court why his damages methodology was indeed consistent with the Court's summary judgment ruling.  At the same time, Dr. McClave stated that "if the jury were to decide that damages should only be calculated for the five counties in which RCN initially planned to overbuild, the results recorded in my Initial Declaration can be used to show" the total of such damages and that "my basic methodology allows for a number of alternative calculations, as I have described in my subsequent reports and in this one." May 8, 2012 Supplemental Report of Dr. James T. McClave at 9 (ECF No. 512, under seal).

103198

15

The above pre-trial scheduling conference exchange of course pre-dated the granting of certiorari by the Supreme Court, the vacating of the trial date before this Court and the subsequent issuance of the Supreme Court's opinion.  It clearly provides no basis for Comcast's argument that Class Plaintiffs were somehow dilatory in failing to submit a renewed class certification motion and damages analysis addressing the Supreme Court's concerns before the Supreme Court issued its decision.  The Supreme Court has now issued a decision addressing the issue of class wide damages based only on Dr. McClave's initial damages model. Basic fairness, the rule of mandate, and this Court's continuing jurisdiction over class proceedings under Rule 23(c)(1)(C) compel the conclusion that this Court may and should consider and grant Class Plaintiffs' motion fully satisfying the Supreme Court majority's opinion. Doing so will indeed "put each side in a position to try their best case . . . the idea of adversary process."

Comcast is wrong in arguing that it would be "unfair and prejudicial to Comcast" to allow Plaintiffs' recertification motion. Comcast does not provide any explanation or factual basis for its unadorned claim of prejudice but rests exclusively on its erroneous contention that Class Plaintiffs have somehow changed course.  They have not; Comcast's unsupported claim of prejudice therefore fails. Importantly, Comcast's argument in this respect ignores the interests of the thousands of Comcast subscribers whose legitimate claims would be wiped out if this Court does not consider Class Plaintiffs' renewed motion.

Class Plaintiffs have narrowed the class in order to further address the Supreme Court majority's view of the link between damages and the suppression of overbuilding theory of antitrust impact accepted by this Court. In doing so, Class Plaintiffs are not reversing course in any manner.

103198

16

Nor do Plaintiffs argue that each franchise is a separate market.  Comcast mistakenly conflates the relevant market with the unit of measurement for the analysis.  Although Dr. McClave analyzed data at the franchise level, nowhere in his report does he describe each franchise as a separate market.  Dr. McClave modeled at the franchise level to differentiate between franchises in which RCN had approval to overbuild and those in which it did not.[5] Comcast misunderstands Dr. McClave's analysis.

Starting the class period in January 2003 is consistent with and supported by the fact that, as Class Plaintiffs previously explained, that was "when RCN's build out would have created a uniform price effect throughout the five counties but for Comcast's anticompetitive action." Pls.' Mem. at 11 (citing Dr. Williams' Report at 12, 31-32).  In his report, Dr. Williams explains in detail how he determined that Comcast's overbuilding in the five counties created an antitrust impact beginning in January 2003.  Dr. Williams' Report at 11-21.   Comcast misunderstands Dr. Williams' analysis.

Comcast also asserts (in a single passing sentence) that if Plaintiffs can move to recertify the narrowed class then the Court should permit it to renew its summary judgment motion, but Comcast does not cite a single case to support this misguided position.[6]  More importantly,

---

[5] "I have estimated the model at the franchise level to enable its application to specific franchises in the Philadelphia market.  This refinement allows the model to focus on the effects of suppression of overbuilding, consistent with the Supreme Court decision." Class Re-Certification Report of Dr. James T. McClave at 3 ("Dr. McClave's Report") (ECF No. 561, under seal).

[6] Comcast asserts that this Court in its summary judgment decision noted that the "Comcast Advantage Plan" began in 2000 and that this Court had previously rejected Plaintiffs' theory of antitrust impact concerning DBS access to Comcast's regional sports programming in part on grounds the conduct began before the beginning of the original class period. Defs.' Mem. at 17-18. Comcast's position is irrelevant to any class certification issue or its motion to strike. And Comcast ignores the factual record. As Class Plaintiffs pointed out in their summary judgment opposition brief, the CAP program went through seven iterations beginning in 2000 and continuing at least through December 31, 2004. *See* Class Pls.' Mem. in Opp'n to Defs.' Mot. for Summ. J. at 79 (ECF No. 448, under seal) (citing App. 2, L. Burke Ex. 13).

Amazingly, in a footnote, Comcast contends that if the Supreme Court's opinion in this litigation allows Plaintiffs to proceed with their class certification motion, then "the same should be true for Comcast's arbitration defense to class certification." Defs.' Mem. at 18 n.10 (*citing Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304 (2013)).

103198

Comcast is wrong on the merits. As described above, Class Plaintiffs have carved out a narrower

class on the same antitrust impact theory that this Court, the Third Circuit, and the Supreme

Court all approved of – deterred overbuilding.

## V.   PLAINTIFFS' MOTION IS NOT FUTILE BECAUSE THE EXPERT REPORTS PROVIDE RELIABLE ANALYSES THAT SATISFY THE SUPREME COURT'S CONCERNS.

Dr. McClave's and Dr. Williams' latest expert reports fully satisfy the Supreme Court's

concerns, and so the Court should certify the proposed narrowed class.  Dr. McClave's report

plainly calculates damages attributed to the deterrence of overbuilding.  Dr. McClave's Report at

4-6; Pls.' Mem. at 12-15.  The Supreme Court also stated in a footnote that to measure damages

resulting from overbuilding on a class wide basis, Dr. McClave's model would have to show

either "that the extent of overbuilding (absent deterrence) would have been the same in all

counties, *or* that the extent is irrelevant to effect upon ability to charge supra-competitive prices."

*Comcast*, 133 S. Ct. at 1435 n.6 (emphasis added).    Dr. McClave's revised damages model goes

further and satisfies both prongs.  As Dr. McClave explains:

> The model "establish[es] the requisite commonality of damages" in both
> of the ways that the Supreme Court endorsed in footnote 6 of its majority
> opinion. Slip op. 10 n.6.  It meets the first of the two prongs by starting the
> damages period in 2003, by which time (as Dr. Williams concludes) RCN
> would have overbuilt all five counties to such an extent that each of the
> franchises for which RCN had approval to overbuild would satisfy the
> FCC's 50/15 threshold that results in incumbent cable operators lowering
> prices. The model thus shows "that the extent of overbuilding (absent
> deterrence) would have been the same in all counties". Id. The model also
> complies with the second prong. It does so by proving that all subscribers
> in the five counties would have paid lower, competitive prices once the
> requisite 50/15 threshold is met. The model thus demonstrates that "the
> extent" of overbuilding within the five counties "is irrelevant to [the]

---

Comcast ignores the fact that in 2006 it expressly stipulated, and this Court ordered, that all claims asserted in this action by class members "shall be resolved in court  . . . and not through arbitration" and that Defendants "shall not for any purpose in this action, including class certification, (i) allege that an arbitration agreement . . . applies . . . or (ii) file a motion to compel arbitration  . . . ." Stipulation & Order filed Nov. 20, 2006 ¶¶ 1 & 2 (ECF No. 182).

103198

> effect [of deterring overbuilding] upon the ability [of Comcast] to charge
> supra-competitive prices" in each of the five counties. *Id.*

Dr. McClave's Report at 8 n. 15.[7]

Dr. Williams' Second Supplemental Expert Report also addresses both prongs of footnote 6 of the Supreme Court's majority opinion. Dr. Williams first provides economic analysis to support his conclusion that "[b]ut for Comcast's anticompetitive conduct, RCN would have offered video services comparable to those offered by Comcast to at least 50 percent of the households in the area in the five counties in which it was authorized to serve and would have served at least 15 percent of the households in that area that subscribe to multichannel video programming distributor ("MVPD") services by January 1, 2003." Dr. Williams' Report at 6. As to the second prong, Dr. Williams concludes that "*[i]ndependent of, and in addition to,* the fact that the extent of overbuilding would have been the same in all franchises in the five counties for which RCN had received FCC approval, Comcast has had the ability to charge supra-competitive prices to each of the subscribers located in the five counties because Comcast has had market power in the five counties. . . ." *Id.* at 30 ¶ 30 (emphasis added). Dr. Williams explains that Comcast "has monopoly power and, therefore, the ability to exclude competition and charge supra-competitive prices throughout the five counties" and that Comcast's market power derives from its market allocating swaps and acquisitions, including Comcast's agreement with AT&T resulting in Comcast's ownership of Lenfest. *Id.* at 30 ¶¶ 30 & 31. Thus, Comcast's market power allowed Comcast to deter overbuilding and charge supra-competitive prices in the five counties. *Id.* at 31 ¶¶ 32 & 33.

---

[7]As Dr. McClave further states, "I relied on the FCC approval documents to identify those franchises within the five counties that would have been overbuilt by RCN 'but-for' Comcast's alleged deterrence. I have relied on the analysis of Dr. Michael Williams, plaintiffs' economic expert, to determine that RCN would have built out sufficiently to satisfy the FCC 50/15 criteria in those locations by January 2003. By including only these franchises as overbuilt in the 'but-for' world, I have conservatively assumed that no additional overbuilding by RCN or another overbuilder would have occurred in the Philadelphia DMA absent Comcast's anticompetitive conduct." Dr. McClave's Report at 8 (citations omitted).

103198

Plaintiffs' damages model is therefore wholly "consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation." *Comcast*, 133 S. Ct. at 1433. By relying on Dr. McClave's revised model and Dr. Williams' findings, Plaintiffs provide a common methodology for proving impact and damages on a classwide basis.

The alleged "deficiencies" that Comcast points out in just two and a half pages should have been brought as a fully briefed, substantive response to Plaintiffs' motion. No matter. Even if Comcast had complied with the Court's Order and discussed its arguments at length, they would still fall flat.

 **Inclusion of Philadelphia County.** Dr. McClave properly included Philadelphia County in his damages analysis.[8] Philadelphia County is part of the clustered area that RCN had planned to overbuild. Dr. McClave's Report at 3 n.4; Dr. Williams' Report at 6-12. Plaintiffs allege that unlawful acts by Comcast deterred overbuilding, and Philadelphia County was one of the five counties where RCN had obtained approval to overbuild. Therefore, Dr. McClave reasonably assumes that in the "but-for" world of no unlawful behavior, RCN would have overbuilt in Philadelphia County.

**Overbuilding threshold**. Contrary to Defendants' position (Defs.' Mem. at 19), Dr. Williams bases his conclusion about the time it would have taken RCN to reach the 50% overbuilding threshold on sound economic analysis and real world examples that include RCN. For instance, Dr. Williams' Second Supplemental Expert Report includes the following:

---

[8] Comcast states that this Court has held "that RCN did not overbuild that [Philadelphia] county as a result of Comcast's unlawful lobbying efforts. . . ." Defs.' Mem. at 18-19 (citing *Behrend v. Comcast Corp.,* 264 F.R.D. 150, 165 (E.D. Pa. 2010)). The Court made no such holding. In the page of its decision recertifiying the Philadelphia Class cited by Comcast, this Court just stated that "[i]n reaching our conclusion on the common impact of clustering on overbuilding, however, we place no reliance on Dr. Singer's opinions regarding Comcast's lobbying activities," based on the *Noerr-Pennington* doctrine. 264 F.R.D. at 175.

103198

- Table 1, p. 10: showing the length of time from FCC approval date to franchise agreement date, has four RCN examples (Boston, New York City, Redwood City, CA, and Washington, D.C.)

- Table 2, pp. 13-18: showing the required build-out times for overbuilders, cites seven areas in which RCN overbuilt (Collingdale Borough, PA, Norwood Borough, PA, Redwood City, CA, San Diego, CA, Tinicum Township, PA, Upper Darby Township, PA, and Yeadon Borough, PA)

- Table 3, pp. 20-21: showing how fast overbuilders actually build out their systems, provides an RCN example (Boston, MA)

These tables and the accompanying economic analysis show that the extent of overbuilding would have been the same throughout the five counties. Dr. William's Report at 31.[9]

    **<u>Service of all communities</u>**. Comcast raises a non sequitur in arguing that Class Plaintiffs must show that RCN would have served all communities in the five counties. The Supreme Court required nothing of the sort. The Supreme Court stated that Plaintiffs had to show only that "the extent of overbuilding (absent deterrence) would have been the same in all

---

[9] Comcast's further criticism of Dr. Williams' economic analysis as not supported by the record (Defs.' Mem. at 19 n.12) is wrong and is directly contrary to the record. In its class certification decision, the Court already determined that it was not persuaded by Comcast's arguments concerning the extent of RCN's likely overbuilding absent Comcast's anticompetitive conduct. *Behrend v. Comcast Corp.*, 264 F.R.D. at 175 (stating, "We also are not persuaded by his [Dr. Teece's] criticisms based on his assertions that it is unlikely that RCN would have overbuilt in each of these five counties" and that "[w]hat Dr. Teece considers 'unlikely,' Dr. Singer considers to be the common evidence of antitrust impact, namely that RCN was stymied in its efforts by Comcast's predatory behavior."). In its summary judgment ruling, the Court has already ruled that Class Plaintiffs have presented evidence sufficient to go to a jury on their market allocation section 1 claim under rule of reason analysis; that there is sufficient evidence to reach the jury that Comcast acted with predation toward RCN via its targeted discounts; that Plaintiffs provided "evidence from which a jury could find that Comcast's conduct did deter overbuilding, as well as evidence that RCN stopped overbuilding because of Comcast's conduct;" and that "the Class has met its summary judgment burden of presenting evidence sufficient to create a genuine fact issue on the antitrust impact theory that clustering deters overbuilding." *Behrend v. Comcast Corp.*, No. 03-6604, 2012 WL 1231794, at *17 and *32-33 (E.D. Pa. Apr. 12, 2012). In its summary judgment decision, the Court further noted that it had credited Dr. Williams and the Class's theory that clustering deters overbuilding in general, and noted that the Court had previously found this theory of antitrust impact "was supported by empirical evidence and was based upon the factual record." *Id.* at *32.

103198

counties," not communities.  *Comcast*, 133 S. Ct. at 1435 n.6.  RCN's actual FCC approval covering the specified communities in the five counties (Dr. William's Report at 8) is entirely consistent with Dr. Williams' conclusion that but for Comcast's anticompetitive conduct, RCN would have overbuilt to the same extent in the five counties.  *Id.* at 31.

**Benefits of overbuilding**.  Plaintiffs have never contended that the benefits of overbuilding are limited to the specific overbuilt communities, and Comcast cannot cite to any statement by Dr. McClave or Dr. Williams to the contrary.  In fact, Dr. McClave's latest report expressly establishes that overbuilding in a county has a price effect throughout the county.  Dr. McClave's Report at 8.  His report soundly rejects the hypothesis that only overbuilt communities benefit from competition.  *Id.*

## CONCLUSION

For the above reasons and those discussed in Class Plaintiffs' Memorandum in Support of Motion for Certification of Revised Philadelphia Class, the Court should treat the Motion to Strike as Comcast's substantive response to the Motion for Certification, deny the Motion to Strike, grant the Motion for Certification, and award Class Plaintiffs all other appropriate relief.

Dated: October 8, 2013                                  Respectfully submitted,

                                                        s/ *David Woodward*
                                                        Samuel D. Heins
                                                        Vincent J. Esades
                                                        David Woodward
                                                        Jessica N. Servais
                                                        HEINS MILLS & OLSON, P.L.C.
                                                        310 Clifton Avenue
                                                        Minneapolis, MN 55403
                                                        Tel: (612) 338-4605
                                                        Fax: (612) 338-4692

103198

Barry Barnett
Daniel H. Charest
LeElle Krompass
SUSMAN GODFREY L.L.P.
901 Main Street, Suite 5100
Dallas, TX 75202-3775
Tel: (214) 754-1900
Fax: (214) 754-1933

Anthony J. Bolognese (#36937)
Joshua H. Grabar (JHG 1707) (#82525)
BOLOGNESE & ASSOCIATES, LLC
Two Penn Center Plaza
1500 JFK Boulevard, Suite 320
Philadelphia, PA 19102
Tel: (215) 814-6750
Fax: (215) 814-6764

Joseph Goldberg
FREEDMAN BOYD HOLLANDER GOLDBERG
URIAS & WARD, P.A.
200 Third Street NW
Albuquerque, NM 87102
Tel: (505) 842-9960
Fax: (505) 842-0761

**Attorneys for Plaintiffs**

103198

**CERTIFICATE OF SERVICE**

The undersigned attorney certifies that on this 8th day of October, 2013, he caused the foregoing document and related [Proposed] Order to be served on counsel of record via the Court's ECF system.

s/ *David Woodward*
David Woodward

103198