IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STANFORD GLABERSON, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COMCAST CORPORATION, et al. | : | NO. 03-6604 |

**MEMORANDUM**

**Padova, J.**                                                                                    **November 12, 2013**

Presently pending before the Court is the Motion of Comcast Corporation, et al. ("Comcast") to strike the Plaintiffs' Motion to recertify the Philadelphia class.  (Doc. No. 564.) For the reasons that follow, we deny Comcast's Motion and permit it to file a substantive response to the Plaintiffs' Motion.

**I.     BACKGROUND**

On March 27, 2013, the United States Supreme Court reversed the United States Court of Appeals for the Third Circuit's affirmation of our decision granting Plaintiffs' Motion to certify the Philadelphia class.  *Comcast Corp. v. Behrend*, ___ U.S. ___, 133 S. Ct. 1426 (2013).  In our decision, we had rejected all but one of the Class's four proposed liability theories, finding only that the "overbuilding" theory was capable of proof through evidence common to the class. *Behrend v. Comcast Corp.*, 264 F.R.D. 150, 174 (E.D. Pa. 2010).  We went on to reject Comcast's objection to the expert report of the Class's damages expert, Dr. James McClave, and found that his damages model was evidence common to the class of antitrust impact.  *Id.* at 184-91.  The Third Circuit affirmed our decision, *see Behrend v. Comcast Corp.*, 655 F.3d 182 (3d Cir. 2011) ("the Third Circuit opinion"), but the Supreme Court held that the class action was improperly certified under Rule 23(b)(3).  *Comcast Corp.*, 133 S. Ct. at 1432.

The Supreme Court reasoned that a model that proposed to serve as evidence of damages in a class action must measure only damages attributable to the specific liability theory that the trial court has accepted. *Id.* at 1433 (stating that the Class's "model purporting to serve as evidence of damages in this class action must measure only those damages attributable to [the overbuilding] theory"). Because the Class failed to present a methodology that limited the damages to only the overbuilding theory, the Court held that the Class had failed to satisfy the Rule 23(b)(3) predominance requirement with regard to antitrust impact. *Id.* (stating "respondents' model falls far short of establishing that damages are capable of measurement on a classwide basis. Without presenting another methodology, respondents cannot show Rule 23(b)(3) predominance: Questions of individual damage calculations will inevitably overwhelm questions common to the class."). The Court opined that Dr. McClave's methodology could include damages that were not the result of the alleged wrong. *Id.* at 1434 (stating that, merely requiring at the class certification stage that the Class make assurances that it can prove antitrust impact and the resulting damages without labyrinthine individual calculations, is insufficient since "such assurance is not provided by a methodology that identifies damages that are not the result of the wrong".) The Court concluded that because of the McClave model's inability "to bridge the difference between supra-competitive prices in general and supra-competitive prices attributable to the deterrence of overbuilding, Rule 23(b)(3) cannot authorize treating subscribers within the Philadelphia cluster as members of a single class." *Id.* at 1435.

Immediately following this concluding sentence, the Court inserted a footnote stating,

> We might add that even if the model had identified subscribers who paid more solely because of the deterrence of overbuilding, it still would not have established the requisite commonality of damages unless it plausibly showed that the extent of overbuilding (absent deterrence) would have been the same in all counties, or that the extent is irrelevant to [have an] effect upon [the] ability to charge supra-competitive prices.

*Id.* at 1435 n.6 (parenthetical in original; bracketed material added).  The Court then issued its disposition of the appeal, stating "The judgment of the Court of Appeals for the Third Circuit is reversed." *Id.* at 1435.  Notably, the Court did not specifically state that the case was remanded for further proceedings.  In its Order returning the mandate to this court, the Third Circuit stated "In accordance with the remand of this case by the United States Supreme Court, it is ORDERED that the case is hereby summarily remanded to the United States District Court for the Eastern District of Pennsylvania for proceedings consistent with the Supreme Court's opinion. . . ."  (Doc. No. 546.)

On May 24, 2013, we set a status conference for June 19, 2013, and directed the parties to submit a joint status conference statement.  In the statement, the parties identified a dispute between them concerning the meaning of the Supreme Court's judgment.  The Class contended that this "Court has the authority to consider the proposed motion for certification of a more modest class," based on the "long settled" rule of mandate that "a district court may consider any matter left open by the Supreme Court's mandate."  Joint Statement at 2.  It argued that "[n]othing in the Supreme Court's majority decision or in the Third Circuit's mandate precludes this Court's consideration of the proposed motion for certification of a narrowed class" because only Dr. McClave's previous damages model was under consideration, and the majority decision itself stated that "[w]ithout presenting *another* methodology, respondents cannot show Rule 23(b)(3) predominance."  *Id.* (quoting *Comcast Corp.*, 133 S. Ct. at 1433).  Comcast responded that the Supreme Court's mandate "leaves no room for a third motion for class certification.  The Third Circuit's order affirming class certification was reversed, not vacated or remanded, and that deliberate choice precludes a third class motion, even as to a narrowed class."  Joint Statement at 7.  Comcast argued that under the rule of mandate, an inferior court has no power or

3

authority to deviate from the mandate issued by an appellate court, and the Supreme Court's outright reversal was completely dispositive of whether the Class could ever meet Rule 23(b)(3).

Following the conference, we entered a scheduling order providing that the Class should submit a motion to recertify no later than August 19, 2013, appending to its submission any expert reports upon which it would rely. (Doc. No. 554.) We directed Comcast to file a response by September 19, 2013, and gave the Class the opportunity to file a reply brief by October 21, 2013. (*Id.*) The Class timely filed its motion (Doc. No. 560), and Comcast filed a Motion to Strike the Class's Motion.[1] (Doc. 564.)

---

[1] In response to the Motion to Strike, the Class filed a Reply asserting that because Comcast "chose not to respond in detail to the Motion for Certification," we should treat Comcast's Motion to strike as its substantive response, and grant certification. (Doc. No. 565 at 1.) We summarily reject this assertion. At the June 19, 2013 status conference, we discussed with the parties the appropriate process for rendering ripe for decision the issue concerning the meaning of the mandate. The following exchange occurred with counsel for Comcast:

> MR. KORPUS: So, your Honor, our view as in our case management statement is that the plaintiffs should not be allowed to file yet another class certification motion and the sixteenth or more expert report in support of it.
> THE COURT: Well, ordinarily that would come before the Court by a defense motion.
> MR. KORPUS: It could come by defense motion.
> THE COURT: Or it could come through them filing a motion for class certification.
> MR. KORPUS: So our view, your Honor, is that if you hold after this conference that they can file the motion then the first step should be [a] threshold hearing on the motion that we will bring to dismiss it as being procedurally improper before we all start spending money on experts and evidentiary hearings and retaining experts to respond to theirs.
> THE COURT: Well, I'm going to allow them to file the motion and I'm also fully cooperative with your suggestion that we'll first deal with the issue as to whether or not that motion should be dismissed before we get involved in taking testimony on class certification.
> . . .
> THE COURT: All right, so that what we're going to do is we're going to handle the issue that you have raised. We're going to handle the issue that you have raised within the context of a motion to be filed by the plaintiff.
> MR. KORPUS: Well, within a motion by the defense to dismiss the motion

## II.     DISCUSSION

In *In re Sanford Fork & Tool Co.*, 160 U.S. 247 (1895), the United States Supreme Court outlined a lower court's responsibility to follow an appellate court's mandate when considering a case on remand:

> When a case has been once decided by this court on appeal, and remanded to the circuit court, whatever was before this court, and disposed of by its decree, is considered as finally settled.  The circuit court is bound by the decree as the law of the case, and must carry it into execution according to the mandate.  That court cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded

*Id.* at 255.  The lower court "may consider and decide any matters left open by the mandate of this court," and the "opinion delivered by this court at the time of rendering its decree may be consulted to ascertain what was intended by its mandate."  *Id.* at 256.  Because any matter decided on appeal is considered "finally settled," *id.* at 255, lower courts must distinguish matters that have been decided on appeal, and are beyond their jurisdiction, from matters that were not decided on appeal.  *See EEOC v. Kronos Inc.*, 694 F.3d 351, 361-62 (3d Cir. 2012) (stating that district courts "'may consider, as a matter of first impression, those issues not expressly or implicitly disposed of by the appellate decision'" (quoting *Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 950 (3d Cir. 1985)).

---

that they are going to file.
THE COURT:            They're going to file a motion first and you're going to file a motion to dismiss.
MR. KORPUS:          Motion to dismiss, strike, maybe a motion to strike, whatever you want to call that.
THE COURT:            Okay.  That's the way.  Satisfactory?
MR. KORPUS:          That's satisfactory to me, your Honor.

(N.T. 6/19/13 at 20:4-19; 22:2-13.)  In filing its Motion to Strike, Comcast was following the procedure the Court approved for framing the mandate issue.

In *Kronos*, the Third Circuit reiterated that "[i]t is axiomatic that on remand for further proceedings after [a] decision by an appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal. . . . A trial court must implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces."[2] *Id.* (quoting *Bankers Trust Co.*, 761 F.2d at 949). The requirement that a district court comply in full with the appellate court mandate has several important purposes:

> It preserves the proper allocation of authority within the tiered federal court structure set up by Congress and the Constitution. It promotes predictability and finality by notifying parties of the matters that remain open on remand and committing the rest to final resolution. And it safeguards stability in the administration of justice, for the orderly functioning of the judiciary would no doubt crumble if trial judges were free to disregard appellate rulings. *See Litman v. Mass. Mut. Life Ins. Co.*, 825 F.2d 1506, 1511–12 (11th Cir. 1987) ("Post mandate maneuvering in the district courts would undermine the authority of appellate courts and create a great deal of uncertainty in the judicial process."); cf. *Hutto v. Davis*, 454 U.S. 370, 375, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982) ("[U]nless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be.").

---

[2] The Third Circuit has stated that,

> What it means to follow the "spirit" of a mandate, however, is uncomfortably ambiguous. When we remand a case for further proceedings, we of course cannot expect the court to do what we mean, even when what we mean cannot reasonably be understood from what we say. We do, however, expect that the court will implement faithfully the mandate it receives. When a case is remanded for a limited purpose, faithful implementation of the mandate means that the district court will narrowly tailor the proceedings to ensure that the proceedings do not enlarge themselves beyond their narrowly mandated scope, as they are wont to do. Faithful implementation of a mandate is often more art than science, and considerable discretion is owed to the district court. This discretion, of course, has outer limits, and at least one of those limits should be clear: When the proceedings on remand result in an outcome that is grossly incongruous with the purpose for which the remand was ordered, the spirit of the mandate is violated.

*CGB Occupational Therapy, Inc. v. RHA Health Serv., Inc.*, 499 F.3d 184, 197 (3d Cir. 2007).

*Id.* (quoting *United States v. Kennedy*, 682 F.3d 244, 253 (3d Cir. 2012) (some citations omitted in *Kronos*)).

In the specific context of how the law of mandate applies to a motion for class certification following the reversal of an earlier certification decision, the parties have not cited and we have not found any binding authority from the Third Circuit. However, other Courts of Appeals have addressed the issue of how the law of mandate governs additional certification proceedings. In *In re Initial Pub. Offering Sec. Litig.*, 483 F.3d 70 (2d Cir. 2007), the plaintiffs sought panel reconsideration of the United States Court of Appeals for the Second Circuit's order reversing the district court's grant of certification. *Id.* at 72-73. The panel had reversed because it determined that the class failed the predominance requirement in Fed. R. Civ. P. 23(b)(3). *Id.* at 72. In deciding the reconsideration request, the Second Circuit stated that its prior ruling "rejected class certification only of the class as certified by the District Court. Nothing in our decision precludes the Petitioners from returning to the District Court to seek certification of a more modest class, one as to which the Rule 23 criteria might be met, according to the standards we have outlined." *Id.* at 73. District courts, it stated, "have ample discretion to consider (or to decline to consider) a revised class certification motion after an initial denial," as long as it is not in conflict with the appellate ruling. *Id.* (stating also that "[o]f course, a district court's discretion to [alter or amend a class action ruling] . . . cannot be exercised in conflict with an appellate ruling after a Rule 23(f) appeal.") Thus, the Second Circuit made clear that, following remand, the district court has discretion to consider a modified class certification, as long as it is consistent with the issues decided by the appellate court.

The United States Court of Appeals for the Fifth Circuit in *Gene & Gene, L.L.C. v. BioPay, L.L.C.*, 624 F.3d 698 (5th Cir. 2010), reversed a district court's decision to re-certify a

7

class, following a first interlocutory appeal that reversed a certification decision. In *Gene & Gene*, the plaintiffs filed a class action suit against BioPay for alleged violations of the Telephone Consumer Protection Act of 1991, 476 U.S.C. § 227. *Id.*, 624 F.3d at 700. The district court certified the class and BioPay brought an interlocutory appeal under Fed. R. Civ. P. 23(f). *Id.* The Fifth Circuit reversed the district court's recertification, holding that as a matter of law, "the determinative question of whether consent [to receive fax transmissions] can be established via class-wide proof must, given the particular facts of this case, be answered in the negative." *Id.*

After remand, the plaintiffs had moved for recertification and to reopen discovery. They were permitted to conduct additional discovery to attempt to establish class-wide proof of lack of consent. *Id.* at 701. The district court re-certified the class, finding that a newly discovered software database maintained by defendant created common questions of whether the recipients of the unsolicited fax transmissions consented to receiving them. *Id.* 702. Defendants again appealed, arguing that the initial appellate decision and the law of the case doctrine foreclosed further discovery and did not leave open the possibility of recertification of the same class on remand.[3]

The Fifth Circuit reversed the re-certification, reasoning that, under the law of the case doctrine, "'an issue of law or fact decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal.'" *Id.* at 702 (quoting *Fuhrman*

---

[3] The class, as originally certified and reviewed in *BioPay I* was defined as: "All recipients of unsolicited telefacsimile messages and/or advertisements within the State of Louisiana which were transmitted and/or initiated by or on behalf of BIOPAY, L.L.C., between the dates of January 21, 2001, and through the present." 624 F.3d at 700. In plaintiff's motion for re-certification, it sought certification of a nearly identical class, only excluding therefrom any contact for which comments appeared in "Sales Notes" field of the newly discovered software database. *Id.* at 702 n.2.

*v. Dretke*, 442 F.3d 893, 896 (5th Cir. 2006). Because it had already decided in the first Rule 23(f) appeal that class-wide proof of consent could not be established as a matter of law, it determined that the district court erred in considering the "new" evidence disclosed during reopened discovery:

> To be certain, in some scenarios, a district court may properly alter or amend a certification order after remand from this court on a Rule 23(f) appeal; a Rule 23(f) decision does not operate to automatically divest the district court of its powers under Rule 23(c)(1)(C). For example, if a district court certifies a class after preliminary discovery and the court of appeals affirms pursuant to Rule 23(f), and then during subsequent discovery it becomes clear that the district court needs to alter, amend, or even decertify the class, the district court can and should do so under Rule 23(c)(1)(C). . . .
> This case presents a very different procedural posture. Discovery was complete when Gene successfully moved for class certification. When this court exercised its discretion and heard BioPay's Rule 23(f) appeal, both parties had another full opportunity to argue the propriety of the class certification decision. When this court reversed, we held that "the determinative question of whether consent can be established via class-wide proof must, given the particular facts of this case, be answered in the negative. Gene has failed to advance a viable theory of generalized proof" concerning lack of consent. . . . The district court interpreted this language, along with this court's remand "for further proceedings not inconsistent with this opinion," as meaning "there is nothing in the opinion to preclude Gene from asserting a viable theory on remand." . . .
> The issue of class certification was expressly decided by this court in *BioPay I* and "that should be the end of the matter." . . . We "reverse[d] the district court's certification of the class and remand[ed] this case for further proceedings not inconsistent with this opinion," . . . not for a renewed foray into the same issue but for a merits determination and disposition of Gene's individual claim. We agreed to "accelerate appellate review" and exercised our unfettered discretion under Rule 23(f) to hear *BioPay I* prior to final judgment in order to "permit the parties to proceed in confidence about the scope and stakes of the case thereafter." . . . *BioPay I* is the law of this case. Accordingly, we hold that the district court misinterpreted the mandate and abused its discretion in reopening discovery as to class certification on remand. Under the procedural posture presented here, *BioPay I* foreclosed the re-litigation of the class certification and the district court erred in considering the "new" evidence disclosed during the reopened discovery.

*Id.* at 703-04 (internal citations omitted).

We also consider a district court decision.  In *Dukes v. Wal-Mart Stores, Inc.*, Civ. A. No. 01-2252, 2012 WL 4329009 (N.D. Cal. Sept. 21, 2012) the United States District Court for the Northern District of California faced the same issue we face here:  whether the plaintiffs could seek re-certification of a narrowed class after the Supreme Court reversed the initial certification. The Supreme Court had reversed class certification due to insufficient evidence of commonality among the 1.5 million members of the proposed nation-wide class.  *Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ___, 131 S. Ct. 2541, 2555-56, 2561 (2011).  The Supreme Court's opinion contained the identical concluding sentence as that here; it ordered that "The judgment of the Court of Appeals is *Reversed*," *id.* at 2561 (emphasis in original), without specifically providing for further proceedings thereafter on remand.

Following the return of the mandate to the United States Court of Appeals for the Ninth Circuit, that Court remanded the case to the district court with the following instruction:  "We remand to the district court to comply with the United States Supreme Court's decision . . ." *Dukes v. Wal-Mart Stores, Inc.*, 659 F.3d 801 (9th Cir. 2011).  Thereafter, plaintiffs sought leave to file a fourth amended complaint, in which they redefined the proposed class, reducing its size from 1.5 million to between one-hundred thousand and several-hundred thousand members; added information about Wal-Mart's corporation management structure; and alleged specific examples of discriminatory conduct.  *Dukes v. Wal-Mart Stores, Inc.*, 2012 WL 4329009, at *1. Wal-Mart filed a motion to dismiss or strike the class allegations from the fourth amended complaint, asserting *inter alia* that the Supreme Court's mandate precluded the plaintiffs from proposing a new class.  *Id.* at *3-4.  It argued that, since the Supreme Court did not remand the case for any further class proceedings, the district court could only adjudicate the individual claims of the named plaintiffs.  *Id.* at *4.  It asserted that a district court, following a reversal of a

class certification decision, may only consider recertification of a modified class if the Supreme Court's mandate "explicitly allowed" it to do so on remand. *Id.* at *4.

The district court disagreed, holding that "lower courts are obliged to execute the terms of a mandate [and] are free as to anything not foreclosed by the mandate." *Id.* at *5 (citing *United States v. Kellington*, 217 F.3d 1084, 1092-93 (9th Cir. 2000)). The district court cited Ninth Circuit precedent that "expressly held that failure to explicitly remand the case does not necessarily curtail the discretion of the district court." *Id.* (citing *United States v. Cote*, 51 F.3d 178, 181-83 (9th Cir. 1995); *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1404-05 (9th Cir. 1993); *Caldwell v. Puget Sound Elec. Apprenticeship & Training Trust*, 824 F.2d 765, 767 (9th Cir. 1987)). Accordingly, because the Supreme Court only decided that there was insufficient evidence to establish a nationwide policy of discrimination, the district court concluded that the plaintiffs could bring a narrower class action claim, which the Supreme Court had not considered and did not foreclose. *Id.* In a later opinion, the district court found that plaintiffs could not establish the Rule 23 requirements for their narrowed class. *Dukes v. Wal-Mart Stores, Inc.*, Civ. A. No. 01-2252, 2013 WL 3993000 (N.D. Cal. Aug. 2, 2013).

Based on the Third Circuit's law of mandate authorities, we find that the Supreme Court's mandate in *Comcast Corp.* does not preclude a new motion on behalf of the Plaintiffs for certification of a narrowed class based on a revised antitrust impact analysis. That case law clearly states that any issue left open by an appellate court may be addressed at the discretion of the district court, as long as it is consistent with the appellate court's decision, irrespective of an explicit order remanding the matter for further proceedings. *See Kronos*, 694 F.3d at 362 (stating that when the appellate court does not issue specific instructions on how to proceed the question must be determined from the nature of the case); *Casey v. Planned Parenthood of S.E. Pa.*, 14

F.3d 848, 859-60 (3d Cir. 1994) ("The Commonwealth argues that the Supreme Court's decision to affirm in part and reverse in part rather than to vacate our decision demonstrates that it did not contemplate further substantive proceedings in the district court. . . . Appellate courts, however, sometimes reverse even when they make clear in the body of the opinion that they intend the district court to reopen the record on remand. . . . Therefore, its directions to reverse in part are not dispositive." (internal citations omitted).)

The Supreme Court reversed our prior certification order because the Plaintiffs' proffered evidence on antitrust impact was not limited to the overbuilding theory, and thus failed the predominance requirement in Fed. R. Civ. P. 23(b)(3). Importantly, the Supreme Court did not decide as a matter of law that class-wide proof could never be established. Rather, the Supreme Court's opinion clearly contemplates that a damages model that measured only the antitrust impact of the overbuilding theory, and also plausibly showed that the extent of overbuilding, absent deterrence would have been the same in all counties, or that the extent was irrelevant to any effect upon Comcast's ability to charge supra-competitive prices, could be common evidence. *Comcast Corp.*, 133 S. Ct. at 1435 n.6. Under the Third Circuit's law of mandate, Plaintiffs' ability to certify a significantly narrowed class based on a more limited antitrust impact model that satisfies Footnote 6 is a "matter[] left open by the mandate," since it was not decided by the Supreme Court in the first appeal and deemed finally settled.

The Fifth Circuit's decision in *Gene & Gene*, where the plaintiffs attempted to recertify virtually the same class definition, is clearly distinguishable. Here, like in *Dukes*, the plaintiffs have proposed a narrowed class, not the same class. The new class definition, upon which we express no opinion here, is Plaintiffs' attempt to satisfy Footnote 6. Thus, as the Second Circuit held in *In re Initial Pub. Offerings Sec. Litig.*, nothing in the Supreme Court's decision precludes

12

Plaintiffs "from returning to the district court to seek certification . . . according to the standards [the Court] has outlined."[4]

Accordingly, we conclude that the Plaintiffs' proposed motion for certification of a narrowed class with a revised antitrust impact analysis consistent with the Supreme Court's decision is not precluded as a matter of law. Comcast's Motion to strike is denied and we shall direct that it file a substantive response to the Plaintiffs' Motion to recertify the class.

An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova

_____

John R. Padova, J.

---

[4] We note that Comcast also argues in its Motion to strike that (1) Rule 23 does not permit successive class motions based on new expert theories, and (2) that Plaintiffs, having earlier chosen to rely on what proved to be a flawed antitrust impact theory and overbroad class definition, should not be allowed another bite at the apple. *See* Def. Br. at 9-17. The cases Comcast cites for its first proposition — district court decisions from around the country discussing motions to add new class claims — are not binding Third Circuit authorities and do not address the specific procedural posture we face here, i.e., a recertification after an appeal. The second proposition is based upon Comcast's assertion that to permit Plaintiffs to change their litigation strategy at this late date would be fundamentally unfair and prejudicial to Comcast. We fail to see merit in this assertion. Since we determine that the Supreme Court's disposition did not preclude Plaintiffs from seeking recertification, it necessarily follows that Plaintiffs can proceed based on a new antitrust impact model and class definition that complies with the Supreme Court's disposition.

   We also note that Comcast argues that the Motion for recertification is futile because Dr. McClave's new expert report does not calculate damages attributable to the allegedly unlawful deterrence of overbuilding by RCN. *See* Def. Br. at 18. We do not attempt to address this argument in deciding the Motion to strike. Comcast's futility argument addresses the merits of Dr. McClave's analysis, rather than whether Plaintiffs are precluded from showing common evidence of antitrust impact as a matter of law. We opt to defer any discussion of the merits of the new antitrust impact model until after the parties have fully developed the record.