IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STANFORD GLABERSON, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COMCAST CORPORATION, et al. | : | NO. 03-6604 |

### ORDER-MEMORANDUM

**AND NOW**, this 12th day of December, 2014, upon consideration of Plaintiffs' Motion for Certification of a Settlement Class and Preliminary Approval of Class Action Settlement (Docket No. 608), Defendants' Response thereto (Docket N. 609), and the arguments of counsel at oral argument held on December 9, 2014, **IT IS HEREBY ORDERED** that the Motion is **GRANTED**.

---

On December 8, 2003, Plaintiff Stanford Glaberson and other plaintiffs filed this class action on behalf of subscribers to video programming services (other than solely to basic cable services) in sixteen counties in Pennsylvania, New Jersey, and Delaware provided by Defendants Comcast Corporation, Comcast Holdings Corporation, Comcast Cable Communications Inc., Comcast Cable Communications Holdings Inc., and Comcast Cable Holdings LLC (collectively "Comcast"). Plaintiffs alleged that Comcast had, *inter alia*, unlawfully divided and allocated markets and engaged in other conduct in violation of Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1 and 2) in the Philadelphia, Pennsylvania area that reduced and deterred overbuilder competition and allegedly caused Plaintiff and the putative class to pay supracompetitive prices. Plaintiff and other putative class representatives subsequently filed an Amended Class Action Complaint on February 20, 2004; a Second Amended Class Action Complaint on May 17, 2004;

and a Third Amended Consolidated Class Action Complaint on May 23, 2006.  Each iteration alleged that Defendants had also unlawfully divided and allocated markets and engaged in other conduct in violation of Sections 1 and 2 of the Sherman Act in the Chicago, Illinois, area and asserted claims on behalf of two classes (a "Philadelphia Class" and a "Chicago Class") for treble damages and injunctive relief.  On April 15, 2014, the claims on behalf of the Chicago Class were withdrawn.  On April 16, 2014, Plaintiff filed the currently operative Fourth Amended Class Action Complaint (the "Complaint") alleging similar claims solely on behalf of a revised Philadelphia Settlement Class (as further defined below) consisting of Comcast subscribers in five Pennsylvania counties.  Comcast denies Plaintiff's allegations.  The parties have reached a tentative settlement, and Plaintiffs now move for (1) certification of a settlement class, and (2) preliminary approval of the settlement.

## I.     CERTIFICATION OF SETTLEMENT CLASS

A proposed class settlement must satisfy the requirements of Federal Rule of Civil Procedure 23(a), that is, that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a), see aslo Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997) (requiring proponents of class certification to demonstrate that all of the Rule 23(a) requirements are met).  Additionally, "the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2548 (2011).  Under Rule 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is

superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3). "A party seeking class certification must affirmatively demonstrate his compliance with" Rule 23. <u>Dukes</u>, 131 S. Ct. at 2551. "Class certification is proper only 'if the trial court is satisfied, after a rigorous analysis, that the prerequisites' of Rule 23 are met." <u>In re Hydrogen Peroxide Antitrust Litig.</u>, 552 F.3d 305, 309 (3d Cir. 2008) (quoting <u>Gen. Tel. Co. of Sw. v. Falcon</u>, 457 U.S. 147, 161 (1982)).

The Court finds that Plaintiffs satisfy all requirements for certification of the Philadelphia Settlement Class, specifically the criteria set out in Federal Rules of Civil Procedure 23(a) and 23(b)(3). We make the following findings with regard to Rule 23(a):

1. The parties agree that the number of persons who currently subscribe or who subscribed to Comcast's video programming services (other than solely to basic cable service) between January 1, 2003 and December 31, 2008 in the counties of Bucks, Chester, Delaware, Montgomery and Philadelphia, Pennsylvania is at least 800,000. Accordingly, this Court finds that the numerosity requirement is satisfied.

2. Plaintiffs allege, *inter alia*, that Comcast entered into a series of market allocating swap and acquisition agreements with other cable companies that caused all class members to be harmed by paying supracompetitive prices. Plaintiffs further allege that all class members paid supracompetitive prices because of anticompetitive conduct. Accordingly, this Court finds that the commonality requirement is satisfied.

3. Plaintiffs allege, *inter alia,* that Comcast's swaps and acquisitions reduced and deterred overbuilder competition and enabled Comcast to raise prices to supracompetitive levels, thereby injuring all Class members in the same manner. Accordingly, this Court finds that the typicality requirement is satisfied.

4. The adequacy requirement under Federal Rule of Civil Procedure 23(a)(4) has two requirements: (1) "the interests of the named plaintiffs must be sufficiently aligned with those of the absentees," and (2) "class counsel must be qualified and must serve the interests of the entire class." Georgine v. Amchem Prods, Inc., 83 F.3d 610, 630 (3d Cir. 1996). We find that Plaintiff Glaberson was a subscriber of video programming services from Comcast, other than solely basic cable services, during the relevant period from January 1, 2003 to December 31, 2008. Accordingly, there are no conflicts that would render the named Plaintiff an inadequate representative of the Class at large. Co-Lead Class Counsel Barry Barnett, Esq. of Susman Godfrey L.L.P. and David Woodward, Esq. of Heins, Mills & Olson, P.L.C. have extensive experience and expertise in antitrust, class action, and complex civil litigation, and have successfully prosecuted antitrust class actions and other similar cases in courts in this district and throughout the United States, including, for the last decade, this Action. Accordingly, this Court finds that the adequacy of representation requirement is satisfied.

We find that the newly described class satisfies the predominance and superiority requirements of Rule 23(b)(3). Rule 23(b)(3) requires us to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). We previously held that Plaintiffs' liability theory, that Comcast's conduct reduced and deterred overbuilder competition, was capable of class-wide proof. See Behrend v. Comcast Corp., 264 F.R.D. 150, 165 (E.D. Pa. 2010). The Supreme Court did not disturb this finding on appeal; it only found that Plaintiffs' damages model was improper because it failed to measure only the antitrust impact attributable to that liability theory. Comcast Corp. v. Behrend, 133 S. Ct. 1426 (2013). Additionally, in adjudicating Comcast's Motion

pursuant to Federal Rule of Civil Procedure 56, we held that "the Class can proceed to trial on Count I of the Third Amended Complaint, the Sherman Act section 1 rule of reason claim, based upon the theory that Comcast's creation of the Philadelphia cluster through its acquisition of competing cable companies and its swapping of cable assets constituted a horizontal allocation of markets." Behrend v. Comcast Corp., Civ. A. No. 03-6604, 2012 WL 1231794, at *33 (E.D. Pa. Apr. 12, 2012).

We find that Plaintiffs' additional expert reports from Dr. Michael Williams and Dr. James T. McClave are evidence that is common to the Class supporting their theory that Comcast's swaps and acquisitions constituted unlawful horizontal market allocations and that Comcast engaged in other anticompetitive conduct directed toward RCN, Inc. that reduced overbuilder competition and caused all Class members to pay supracompetitive prices. These expert reports provide common proof of antitrust injury in fact and tie damages directly to liability and Plaintiffs' theory of antitrust impact. Accordingly, we conclude that Plaintiffs have satisfied the predominance requirement for settlement purposes because common questions present a significant aspect of the case and may be resolved for all Class members in a single common judgment.

We also find that Plaintiffs satisfy the superiority requirement. "The requirement that a Section (b)(3) class action be the 'superior' method of resolving the claims ensures that there is no other available method of handling it which has greater practical advantages." Behrend v. Comcast Corp., 245 F.R.D. 195, 206 (E.D. Pa. 2007) (citations omitted). Rule 23(b)(3) identifies various factors as pertinent to a superiority finding, including class members' interests in pursuing separate actions, the extent of any independent litigation already begun by class members, the desirability of concentrating the litigation in this forum, and the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D). See also

Amchem, 521 U.S. at 615 (noting that the superiority requirement ensures that resolution by a class action will "'achieve economies of time, effort, and expense, and promote . . . uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results'" (citation omitted)).

We previously ruled that Plaintiffs satisfied the superiority requirement of Rule 23(b)(3) with respect to a broader proposed Philadelphia-area class. Behrend, 245 F.R.D. at 212, which was not disturbed on appeal. We find that the superiority requirement continues to be satisfied because the proposed settlement will "achieve economies of time, effort, and expense, and promote . . . uniformity of decisions as to persons similarly situated." Amchem, 521 U.S. at 615. Such economies will be achieved for both litigants and the Court, avoiding hundreds of thousands of individual adjudications that would otherwise place a "potentially crushing strain on and inefficient application of judicial resources." See In re Processed Egg Prods. Antitrust Litig., 284 F.R.D. 278, 294 (E.D. Pa. 2012); see also In re Prudential Ins. Co. Am. Sales Practice Litig., 148 F.3d 283, 315-16 (3d Cir. 1998); In re Wellbutrin SR Direct Purchaser Antitrust Litig., Civ. A. No. 04-5525, 2008 WL 1946848, at *9 (E.D. Pa. May 2, 2008) (stating that "denying certification would require each direct purchaser to file suit individually at the expense of judicial economy and litigation costs for each party" (citation omitted)); Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd., 246 F.R.D. 293, 313 (D.D.C. 2007) (reasoning that "[t]his action involves the resolution of numerous complex issues of law and fact common to all putative class members" and that "[a]s class certification provides the opportunity for an efficient resolution of these substantial issues for the entire class in a single forum, the Court concludes that the class action mechanism is a superior litigation approach in this case" (internal citation omitted)); In re Relafen Antitrust Litig., 218 F.R.D. 337, 346 (D. Mass. 2003) (finding superiority and noting that "it appears that resolution by

class action would provide substantial savings in time, effort, and expense"). Additionally, class certification in this settlement context eliminates the likelihood of inconsistent rulings. See In re Relafen Antitrust Litig., 218 F.R.D. at 347 (noting that "[r]esolution by class action would instead promote uniform treatment of class members — similarly situated direct purchasers who allege similar injuries resulting from the same conduct"). Finally, the settlement class will also eliminate the expense, time, and judicial resources needed for continued litigation.

Accordingly, the Motion for Certification of a Settlement Class is **GRANTED**, and we certify the following Settlement Class under Fed. R. Civ. P. 23:

> All cable television customers who 1) currently subscribe or 2) previously subscribed at any time from January 1, 2003 to December 31, 2008, to video programming services (other than solely to basic cable services) from Comcast, or any of its subsidiaries or affiliates, in the counties of Bucks, Chester, Delaware, Montgomery and Philadelphia, Pennsylvania. The Class excludes governmental entities, Defendants, Defendants' subsidiaries and affiliates and this Court.

This Court further **APPOINTS** Plaintiff Stanford Glaberson as representative of the Settlement Class and **APPOINTS** the following counsel as Co-Lead Class Counsel under Rule 23(g):

> David Woodward, Esq.
> Heins Mills & Olson, P.L.C.
> 310 Clifton Avenue
> Minneapolis, MN 55403
> Telephone: (612) 338-4605
> Facsimile: (612) 338-4692
>
> Barry Barnett, Esq.
> Susman Godfrey L.L.P
> 901 Main Street, Suite 5100
> Dallas, TX 75202-3775
> Telephone: (214) 754-1900
> Facsimile: (214) 754-1933

## II.  PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT

Review of a proposed class action settlement is a two-step process. The first step involves preliminary approval of the settlement and the successive procedural steps, such as notice, the

claim form, and the schedule for a final fairness hearing.  See Gates v. Rohm & Haas Co., 248 F.R.D. 434, 438 (E.D. Pa. 2008); Curiale v. Lenox Grp., Inc., Civ. A. No. 07-1432, 2008 WL 4899474, at *4 (E.D. Pa. Nov. 14, 2008).  At the preliminary approval stage, a settlement is presumed to be fair when the negotiations were at arm's length, there was sufficient discovery, and the proponents of the settlement are experienced in similar litigation.  See In re GMC Pick-Up Truck Fuel Tank Prods. Liability Litig., 55 F.3d 768, 785 (3d Cir. 1995); Gates, 248 F.R.D. at 444.  At step two, after notice to the class and an opportunity for class members to object to the proposed settlement or otherwise be heard, the Court determines whether the settlement is fair, reasonable and adequate and whether the settlement should be finally approved under Federal Rule of Civil Procedure 23(e).  In re National Football League Players' Concussion Injury Litig., 301 F.R.D. 191, 197 (E.D. Pa. 2014).

Preliminary approval analysis "often focuses on whether the settlement is the product of 'arms-length negotiations.'"  Curiale, 2008 WL 4899474, at *4 (citation omitted); see also In re Auto. Refinishing Paint Antitrust Litig., MDL No. 1426, 2004 WL 1068807, at *2 (E.D. Pa. May 11, 2004) (granting preliminary approval of settlement reached "after extensive arms-length negotiation between very experienced and competent counsel"); Gates, 248 F.R.D. at 444 (preliminarily approving settlement where there was "nothing to indicate that the proposed settlement . . . [was] not the result of good faith, arms-length negotiations between adversaries").  The Court finds that the parties engaged in strongly contested, arm's-length negotiations that spanned several years over the course of this litigation in which essentially all issues were tested in the crucible of the adversarial process.  The negotiations included mediation settlement sessions assisted by Professor Eric Green.  See Decl. of Professor Eric Green; Decl. of David Woodward.

The Court also finds that the proposed settlement was reached after extensive litigation,

including comprehensive discovery, which informed the parties' settlement. Counsel inform the Court that (1) forty-seven depositions were taken in this litigation, including of current and former employees of Comcast, non-party witnesses, plaintiffs, and the parties' experts; (2) Counsel reviewed millions of pages of documents; and (3) the parties submitted thirty-seven expert reports to the Court. (Pls.' Mem. at 19.) The litigation extended to a dispute concerning our continuing jurisdiction following the Supreme Court's decision in Behrend, resulting in Plaintiffs' renewed motion for class certification supported by new expert reports, which was actively opposed by Defendants' new expert reports. The attorneys representing the Philadelphia Settlement Class are experienced litigators in antitrust class actions, and Plaintiffs' Co-Lead Counsel inform the Court that they believe that this Settlement provides significant benefits to the Settlement Class, avoids the risk and delays associated with continued litigation, and is in the Settlement Class members' best interests. (Id. at 19-20.)

The Court finds that the level to which this case was litigated supports a conclusion that the settlement was reached with full appreciation by counsel of the merits of the case.

We also conclude that the settlement is within the range of settlements worthy of final approval as fair, reasonable, and adequate. See, e.g., Samuel v. Equicredit Corp., Civ. A. No. 00-6196, 2002 WL 970396, at *1 n.1 (E.D. Pa. May 6, 2002). The Settlement Fund amount reflects a sound recovery in relation to the estimated single damages reflected in Dr. McClave's new report. Comcast and its experts vigorously dispute Dr. McClave's damages estimate and have moved to strike both Dr. McClave's and Dr. Michael Williams' most recent reports. (Docket Entry Nos. 576 & 577.) The parties' recent expert reports continue to reflect both the ongoing core litigation disputes of the parties and the inherent risks of continued litigation, reinforcing the fact that the Settlement falls within the range of reasonableness. See In re Remeron End-Payor

Antitrust Litig., Civ. A. Nos. 02-2007 and 04-5126, 2005 WL 2230314, at *24 (D.N.J. Sept. 13, 2005) (noting that "an antitrust class action settlement may be approved even if the settlement amounts to a small percentage of the single damages sought, if the settlement was reasonable relative to other factors, such as the risk of no recovery" and concluding that "[t]he Court is satisfied that the settlement agreement accounts for the risks inherent in this complex litigation and provides appropriate relief in light of these risks" (citation omitted)).

We find that Plaintiffs have shown that the relief available under the Settlement falls within the range of reasonableness, and there is a conceivable basis for presuming that the standard applied for final approval — fairness, adequacy, and reasonableness — will be satisfied. The stated $50 million value of the Fund represents approximately 25% of the amount that Dr. McClave now opines is attributable to Comcast's deterrence of overbuilding in the five counties. This is a significant result given the uncertainty whether, absent the Settlement we would accept Dr. McClave's opinion as common proof, and the substantial trial risk that Plaintiffs would face in persuading a jury to accept Dr. Williams' liability theory and Dr. McClave's damages theory.

Accordingly, preliminary approval of the Settlement is **GRANTED**.

### III.    FORM AND MANNER OF NOTICE

"[T]o satisfy due process, notice to class members must be reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." In re Ikon Office Solutions, Inc. Sec. Litig., 194 F.R.D. 166, 174 (E.D. Pa. 2000) (citations and internal quotations omitted); see also Mehling v. N.Y. Life Ins. Co., 246 F.R.D. 467, 477 (E.D. Pa. 2007) (approving proposed notice for settlement class when notice "adequately informs potential class members in clear, understandable language").

Individual notice should be provided to all members who can be identified through reasonable efforts.  In re Corel Corp. Inc. Sec. Litig., 293 F. Supp. 2d 484, 491 (E.D. Pa. 2003).

The Court finds that the proposed forms of notice to the class of the proposed settlement and methods of dissemination — individual notice to current subscribers in their monthly bills; publication of notice in the newspapers, magazines and television stations detailed in Exhibits D-G to the Class Action Settlement Agreement, and notice via the settlement website, www.cablesettlement.com, — satisfy the requirements of Federal Rule of Civil Procedure 23(c) and due process, are otherwise fair and reasonable, and therefore are **APPROVED**.

Defendants shall cause the individual settlement notices, in substantially the forms attached as Exhibits D and E to the Class Action Settlement Agreement, to be disseminated by mail or email as soon as administratively feasible and in any event within 120 days following the entry of this Order via their inclusion with the monthly bills of current Comcast subscribers.

Class Counsel shall cause the settlement notices, in substantially the forms attached as Exhibits F and G to the Class Action Settlement Agreement, to be disseminated as soon as administratively feasible and in any event within 120 days following the entry of this Order via:

> a) Posting on the website www.cablesettlement.com within 30 days following the entry of this Order; and
>
> b) Publishing in the newspapers or magazines detailed in Exhibit F and on television stations as soon as administratively feasible and in any event within 120 days after entry of this Order.

The Court hereby **APPOINTS** Rust Consulting, Inc. ("Rust") as Claims Administrator to assist in disseminating the Notice to the Class.  All expenses incurred by Rust must be reasonable,

are subject to Court approval, and shall be paid by Class Counsel, as described in the Settlement Agreement.

The Claims Administrator must establish a post office box where class members can send requests for exclusion or other correspondence relating to the Notice.

### IV.   SCHEDULE FOR FINAL SETTLEMENT HEARING

All briefs and materials in support of the final approval of the settlement and Class Counsel's application for an award of attorney fees, costs and expenses, and a service award to the named Plaintiff for his efforts on behalf of the Class, and the entry of final judgment proposed by the parties to the Settlement Agreement, shall be filed with the Court no later than 150 days from the entry of this Order.

As part of the Settlement Notice, potential Class members shall be afforded the opportunity to opt-out of the Class. Potential Class members wishing to exclude themselves from the Class must send a written request for exclusion ("Opt-Out Request") to the Claims Administrator and to Class Counsel within 180 days after entry of this Order (the "Opt-Out Deadline").

No later than 21 days after the Opt-Out Deadline, Class Counsel shall report to the Court on the number of Class members who have excluded themselves.

Class members who wish to object to the proposed Settlement and/or (b) appear in person at the Fairness Hearing must first send an Objection that:  (i) contains the full name and current address of the person objecting; (ii) contains the title of the Action:  Glaberson v. Comcast Corp., Civil Action No. 03-6604 (E.D. Pa.); (iii) states the reasons for the objection; (iv) is accompanied by any evidence, briefs, motions or other materials the objector intends to offer in support of the objection; (v) is signed by the objector; and (vi) is filed with the Court and served upon Class Counsel and counsel for Comcast within 180 days after entry of this Order. The Objection and any

Notice of Intent to Appear at the Final Fairness Hearing shall be sent via first class mail, postage prepaid, to the Clerk of Court, United States District Court for the Eastern District of Pennsylvania, United States Courthouse, 601 Market Street, Room 2609, Philadelphia, PA 19106-7704, with copies to the following counsel:

*On behalf of Plaintiff and the Class:*

> David Woodward, Esq.
> Heins Mills & Olson, P.L.C.
> 310 Clifton Avenue
> Minneapolis, MN 55403
> Telephone: (612) 338-4605
> Facsimile: (612) 338-4692
>
> Barry Barnett, Esq.
> Susman Godfrey L.L.P
> 901 Main Street, Suite 5100
> Dallas, TX 75202-3775
> Telephone: (214) 754-1900
> Facsimile: (214) 754-1933

*On behalf of Comcast:*

> M. Norman Goldberger, Esq.
> Ballard Spahr, LLP
> 1735 Market Street, 51st Floor
> Philadelphia, Pennsylvania 19103
> Telephone: (215) 665-8500
> Facsimile: (215) 864-8999
>
> Arthur J. Burke, Esq.
> Davis Polk & Wardwell LLP
> 450 Lexington Avenue
> New York, New York 10017
> Telephone: (212) 450-4000
> Facsimile: (212) 450-3800
>
> Sheron Korpus, Esq.
> Kasowitz Benson Torres & Friedman LLP
> 1633 Broadway
> New York, New York 10019
> Telephone: (212) 506-1700
> Facsimile: (212) 506-1800

To be valid, any such Objection and/or Notice of Intention to Appear and accompanying summary statement must be postmarked no later than 180 days after entry of this Order. Except as herein provided, no person or entity shall be entitled to contest the terms of the proposed settlement. Persons or entities that do not file an Objection and/or Notice of Intention to Appear and summary statement as provided above shall be deemed to have waived any objections by appeal, collateral attack, or otherwise and will not be heard at the Fairness Hearing.

All responses to Objections must be filed with the Court no fewer than 5 calendar days before the Final Fairness Hearing.

A hearing on final approval (the "Final Fairness Hearing") shall be held on Wednesday, September 9, 2015, at 10:00 a.m. (Eastern time) in courtroom 17B, at the United States District Court for the Eastern District of Pennsylvania. At the Fairness Hearing, the Court will consider, *inter alia*, (a) the fairness, reasonableness, and adequacy of the Settlement and whether it should be finally approved; (b) whether the Court should approve an award of Class Counsel's fees and the reimbursement of expenses to counsel for the Class, and in what amounts; (c) whether a service award should be made to the named Plaintiff for his efforts on behalf of the class, and in what amount; and (d) whether entry of a final judgment terminating this litigation should be entered.

All persons and/or entities seeking to receive the Settlement benefits must submit to the Claims Administrator a Claim Form, in the form accompanying the Class Action Settlement Agreement, postmarked no later than 210 days after entry of this Order (except that Current Subscribers who do not complete a valid Claim Form or who do not affirmatively elect cash or Settlement Credits on a Claim Form will automatically receive two (2) free months of The Movie Channel (an estimated $43.90 value) as set forth in paragraph 8.2.1 of the Settlement Agreement). Submission of a Claim Form shall be the only valid method of making a claim to share in the

Settlement Fund, and all claimants must comply with the instructions accompanying the Claim Form.

All proceedings in this action are hereby **STAYED** until such time as the Court renders a final decision regarding the approval of the Settlement and, if it approves the Settlement, enters final judgment and dismisses this action with prejudice.

In the event that the Settlement does not become final, then, subject to approval of the Court, litigation of this case will resume in a reasonable manner to be approved by the Court upon joint application by the parties hereto.

In the event the Settlement Agreement and the Settlement are terminated in accordance with the applicable provisions of the Settlement Agreement, the Settlement Agreement, the Settlement, and all related proceedings shall, except as expressly provided to the contrary in the Settlement Agreement, become null and void, shall have no further force and effect, and Plaintiffs shall retain full rights to assert any and all causes of action against Comcast and any other released party, and Comcast and any other released parties shall retain any and all defenses and counterclaims hereto.  This Action shall thereupon revert to its procedural and substantive status prior to the date of execution of the Settlement Agreement and shall proceed as if the Settlement Agreement and all other related orders and papers had not been executed.

Nothing in this Order, the Settlement Agreement, any other settlement-related document, anything contained herein or therein or contemplated hereby or thereby, or any proceedings undertaken in accordance with the terms set forth in the Settlement Agreement or herein or in any other Settlement-related document, shall constitute, be construed as, or be deemed evidence of or an admission or concession by Comcast as to the validity of any claim that has been or could have

been asserted against Comcast or as to any liability by Comcast as to any matter set forth in this Order.

BY THE COURT:

/s/ John R. Padova
JOHN R. PADOVA, J.