## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| Stanford Glaberson, et. al, <br> Plaintiffs, <br><br> v. <br><br> Comcast Corporation, et al., <br> Defendants. | Civ. No. 03-6604 (JP) <br> The Honorable John R. Padova |

**ADKINS, KELSTON & ZAVEZ, P.C.'S (One of Plaintiff's Law Firms)
MEMORANDUM IN SUPPORT OF ITS MOTION FOR AN AWARD OF
ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

Respectfully submitted,

**FEINSTEIN DOYLE PAYNE
& KRAVEC, LLC**

McKean J. Evans (PA ID No. 309767)
429 Forbes Avenue
Allegheny Building, 17th Floor
Pittsburgh, PA 15219
Phone:  (412) 281-8400
Fax:  (412) 281-1007

(*Acting as Local Counsel for
Adkins, Kelston & Zavez, P.C. Only*)

-and-

**ADKINS, KELSTON & ZAVEZ, P.C.**
John Peter Zavez, Esq.
Noah Rosmarin, Esq.
Jeffrey Thorn, Esq.
90 Canal Street, 5th Floor
Boston, MA  02114
(617) 367-1040

**TABLE OF CONTENTS**

PAGE

I.  INTRODUCTION ..................................................................................1

    A.  Plaintiff's Claims and Procedural History Highlights. ...................1

    B.  The Settlement Agreement. .........................................................3

II.  AKZ'S REQUEST FOR ATTORNEYS' FEES IS
REASONABLE AND SHOULD BE APPROVED ..................................6

    A.  The Fee Requested by Class Counsel is Fair and Reasonable.......8

        1.  The complexity and duration of the litigation…..............................9

        2.  The size of the fund created and the number of persons
benefited............................................................................11

        3.  The skill and efficiency of counsel. ...................................11

        4.  The risk and uncertainty of litigation, including the risk
of nonpayment. ..................................................................12

        5.  The amount of time devoted to the litigation....................15

        6.  Consistency with fee awards in comparable cases. ..........16

        7.  Presence or absence of substantial objections. .................17

        8.  Application of additional factors. .....................................18

        9.  The percentage fee that would have been privately
negotiated............................................................................18

    B.  A Lodestar Cross-Check Supports the Reasonableness of
Plaintiff's Fee Request...................................................................19

III.  THE COURT SHOULD APPROVE CLASS COUNSEL'S
REQUEST FOR REIMBURSEMENT OF EXPENSES..........................20

IV.  AKZ IS ENTITLED TO ITS EXPENSES AND
PRO RATA SHARE OF FEES ............................................................22

V.  CONCLUSION..................................................................................23

## **TABLE OF AUTHORITIES**

**Cases**                                                                                     **Page**

*Behrend v. Comcast Corp.*,
    No. 03-6604, 2012 WL 1231794 (E.D. Pa. Apr. 12, 2012) ...................................2

*Behrend v. Comcast Corp.*,
    245 F.R.D. 195 (E.D. Pa. 2007) .................................................................2

*Behrend v. Comcast Corp.*,
    264 F.R.D. 150 (E.D. Pa. 2010) .................................................................2

*Behrend v. Comcast Corp.*,
    655 F.3d 182 (3d Cir. 2011) ....................................................................2

*Blum v. Stenson*,
    465 U.S. 886 (1984) ..........................................................................13

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ...........................................................................7

*Boone v. City of Phila.*,
    668 F. Supp. 2d 693 (E.D. Pa. 2009) ....................................................7, 15

*Bradburn Parent Teacher Store, Inc. v. 3M*,
    513 F. Supp. 2d 322 (E.D. Pa. 2007) .............................................. *passim*

*Chakejian v. Equifax Info. Servs., LLC*,
    275 F.R.D. 201 (E.D. Pa. 2011) ...............................................................19

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013) .........................................................................3

*Eisen v. Carlisle & Jacquelin*,
    479 F.2d 1005 (2d Cir. 1973) ................................................................13

*Fickinger v. C.I. Planning Corp.*,
    646 F. Supp. 622 (E.D. Pa. 1986) ............................................................7

*Fleisher v. Fiber Composites, LLC*,
    No. 12-1326, 2014 WL 866441 (E.D. Pa. Mar. 5, 2014) ................................16, 19

*Gunter v. Ridgewood Energy Corp.*,
    223 F.3d 190 (3d Cir. 2000) ...............................................................9, 13

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ................................................................................19

*In re Aetna Inc. Sec. Litig.*,
   No. Civ. A. 1219, 2001 WL 20928 (E.D. Pa. Jan. 4, 2001) .......................8, 18, 19

*In re American Investors Life Ins. Co. Annuity Mktg. and Sales Practices Litig.*
   263 F.R.D. 226 (E.D. Pa. 2009)..............................................................12

*In re AT&T Corp., Sec. Litig.*,
   455 F.3d 160 (3d Cir. 2006................................................................7, 9, 18, 21

*In re Cendant Corp. PRIDES Litig.*,
   243 F.3d 722 (3d Cir. 2001) ..................................................................20

*In re Certainteed Fiber Cement Siding Litig.*,
   MDL No. 2270, 2014 WL 1096030 (E.D. Pa. Mar. 20, 2014)............................22

*In re Corel Corp. Inc. Sec. Litig.*,
   293 F. Supp. 2d 484 (E.D. Pa. 2003) ......................................................12

*In re: Diet Drugs (Phentermine, etc.)*,
   2003 WL 21641958 (E.D. Pa.) ..............................................................23

*In re Fasteners Antitrust Litig.*,
   No. 08-md-1912, 2014 WL 296954 (E.D. Pa. Jan. 27, 2014 ) .........................7, 17

*In re Flonase Antitrust Litig.*,
   951 F. Supp. 2d 739 (E.D. Pa. 2013) ..................................................8, 17

*In re Hydrogen Peroxide Antitrust Litig.*,
   552 F.3d 308 (3d Cir. 2008) ..................................................................2

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000) ........................................................7, 19

*In re Initial Public Offering Securities Litigation*,
   2011 WL 2732563 (S.D.N.Y.) ..............................................................23

*In re Linerboard Antitrust Litig.*,
   No. MDL 1261, Civ. A. Nos. 98-5055, 99-1000,
   99-1341, 2004 WL 1221350 (E.D. Pa. June 2, 2004)....................................20, 22

*In re Linerboard Antitrust Litig.*,
   296 F. Supp. 2d 568 (E.D. Pa. 2003) ....................................................10

*In re Metoprolol Succinate Antitrust Litig.*,
   No. 06-52-MPT (D. Del. Feb. 21, 2012) ................................................17

*In re OSB Antitrust Litig.*,
    No. 06-826 (E.D. Pa. Dec. 9, 2008) ....................................................................21

*In re Prudential Ins. Co. Am. Sales Practices Litig.*,
    148 F.3d 283 (3d Cir. 1998).............................................................7, 8, 9, 18

*In re Remeron Direct Purchaser Antitrust Litig.*,
    No. Civ. 03-0085 FSH, 2005 WL 3008808 (D.N.J. Nov. 9, 2005) .............. *passim*

*In re Residential Doors Antitrust Litig.*,
    No. 94-3744, CIV. A. 96-2125, MDL 1039,
    1998 WL 151804 (E.D. Pa. Apr. 2, 1998) ...........................................................22

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005)...........................................................7, 8, 19

*In re Tricor Direct Purchaser Antitrust Litig.*,
    C.A. No. 05-340-SLR (D. Del. April 23, 2009) ............................................16, 20

*In re Vitamins Antitrust Litig.*,
    398 F. Supp. 2d 209, 234 (D.C. Cir. 2005) .....................................................22, 23

*In re Warfarin Sodium Antitrust Litig.*,
    212 F.R.D. 231 (D. Del. 2002) ........................................................................20, 21

*In re Wellbutrin SR Antitrust Litig.*,
    C.A. No. 04-5525 (E.D. Pa. Nov. 21, 2011) ....................................................15, 17

*In re Wellbutrin XL Antitrust Litig.*,
    No. 2:08-cv-2431 (E.D. Pa. Nov. 7, 2012) ...........................................................17

*Iron Worker's Sav. and Loan Ass'n v. IWS, Inc.*,
    424 Pa. Super. 255 (1993) .................................................................................23

*McCann v. Todd*,
    203 La. 631 (1943) ............................................................................................23

*MCI Commc'n Corp. v. Am. Tel. & Tel. Co.*,
    708 F.2d 1081 (7th Cir. 1983) ............................................................................13

*Meijer, Inc. v. 3M*,
    No. 04-5871, 2006 WL 2382718 (E.D. Pa. Aug. 14, 2006) ..................................9

*Nichols v. SmithKline Beecham Corp.*,
    No. 00-6222, 2005 WL 950616 (E.D. Pa. Apr. 22, 2005) ...................................20

*Oh v. AT&T Corp.*,
    225 F.R.D. 142 (D.N.J. 2004) ............................................................................22

*Rochester Drug Coop., Inc. v. Braintree Labs., Inc.*,
  C.A. No. 07-142-SLR (D. Del. May 31, 2012) .................................................17

*Segen v. OptionsXpress Holdings Inc.*,
  631 F. Supp. 2d 465 (D. Del. 2009) .....................................................................20

*Serrano v. Sterling Testing Sys., Inc.*,
  711 F. Supp. 2d 402 (E.D. Pa. 2010) ..................................................................15

*Sholer v. State ex rel. Dept. of Public Safety*,
  149 P.3d 1040 (Okla. Civ. 4th App. Div. 2006) ..................................................22

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011)..................................................................................22

*U.S. Football League v. National Football League*,
  644 F. Supp. 1040 (S.D.N.Y. 1986) .....................................................................13

*West Virginia v. Chas. Pfizer & Co.*,
  314 F. Supp. 710 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) .............13

**Statutes**

  15 U.S.C. §§ 1 & 2................................................................................................1

**Rules**

  Fed. R. Civ. P. 23(c) .............................................................................................5

  Fed. R. Civ. P. 23(a)(4) .......................................................................................12

**Other Authorities**

  MANUAL FOR COMPLEX LITIGATION (FOURTH) § 14.122 (2014) ...........19

## I.     INTRODUCTION

Adkins, Kelston & Zavez, P.C. ("AKZ") was asked to join this litigation by Lead Counsel.  At the request of Lead Counsel, AKZ performed significant work on this case totaling in excess of 800 hours of attorney time, which time it submitted to Lead Counsel in accordance with the procedure set forth by Lead Counsel.  In addition, again at the request of Lead Counsel, AKZ incurred its own expenses as well as contributing $40,000 to a collective litigation fund.  During the life of this litigation, Lead Counsel has never objected to the numbers AKZ claimed as its lodestar in expenses.  Nevertheless, when this case neared settlement, Lead Counsel informed AKZ that it likely would not be paid for its time and refused to confirm to that it would reimburse AKZ for its expenses.  AKZ therefore moves, separately, for the Court to award it all of its expenses and its pro rata share of attorneys' fees for its undisputed contribution here.

### A.     Plaintiff's Claims and Procedural History Highlights.

Because AKZ does not question the result obtained here to which it contributed, only significant parts of the long procedural case history with respect to Plaintiff's Philadelphia Claims are summarized here.

On December 8, 2003, Stanford Glaberson and other plaintiffs, on behalf of similarly situated Comcast subscribers, filed a class action complaint alleging Comcast restrained trade and allocated customers and markets, and unlawfully monopolized and attempted to monopolize the market in the Philadelphia, Pennsylvania area in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2. ECF No. 1. Following litigation surrounding Comcast's motion to compel arbitration at the district court and appellate levels, the Court on August 31, 2006, denied Comcast's motion to dismiss. ECF No. 155. On December 19, 2006,

the Court denied Comcast's motion for partial reconsideration of the Court's motion to dismiss order or, alternatively, for certification for interlocutory appeal. ECF No. 188. On January 4, 2007, Comcast answered and asserted defenses, denying that it violated any law or engaged in any wrongdoing. ECF No. 190.

On May 2, 2007, the Court granted Plaintiffs' motion for certification of a Philadelphia class.  *Behrend v. Comcast Corp*., 245 F.R.D. 195 (E.D. Pa. 2007). On June 29, 2007, the United States Court of Appeals for the Third Circuit denied Comcast's petition for permission to appeal under Rule 23(f). On September 11, 2007, the Court denied Comcast's motion to certify for interlocutory appeal the Court's July 31, 2007 Order, which, *inter alia*, denied Comcast's motion for judgment on the pleadings. ECF No. 229.

On March 30, 2009, the Court granted Comcast's motion to decertify the Philadelphia Class in light of the Third Circuit's decision in *In re Hydrogen Peroxide Antitrust Litigation,* 552 F.3d 308 (3d Cir. 2008). ECF No. 326. On January 7, 2010, following a four-day class certification evidentiary hearing, detailed class certification written questions posed by the Court to the parties' counsel and oral argument, the Court again certified the Philadelphia area class and limited proof of antitrust impact to the theory that Comcast engaged in anticompetitive clustering conduct deterring the entry of overbuilders in the Philadelphia area market. *Behrend v. Comcast Corp.*, 264 F.R.D. 150 (E.D. Pa. 2010).

The Third Circuit affirmed this Court's January 13, 2010 Amended Order granting class certification. *Behrend v. Comcast Corp.*, 655 F.3d 182 (3d Cir. 2011). Comcast filed a petition for a writ of certiorari in the United States Supreme Court on January 11, 2012. This Court granted in part and denied in part Comcast's motion for summary judgment. *Behrend v. Comcast Corp.*, No. 03-6604, 2012 WL 1231794 (E.D. Pa. Apr. 12, 2012).  On June 25, 2012,

the Supreme Court granted Comcast's petition for a writ of certiorari. On March 27, 2013, the

Supreme Court reversed the judgment of the Third Circuit affirming this Court's Amended

Order recertifying the Philadelphia class. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013).

On August 19, 2013, Plaintiff moved to certify a narrowed Philadelphia class. ECF No.

560. On November 12, 2013, the Court denied Comcast's motion to strike Plaintiff's motion to

recertify the revised Philadelphia class and allowed Comcast to substantively respond to

Plaintiff's motion. ECF No. 569. On January 15, 2014, Comcast opposed Plaintiff's motion for

recertification of the revised Philadelphia class and moved to exclude the recent opinions and

testimony of Plaintiff's experts. ECF Nos. 576-583. On February 20, 2014, the Court granted

Plaintiff's unopposed motion to stay the case. ECF No. 592. On April 16, 2014, Plaintiff filed

the operative Fourth Amended Complaint on behalf of the narrowed Philadelphia-area class.

ECF No. 599.

The Settlement, reached after rigorous negotiations between experienced counsel

conducted over several years during the course of this hard-fought litigation, was

preliminarily approved by the Court on December 12, 2014.

### B.    The Settlement Agreement.

On October 28, 2014, Plaintiff Stanford Glaberson, on behalf of the Settlement Class

defined below entered into a Class Action Settlement Agreement ("Settlement") with

Defendants Comcast Corporation, Comcast Holdings Corporation, Comcast Cable

Communications Inc., Comcast Cable Communications Holdings Inc. and Comcast Cable

Holdings LLC (collectively "Comcast"). Comcast agreed to provide a Settlement Fund of $50

million consisting of a settlement cash amount of $16,670,000 ("Settlement Cash Amount")

and services valued at $33,330,000 (the "Settlement Credits"), in exchange for the release of

claims by Plaintiff and the Philadelphia Settlement Class.

On December 12, 2014, following briefing and a hearing, the Court preliminarily approved the Settlement and certified the following Philadelphia Settlement Class ("Class"):

> All cable television customers who 1) currently subscribe or 2) previously subscribed at any time from January 1, 2003 to December 31, 2008, to video programming services (other than solely to basic cable services) from Comcast, or any of its subsidiaries or affiliates, in the counties of Bucks, Chester, Delaware, Montgomery and Philadelphia, Pennsylvania. The Class excludes government entities, Defendants, Defendants' subsidiaries and affiliates and this Court.

Order-Memorandum of Dec. 9, 2014, ECF No. 614 ("Order"), at 7.

Under the Settlement, current subscribers of non-basic video programming services from Comcast in any of the five designated counties may elect either a one-time credit of $15 off their bill or one of the following Comcast services: (a) six free pay-per-view movies (an estimated $35.94 value), or (b) for customers who subscribe to Xfinity® high speed Internet service, four months free upgrade in Internet service from Performance Level to Blast!® service (an estimated $40 value), or one free month upgrade from Blast!® service to Extreme 105 service (an estimated $38 value); or (c) two free months of The Movie Channel (an estimated $43.90 value). Settlement ¶ 8.2. Current subscribers who do not elect on their claim form either the $15 bill credit or one of the above services, or who do not submit a claim form, will automatically receive two free months of The Movie Channel. *Id.* ¶ 8.2.1. Class members who are former subscribers will be entitled, upon submission of a valid claim form, to payment of $15 cash. *Id.* ¶ 8.3. There will be no reverter of any portion of the Settlement Fund (cash or services benefits) to Comcast. *Id.* ¶ 8.1.

In its Order, the Court appointed the highly experienced claims administrator, Rust

Consulting, Inc., to serve as claims administrator. Order at 11. The Settlement provides for a simple, consumer-friendly claims process that is non- burdensome and designed to encourage the submission of claims. To receive benefits under the Settlement, Class Members who are current Comcast subscribers shall submit a claim form (Settlement, Ex. A) providing their name, address and Comcast account number. Settlement ¶ 8.1. Former subscribers who are class members shall submit a claim form (Settlement, Ex. B) providing their name, the address where they formerly received Comcast service during the class period, and their former Comcast account number, if known, and affirming, under penalty of perjury, that they subscribed to video programming services (other than solely to basic cable services) from Comcast at any time between January 1, 2003 and December 31, 2008 in any one of the counties of Bucks, Chester, Delaware, Montgomery and Philadelphia, Pennsylvania. *Id.* ¶ 8.8.2. The Settlement further provides for a dedicated website for the submission of electronic claim forms by Class Members and that claim forms may also be submitted by mail. *Id.* ¶ 8.8.3. The website, www.CableSettlement.com, was created and activated by Rust Consulting effective January 9, 2015. Woodward Decl. ¶ 6. Claim forms are to be sent to the claims administrator no later than 210 days after the Order, or by July 10, 2015.

In its Order, the Court also approved the content of the forms of notice to the Class and the methods of dissemination, including individual notice to current subscribers in their monthly bills or via email to current subscribers receiving paperless invoices, publication notice in newspapers and television stations designed to reach former subscriber Class Members and notice via the Settlement website as satisfying the requirements of Federal Rule of Civil Procedure 23(c) and due process.

The Settlement provides a simplified method of distributing and maximizing benefits

to Class Members. Cash elections by current and former subscribers, any attorneys' fees and expenses awarded by the Court to Class Counsel, and administration costs are to be paid from the cash component of the Settlement Fund.  Settlement ¶ 8.7. To the extent such sums exceed the $16,670,000 cash component, Comcast agrees to contribute additional cash to the Settlement Fund to fund such amounts, with the amount of Settlement Credits for services to current subscribers ($33,330,000) correspondingly reduced.  If such sums are less than the $16,670,000 cash component, Comcast shall pay the remaining cash pro rata to current subscriber Class Members by issuing a one-time credit on their bills. *Id.* Importantly, the Settlement provides that there is no reverter of cash or services to Comcast. *Id*. ¶ 8.1. These provisions ensure that Class Members receive all the cash and services benefits provided by the Settlement. The Settlement Fund is sufficient in amount and structured to ensure that even if all Class Members submit a claim, 100% of claims will be satisfied under the Settlement.

The Settlement provides that Class Counsel shall file a motion for approval of attorneys' fees and costs within 30 days of the Court's preliminary approval Order in a combined amount (attorneys' fees and costs) of up to $15 million. Any award of attorneys' fees and costs approved by the Court is to be paid from the Settlement Fund. Settlement ¶ 8.6.

## II.   AKZ'S REQUEST FOR ATTORNEYS' FEES IS REASONABLE AND SHOULD BE APPROVED

Pursuant to the Settlement and in accordance with the Court's December 12, 2014 Order, AKZ requests on its own behalf an award of 100% its expenses ($41,216.07) and its pro rata share of the attorneys' fees ($92,487.75)).  AKZ time and expense is summarized in the accompanying Declaration of John Peter Zavez.  The portion AKZ seeks is a reasonable share of an overall reasonable total fee.

"[A] lawyer who recovers a common fund for the benefit of persons other than himself

6

or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). *See also Boone v. City of Phila.*, 668 F. Supp. 2d 693, 713 (E.D. Pa. 2009); and *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 192 (E.D. Pa. 2000) (noting that "there is no doubt that attorneys may properly be given a portion of the settlement fund in recognition of the benefit they have bestowed on class members"). The common fund doctrine is anchored in the inherent powers of federal courts to "prevent . . . inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit." *Boeing Co.*, 444 U.S. at 478; *see also Fickinger v. C.I. Planning Corp.*, 646 F. Supp. 622, 632 (E.D. Pa. 1986) (noting that fees in common fund cases "are not assessed against the unsuccessful litigant (fee shifting), but rather are taken from the fund or damage recovery (fee spreading), thereby avoiding the unjust enrichment of those who otherwise would be benefited by the fund without sharing in the expenses incurred by the successful litigant").

The Third Circuit favors the percentage-of-recovery method of calculating fee awards in common fund cases. *See In re AT&T Corp., Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) (citing *In re Prudential Ins. Co. Am. Sales Practices Litig.*, 148 F.3d 283, 333 (3d Cir. 1998)). Courts within the Third Circuit and elsewhere routinely use this method in antitrust class actions. *See, e.g., In re Fasteners Antitrust Litig.*, No. 08-md-1912, 2014 WL 296954, at *3 (E.D. Pa. Jan. 27, 2014 ) (stating that "[i]n practice, courts in the Third Circuit assess requests for attorney's fees in antitrust cases using the percentage-of-recovery method, and then cross-check the result with the lodestar method"); *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 746 (E.D. Pa. 2013) (noting that "[t]he latter method [percentage-of-recovery], is 'generally favored in cases involving a

common fund . . . .'") (quoting *In re Prudential Ins. Co. Am. Sales Practices Litig.*, 148 F.3d at 333); *In re Remeron Direct Purchaser Antitrust Litig.*, No. Civ. 03-0085 FSH, 2005 WL 3008808, at *12 (D.N.J. Nov. 9, 2005) (finding that "the percentage of fund method is the proper method for compensating Plaintiffs' Counsel in this common fund case"). The Third Circuit recommends that district courts perform a lodestar cross-check to ensure that application of the percentage method results in an appropriate recovery.  *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 305. This Court has used the percentage method with a cross-check of the results against class counsel's lodestar to ensure an appropriate fee award. *See, e.g., In re Aetna Inc. Sec. Litig.*, No. Civ. A. 1219, 2001 WL 20928, at *14 (E.D. Pa. Jan. 4, 2001); *Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F. Supp. 2d 322, 336 (E.D. Pa. 2007).

Under these standards, AKZ's request for attorneys' fees, in light of the successful prosecution of this complex litigation on a purely contingent basis, is reasonable and appropriate. The total requested fee represents 12.85% of the gross Settlement Fund and 15.51% of the net Settlement Fund ($50 million less expenses and requested service award, if approved ).  This Court calculates the percentage-of-recovery amount on the net amount of the common fund.  *See, e.g., Bradburn*, 513 F. Supp. 2d at 337; *In re Aetna Inc. Sec. Litig.*, 2001 WL 20928, at *14. Class Counsel's collective lodestar in this case is $24,927,677.55, representing 61,511.58 hours expended in prosecuting this complex litigation for the benefit of the Class. If awarded, the requested fee would amount to a "negative" multiplier of approximately .26 of the total lodestar.

**A.      The Total Fee Requested is Fair and Reasonable.**

The Third Circuit has articulated these factors for courts to consider in evaluating the reasonableness of a fee request under the percentage-of-recovery method:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000). This Court need not

find that all of the *Gunter* factors are satisfied in order to grant Class Counsel's fee request.

*See, e.g., Meijer, Inc. v. 3M*, No. 04-5871, 2006 WL 2382718, at *21-22 (E.D. Pa. Aug. 14,

2006) (noting that although time spent litigating the case was relatively low when the case

settled after one year, other *Gunter* factors outweighed that fact). The Third Circuit has also

indicated that other factors from *In re Prudential Insurance Co. America Sales Practices*

*Litigation* may be considered:

> (1) the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations; (2) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained; and (3) any "innovative" terms of settlement.

*In re AT&T Corp. Sec. Litig.*, 455 F.3d at 165-66 (citing *In re Prudential Insurance Co.*, 148

F.3d at 338, 340, 339). Application of all relevant factors provides compelling support for Class

Counsel's requested fee.

## 1.   <u>The complexity and duration of the litigation.</u>

The complexity and duration of the litigation is "the first factor a district court can and

should consider in awarding fees." *Gunter*, 223 F.3d at 197. Courts have recognized that an

"antitrust class action [is] perhaps the most complex case[] to litigate." *Bradburn*, 513 F. Supp.

2d at 338-39; *see also In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 577 (E.D. Pa.

2003). Class Counsel diligently prosecuted this litigation on behalf of the Class for almost

eleven years in the face of vigorous opposition from Defendants' highly skilled counsel. Lead

Class Counsel's and other Class Counsel's dedicated prosecution of this hard-fought case f

involved careful, thorough research, crafting pleadings that would advance Plaintiff's case

through the crucible of extensive litigation of Comcast's several pleading challenges, contested

arbitration proceedings at the district and appellate court levels, briefing and arguing Comcast's

motion for summary judgment, review of over five million pages of documents, depositions of

47 witnesses, submission by the parties of 37 expert reports and testimony, and highly

contested class certification proceedings before this Court, the Third Circuit and the Supreme

Court. This Court is familiar with the complexities of the universe of issues litigated in this

complex class action antitrust case. Class Counsel's efforts in advancing and protecting the

interests of the Class throughout this marathon litigation are detailed in the accompanying

Declaration of David Woodward in Support of Lead and Class Counsel's Application for

Award of Attorneys' Fees, Reimbursement of Expenses and Payment of Service Award to

Class Representative; Declaration of Barry Barnett; and the declarations of other Class Counsel

submitted in support of this motion.

Lead Class Counsel's work on this case will of course continue. Lead Class Counsel

will continue to expend many additional hours in connection with implementing the Court-

approved Class notice program, working with the claims administrator in the settlement

administration process, responding to inquiries from Class members, drafting papers in

support of final approval of the Settlement, and preparing for and appearing at the final

approval hearing scheduled for September 9, 2015. Lead Class Counsel is not seeking

reimbursement for this additional time.

This factor strongly supports granting Class Counsel's motion. *See, e.g., Bradburn*, 513

F. Supp. 2d at 339 (four years of antitrust litigation over class certification and collateral

estoppel, expert testimony on both class certification and the merits and numerous depositions supported fee request).

### 2. **The size of the fund created and the number of persons benefited.**

The size of the Settlement Fund and the number of people who will benefit from the Settlement supports approving Class Counsel's fee request. The Settlement Fund is $50 million and the parties estimate that the Class consists of at least 800,000 persons. Settlement ¶ 8.1; Woodward Decl. ¶ 55. The Settlement provides significant, certain benefits to the Class in the form of cash payments of $15 to former subscribers and, for current subscribers, the selection of a bill credit in the amount of $15 or cable or Internet services ranging in value from $35.94 to $43.90. Importantly, under the Settlement, there will be no reverter to Comcast of any portion of the $16,670,000 Settlement Cash Amount or of the Settlement Credits valued at $33,330,000. Settlement ¶ 8.1. As noted by this Court in preliminarily approving the Settlement, "[t]he Settlement Fund amount reflects a sound recovery in relation to the estimated single damages reflected in Dr. McClave's new report" (Order at 10) and that "[t]he stated $50 million value of the Fund represents approximately 25% of the amount of Dr. McClave now opines is attributable to Comcast's deterrence of overbuilding in the five counties." *Id*. The Court observed that "[t]his is a significant result." *Id.*

The significant benefits delivered to the Settlement Class supports granting Class Counsel's fee request.

### 3. **The skill and efficiency of counsel.**

In appointing Lead Class Counsel for the Settlement Class pursuant to Fed. R. Civ. P. 23(a)(4), the Court in its Order noted that Lead Class Counsel "have extensive experience and expertise in antitrust, class action and complex litigation, and have successfully prosecuted antitrust class actions and similar cases in courts in this district and throughout the United

States, including, for the last decade, this Action." Order at 4. Additional Class Counsel are some of the leading plaintiff class action and antitrust litigation firms in the country, with deep experience prosecuting and trying complex antitrust actions. Lead Class Counsel and other Class Counsel devoted substantial time and resources to this case to perform services including developing the factual basis of the claims, working closely with experts, filing numerous pleadings, defeating multiple challenges to those pleadings, engaging in extensive motion practice, conducting significant discovery and litigating all contested issues before this Court, as well as class certification issues before the Third Circuit and the Supreme Court. Woodward Decl. ¶ 59. Class Counsel applied their knowledge and substantial experience with the utmost dedication to the interests of the Class. To obtain a very positive result for the Class, they faced formidable opposition from nationally recognized law firms with extensive antitrust and class action experience who rigorously defended the case. *See In re American Investors Life Ins. Co. Annuity Mktg. and Sales Practices Litig.,* 263 F.R.D. 226, 244 (E.D. Pa. 2009) (facts that class counsel were highly skilled in litigating class actions against insurance companies, the defendants were represented by a leading law firm, and the case was vigorously litigated by both sides, supported class counsel's fee request); *In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 496 (E.D. Pa. 2003) (that counsel primarily practiced shareholder securities litigation, had considerable experience, and faced formidable legal opposition supported awarding the requested fees).

This factor further supports Class Counsel's motion.

### 4.    The risk and uncertainty of litigation, including the risk of nonpayment.

"A determination of a fair fee must include consideration of the sometimes undesirable characteristics of a contingent antitrust action[], including the uncertain nature of the fee, the

wholly contingent outlay of large out-of-pocket sums by plaintiffs, and the fact that the risk of failure and nonpayment in an antitrust case are extremely high." *Remeron*, 2005 WL 3008808, at *14; *see also Gunter*, 223 F.3d at 195 n.1, 199 (explaining that the risk counsel takes in prosecuting a client's case should also be considered in assessing a fee award). As one court aptly remarked, "[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 143-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971). *See also Blum v. Stenson*, 465 U.S. 886, 902 (1984) (Brennan, J. concurring) (noting "the risk of not prevailing, and therefore the risk of not recovering any attorney's fees, is a proper basis on which a district court may award an upward adjustment to an otherwise compensatory fee"). Indeed, one need not delve too deeply into antitrust jurisprudence to come upon cases in which plaintiffs succeeded at trial on liability but recovered little or no damages at trial or after appeal. *See, e.g., U.S. Football League v. National Football League,* 644 F. Supp. 1040, 1042 (S.D.N.Y. 1986) ("the jury chose to award plaintiffs only nominal damages, concluding that the USFL had suffered only $1.00 in damages"); *MCI Commc'n Corp. v. Am. Tel. & Tel. Co.,* 708 F.2d 1081, 1174 (7th Cir. 1983) (antitrust judgment remanded for new trial on the issue of damages); *Eisen v. Carlisle & Jacquelin*, 479 F.2d 1005 (2d Cir. 1973) (after two trips to the Second Circuit and one to the Supreme Court, plaintiffs and the proposed class recovered nothing in an antitrust class case).

Counsel undertook this litigation on a wholly contingent basis, understanding from the outset that they were embarking on a long and costly litigation through a shifting legal landscape, all the while confronting highly skilled lawyers who would vigorously advocate Defendants' cause and facing uncertainty about whether they would ever receive any

compensation for their enormous investment of time and money in advancing the interests of the Class. Woodward Decl. ¶ 63. This difficult, complex and strongly contested case presented a host of risks and uncertainties that could have precluded any recovery. *Id.* ¶ 65. While never wavering in their belief that the record evidence would establish Defendants' liability and prove damages on a class-wide basis at trial, Lead Class Counsel agreed to the Settlement on behalf of the Class after considering a variety of factors, primarily the significant benefits of the $50 million recovery to the Class. A variety of factors made the outcome at trial uncertain, including the difficulty a jury might have in grasping the economic testimony and deciding highly complex issues, as well as decisions by the Court that impacted Plaintiff's case. *Id.* ¶ 67. Indeed, the decision of the Supreme Court reversing class certification underscores the risks and challenges in achieving and maintaining class certification in this antitrust action. In its Order, the Court observed that the Settlement represents "a significant result given the uncertainty whether, absent the Settlement we would accept Dr. McClave's opinion as common proof, and the substantial trial risks that Plaintiffs would face in persuading a jury to accept Dr. Williams' liability theory and Dr. McClave's damages theory." Order at 10.

Professor Eric Green, a highly experienced mediator, discussed the substantial risks both sides faced in this litigation. Declaration of Eric Green, ECF No. 608-4 at 6 (noting that Defendants "could not be sure of a favorable jury verdict" and faced the risk that "if the Class proved liability at trial, a jury could award damages far in excess of the settlement" and that "the Class faced serious obstacles to establish liability and certifying a class" and faced the risk that "the jury could have awarded damages much less than those sought by the Class or the amount of the settlement." Professor Green appropriately observed that "[b]oth sides also faced the risk that a jury could react unfavorably to the evidence presented" and that "continued

litigation posed great risk for both sides." *Id.*

Has Class Counsel successfully tried the case, Plaintiff still would have faced likely and lengthy appeals. As one court has observed, attorneys who undertake the representation of a class are "unable to mitigate any of the risk of nonpayment; instead, they [a]re required to spend or incur obligations to effectively litigate th[e] case." *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 423 (E.D. Pa. 2010). As Judge Stengel explained in awarding a one-third fee to class counsel:

> Class Counsel faced numerous risks in preparing and litigating this case, including the risks associated with the motion to dismiss, class certification, summary judgment, and – had the case continued – ultimately proving liability and damages at trial and potentially surviving any appeals. Underlying all of these risks was the enormous one of handling this case for its entire duration on a contingent basis, doing everything necessary to honor Class Counsel's commitment and obligations to the class. . . . The substantial risk of nonpayment that Class Counsel faced throughout this litigation strongly supports their fee request.

*In re Wellbutrin SR Antitrust Litig.*, C.A. No. 04-5525, slip op. at 11-12 (ECF No. 413) (E.D. Pa. Nov. 21, 2011) (citations omitted).

This factor further supports approval of the requested award.

### 5.      **The amount of time devoted to the litigation**.

As documented in Lead Class Counsel's and other Class Counsel's supporting declarations, this case required an enormous investment of time and resources.  Even excluding AKZ's time, the collective lodestar is $24,927,677.55, representing 61,511.58 hours expended in prosecuting this case over nearly eleven years. Woodward Decl. ¶ 70. The amount of time Class Counsel was required to devote to the prosecution of this litigation supports approval of the fee request. *See, e.g., Boone*, 668 F. Supp. 2d at 714 (class counsel's expenditure of roughly 2,858 hours of contingent work on the litigation justified their fee

request); *Bradburn*, 513 F. Supp. 2d at 339 (class counsel's expenditure of more than four years, including more than 9,000 attorney hours and roughly 2,000 paralegal hours weighed in favor of awarding the requested fees).

Underscoring its reasonableness, the requested fee award does not include any amount for ongoing and anticipated future work by Lead Class Counsel in responding to Class member inquiries, managing implementation of components of the Class notice program, assisting and monitoring the claims administrator, drafting Plaintiff's memorandum in support of final approval of the Settlement, and participating in the final approval hearing. *See Remeron*, 2005 WL 3008808, at *15 (noting that class counsel would "likely incur hundreds of additional hours in connection with administrating the settlement, without prospect for further fees"); *see also Fleisher v. Fiber Composites, LLC*, No. 12-1326, 2014 WL 866441, at *15 (E.D. Pa. Mar. 5, 2014) (Padova, J.) (observing that the "requested attorneys' fees is under inclusive, as it does not reflect the work performed by Counsel following execution of the Settlement Agreement, including time spent preparing the instant motions; preparing for the hearing on those motion[s]; and responding to inquiries from Class members").

This factor, like the others, weighs in favor of approving Class Counsel's fee request.

6.     **Consistency with fee awards in comparable cases.**

Class Counsel's requested fee award is well below the level of awards made in similar antitrust cases. Courts within the Third Circuit frequently award fees of one-third of the value of class action settlements. *See*, *e.g.*, *In re Tricor Direct Purchaser Antitrust Litig.*, C.A. No. 05-340-SLR, slip op. at 9-10 (ECF No. 543) (D. Del. April 23, 2009) (awarding one-third fee on settlement of $250 million); *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 751 (E.D.

Pa. 2013) (awarding one-third fee on settlement of $150 million): *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 3008808, at *17 (awarding one-third fee on settlement of $75 million); *In re Wellbutrin SR Antitrust Litig.*, C.A. No. 04-5525, slip op. at 14 (ECF No. 413) (E.D. Pa. Nov. 21, 2011) (awarding one-third fee on settlement of $49 million); *In re Wellbutrin XL Antitrust Litig.*, No. 2:08-cv-2431, slip op. at 8 (ECF No. 485) (E.D. Pa. Nov. 7, 2012) (awarding one-third fee on settlement of $37.5 million); *In re Metoprolol Succinate Antitrust Litig.*, No. 06-52-MPT, slip op. at 9 (ECF No. 194) (D. Del. Feb. 21, 2012) (awarding one-third fee on settlement of $20 million); *In re Fasteners Antitrust Litig.*, No. 08-md-1912, 2014 WL 296954, at *7 (E.D. Pa. Jan. 27, 2014) (awarding one-third fee on settlement of $17.55 million); and *Rochester Drug Coop., Inc. v. Braintree Labs., Inc.*, C.A. No. 07-142-SLR, slip op at 9 (ECF No. 243) (D. Del. May 31, 2012) (awarding one-third fee on settlement of $17.5 million).

In contrast to that benchmark, Class Counsel's requested award represents only 15.51% of the net common fund ($50 million less expenses). In light of Third Circuit precedent, the requested fee is fair and reasonable and should be approved.

7. **Presence or absence of substantial objections**.

Class Members have not yet had an opportunity to object to the requested fee award. Following notice to the Class members as approved by the Court, they will have until June 10, 2015 to opt out of the Class or object to the Settlement, including Class Counsel's fee request. Within 21 days thereafter, Lead Class Counsel will inform the Court of any Class Members who have chosen to exclude themselves from the Class. Lead Class Counsel will provide information concerning opt-outs and any objections from Class Members to the Court in advance of the September 9, 2015 final approval hearing.

8. **Application of additional factors.**

Another factor courts may use in evaluating attorneys' fee requests is the value of benefits accruing to class members that is attributable to the efforts of class counsel, as opposed to the efforts of others. *In re Prudential Ins. Co. Am. Sales Practices Litig.*, 148 F.3d at 339-40. The development and prosecution of this case was based entirely on the investigation and efforts of Class Counsel. Unlike some antitrust class actions, this one did not follow on the heels of any government lawsuit or investigation. No federal or state government agency provided any assistance to Class Counsel's prosecution of this case or contributed in any way to the $50 million fund created for distribution to members of the Class. Indeed, the FCC had reviewed and approved cable swap and other transactions challenged by Plaintiff, and Class Counsel overcame those approvals in successfully opposing Defendants' multiple challenges to Plaintiffs' pleadings. The Settlement's substantial benefits to the Class are attributable solely to the efforts of Lead Class Counsel and other Class Counsel. Woodward Decl. ¶¶ 12 and 72. *See AT&T Corp., Sec. Litig.*, 445 F.3d at 173 (noting that where class counsel was not aided by the efforts of any government group, this strengthened the district court's conclusion that the fee award was fair and reasonable).

This factor thus weighs heavily in favor of Class Counsel's fee request.

9. **The percentage fee that would have been privately negotiated.**

Plaintiff's requested fee award is further supported by considerations of the considerably higher fee that would be expected to be privately negotiated in contingency fee litigation. *See*, *e.g.*, *In re Aetna Inc. Sec. Litig.*, 2001 WL 20928, at *14 (Padova, J.) (stating that "the Court concludes that an award of thirty percent is in line with what is routinely privately negotiated in contingency fee tort litigation" (citing *In re Ikon Office Solutions, Inc.*

*Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000)); *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 3008808, at *16 (noting that "[a]ttorneys regularly contract for contingent fees between 30% and 40% with their client in non-class, commercial litigation").

This factor also weighs strongly in favor of granting Class Counsel's motion.

### B.    A Lodestar Cross-Check Supports the Reasonableness of Plaintiff's Fee Request.

The Third Circuit has embraced the use of a lodestar cross-check to ensure that application of the percentage-of-recovery method does not result in too large a fee recovery. *Rite Aid*, 396 F.3d at 305-06. This Court has followed the same approach. *See, e.g., In re Aetna Inc. Sec. Litig.*, 2001 WL 20928, at *14. Once the lodestar is calculated by multiplying the number of hours counsel reasonably expended by a reasonable billing rate for such services (*see Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)), "[t]he total lodestar estimate is then divided into the proposed fee calculated under the percentage method" and "[t]he resulting figure represents the lodestar multiplier to compare to multipliers in other cases." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 14.122 (2014). Where the lodestar is greater than the requested fee award, however, the court may dispense with a cross-check. *See Fleisher*, 2014 WL 866441, at *15 ("Where, as here, counsel requests a fee that represents less than their lodestar, 'there is no need to discuss multipliers and the appropriateness of an increase to the lodestar.'") (citing *Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201, 217 (E.D. Pa. 2011) (finding that the provision of attorneys' fees and costs contained in the settlement agreement was "eminently reasonable, judging from the lodestar")).

That is the case here. The Class Counsel's stated collective lodestar, even excluding AKZ's time, totals $24,927,677.55 and far exceeds the requested fee award, yielding a multiplier of only 0.26. Woodward Decl. ¶ 53.

Although a lodestar cross-check may not be necessary in this case, it is still instructive to note that the 0.26 multiplier here is far less than the multiplier of 1 to 4 or higher commonly approved in other similar class actions. *See Bradburn,* 513 F. Supp. 2d at 341 (stating that "[t]he Third Circuit has recognized that multipliers 'ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied'" (citations omitted)); *Segen v. OptionsXpress Holdings Inc.*, 631 F. Supp. 2d 465, 477 (D. Del. 2009) (multiplier of 2.06); *In re Tricor Direct Purchaser Antitrust Litig.*, C.A. No. 05-340-SLR, slip op. at 9 (ECF No. 543) (D. Del. April 23, 2009)  (multiplier of 3.93); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 263 (D. Del. 2002) (multiplier of 1.33); *Remeron*, 2005 WL 3008808, at *17 (noting that awarded multiplier of 1.86 is on the "low end of the spectrum" (citation omitted)); *Nichols v. SmithKline Beecham Corp.,* No. 00-6222, 2005 WL 950616, *24 (E.D. Pa. Apr. 22, 2005) (approving multiplier of 3.15); *In re Linerboard Antitrust Litig.*, No. MDL 1261, Civ. A. Nos. 98-5055, 99-1000, 99-1341, 2004 WL 1221350, at *16 (E.D. Pa. June 2, 2004) (approving a 2.66 multiplier).

This lodestar cross-check confirms the reasonableness of Class Counsel's fee request.

## III.   THE COURT SHOULD APPROVE CLASS COUNSEL'S REQUEST FOR REIMBURSEMENT OF EXPENSES

The Third Circuit recognizes that attorneys who create a common fund for the benefit of a class are entitled to reimbursement from the fund of the reasonable litigation expenses advanced on behalf of the class. *See, e.g., In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 732 n.12 (3d Cir. 2001) (quoting the 1985 Task Force Report for the conclusion that the "common-fund doctrine . . . allows a person who maintains a lawsuit that results in the creation, preservation, or increase of a fund in which others have a common interest, to be reimbursed from that fund for litigation expenses incurred"); *see also AT&T Corp., Sec. Litig.*,

455 F.3d at 172 n.8 ("[e]xpenses are generally considered and reimbursed separately from attorneys' fees"); *Warfarin*, 212 F.R.D. at 263 (approving costs and expenses reimbursements out of litigation fund as reasonable).

Class Counsel respectfully requests reimbursement of the $8,574,896.16 of out-of-pocket expenses they have incurred to date in this litigation. Class Counsel has incurred these reasonable and necessary expenses over the course of more than a decade, all the while having no assurance of repayment. Woodward Decl. ¶ 51-52. Class Counsel's expenses are summarized in Woodward Decl., Ex. B and set forth in the supporting declarations from all Class Counsel (Woodward Decl., Exs. C-T). AKZ has summarized its expenses in the Zavez Decl. and attached documents.  Because expenses were incurred without any guarantee of reimbursement, Class Counsel had a strong incentive to keep them reasonable, and did so.

The largest component of these expenses comprises payments to economic experts who were essential in the prosecution of this case. Plaintiff's expert witness fees alone total $6,703,918.74. Other significant expenses include the costs associated with storing millions of pages of documents on secure databases; travel to depositions, court hearings and mediation across the country; court reporting expenses; photo and data copying and computerized legal research. All of the expenses were essential to the prosecution of Plaintiff's case on behalf of the Class.

Courts routinely approve such expenses incurred in the prosecution of complex cases. *See, e.g., In re OSB Antitrust Litig.,* No. 06-826, slip op at 9 (ECF No. 947) (E.D. Pa. Dec. 9, 2008) (approving class counsel's fee request because "[t]his complex lengthy matter involved some eighty depositions, the creation and maintenance of a huge case database, and the preparation and review of expert economic analyses and reports"); *Remeron,* 2005

WL 3008808, at *17 (finding the following expenses to be reasonable: "'(1) travel and lodging, (2) local meetings and transportation, (3) depositions, (4) photocopies, (5) messengers and express services, (6) telephone and fax, (7) Lexis/Westlaw legal research, (8) filing, court and witness fees, (9) overtime and temp work, (10) postage, (11) the cost of hiring a mediator, and (12) NJ Client Protection Fund-pro-hac vice'"(quoting *Oh v. AT&T Corp.*, 225 F.R.D. 142, 154 (D.N.J. 2004))).

## IV.     AKZ IS ENTITLED TO ITS EXPENSES AND PRO RATA SHARE OF FEES

Lead Counsel had a duty to allocate the court-awarded fees in good faith, fairly and equitably.  *See, e.g., In re Vitamins Antitrust Litig*., 398 F. Supp. 2d 209, 234 (D.C. Cir. 2005) ("The commitment to lead counsel of the responsibility of apportioning the fee among itself and other firms is a fundamental exercise of trust by the court. Implicit in that delegation is the requirement that lead counsel apply a universally fair standard of allocation to all participants, including itself.").  Where separate law firms work together on the same case, they are joint venturers owing each other partner-like fiduciary duties with respect to disclosure and fee-splitting.  *See, e.g., Sholer v. State ex rel. Dept. of Public Safety*, 149 P.3d 1040, 1047 (Okla. Civ. 4th App. Div. 2006); *McCann v. Todd*, 203 La. 631 (1943); *Iron Worker's Sav. and Loan Ass'n v. IWS, Inc.*, 424 Pa. Super. 255 (1993) (joint venturers "owe each other a fiduciary duty of the utmost good faith").

A lead counsel's inequitable allocation of fees among firms is a clear breach of duty for which they are jointly and severally liable.  *See In re Vitamins Antitrust Litig*., 398 F.Supp.2d 209 (2005) at 233 ("fundamental notion [is] that members of the same organizational tier should be treated relatively equally"); *id*. at 234 ("That the horizontal allocation among lead counsel was justified did not *ipso facto* authorize lead counsel to excuse itself from making a fair

allocation among its group even if that allocation diminished the share lead counsel received.").[1]

*See also In re Vitamins Antitrust Litig.,* 398 F. Supp. 2d 209 (2005) at 236-237 (requiring the lead firm that made the unfair fee allocation to plaintiff's firm to bear the cost of the reallocated fee, without any assessment on the other plaintiffs' firms that received fees).

Under the governing legal standard, AKZ is clearly entitled to 100% of its expenses and its pro rata share of fees. With respect to fees for attorney time, AKZ did all the work requested of it without any criticism from Lead Counsel, charged its normal hourly rates, and reported its time in accordance with the procedure set up by Lead Counsel. With respect to expenses, AKZ covered its own internal expenses and contributed $40,000 to the common litigation fund. With that in mind, AKZ seeks expenses in the amount of $41,216.07 (internal expenses of $1,216.07 plus contribution of $40,000); and fees calculated in the following manner:

AKZ lodestar ($354,494.50) x overall multiplier (0.26) = $92,168.57; for a grand total of $133,384.64.

## V.    CONCLUSION

AKZ (one of Plaintiff's counsel) respectfully requests that the Court approve its request for its pro rata share of attorneys' fees ($92,168.57) and 100% of its expenses ($41,216.07) to be paid out of the total award of $15 million, consisting of approximately $6,425,103.84 in attorneys' fees and $8,574,896.16 in expenses.

[signature page follows]

---

[1] *See also In re: Diet Drugs (Phentermine, etc.)*, 2003 WL 21641958 at *6 (E.D. Pa.) (allocation of attorneys' fees must be "fair and reasonable … [and] … allocated in a manner that reflects the relative contribution of the individual firms and attorneys to the overall outcome of the litigation"); *In re Initial Public Offering Securities Litigation*, 2011 WL 2732563 at *7 (S.D.N.Y.) (same).

Dated: May 8, 2015

Respectfully Submitted,

**FEINSTEIN DOYLE PAYNE
& KRAVEC, LLC**


  /s/ McKean J. Evans
McKean J. Evans (PA ID No. 309767)
429 Forbes Avenue
Allegheny Building, 17th Floor
Pittsburgh, PA 15219
Phone:  (412) 281-8400
Fax:  (412) 281-1007

*(Acting as Local Counsel for
Adkins, Kelston & Zavez, P.C. Only)*

-and-

  /s/ John Peter Zavez
John Peter Zavez, Esq.
Noah Rosmarin, Esq.
Jeffrey Thorn, Esq.
**Adkins, Kelston & Zavez, P.C.**
90 Canal Street, 5th Floor
Boston, MA  02114
(617) 367-1040


## CERTIFICATE OF SERVICE

      The undersigned attorney certifies that on this day, May 8, 2015, he caused to be served copies of the foregoing Motion; Memorandum in Support of Plaintiff's Application for an Award of Attorneys' Fees, Reimbursement of Expenses, and Payment of Service Award to Class Representative; Declaration of John Peter Zavez and text of Proposed Order on the counsel of record by the Court's ECF system.

                              /s/ McKean J. Evans