UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STANFORD GLABERSON, *et. al.*,<br><br>　　　　　　　　　Plaintiffs,<br><br>v.<br><br>COMCAST CORPORATION, *et. al.*,<br><br>　　　　　　　　　Defendants. | Civil Action No. 03-6604 (JP)<br><br>DECLARATION OF<br>KATHERINE KINSELLA<br>REGARDING IMPLEMENTATION OF<br>CLASS NOTICE PLAN |

**DECLARATION OF KATHERINE KINSELLA**

Katherine Kinsella, being duly sworn, deposes and says:

**I.     INTRODUCTION**

1.     I am the founder and former president of Kinsella Media, LLC ("KM"), an advertising and notification consulting firm in Washington, D.C. that specializes in the design and implementation of notification programs to reach unidentified putative class members primarily in consumer and antitrust class actions and claimants in bankruptcy and mass tort litigation. My business address is 2001 Pennsylvania Avenue NW, Suite 300, Washington, D.C. 20006.   My telephone number is (202) 686-4111.

2.     I submit this declaration in connection with the class action Notice Program in *Glaberson v. Comcast Corp*.  I previously submitted a declaration, executed October 14, 2014, outlining my credentials and describing the Notice Program designed by KM. The Court approved the Notice Program on December 12, 2014.   This declaration outlines the implementation of the Notice Program and the measures taken to provide the best notice of the Proposed Settlement that was practicable under the circumstances.

3.     This declaration is based upon my personal knowledge and upon information provided

by Plaintiffs' and Defendants' Counsel, my associates, and my staff. The information is of a type reasonably relied upon in the fields of advertising, media, and communications. I make this statement as an independent expert in the design and implementation of notification plans.

**II.     NOTICE PLAN OVERVIEW**

4. The objective of the Notice Plan was to provide adequate notice of the Proposed Settlement to Class Members who are defined as follows:

   All cable television customers who 1) currently subscribe or 2) previously subscribed at any time from January 1, 2003 to December 31, 2008, to video programming services (other than solely to basic cable services) from Comcast, or any of its subsidiaries or affiliates, in the counties of Bucks, Chester, Delaware, Montgomery and Philadelphia, Pennsylvania. The Class excludes governmental entities, Defendants, Defendants' subsidiaries and affiliates, and this Court.

5. The Notice Plan was designed to inform potential Class Members that a proposed Settlement has been reached in this case and that their rights may be affected.

6. The following three-part Notice Program was designed and implemented:

   a) Direct notice by bill insert and email to current Comcast subscribers;

   b) Broad notice through the use of paid media, including newspaper publication and local cable television; and

   c) Extended notice through an Internet website.

<u>**Direct Notice**</u>

7. Direct mail notice consisted of Comcast sending a Summary Notice to potential Class Members to inform them of their rights and how they could participate in the Proposed Settlement.

8. It is my understanding that Comcast initiated direct mail notice as part of their ordinary billing procedures. The Summary Notice was mailed as a "notice insert" with their monthly bill to Current Subscriber Class Members who are regularly billed by Comcast by mail, or by email to Current Subscriber Class Members who regularly receive email notice of their bills, during the March 1, 2015, to March 28, 2015, billing cycle in the Philadelphia area.

9. The Summary Notice prominently displayed the telephone number and Settlement website where Class Members could request the Detailed Notice.

10. The Detailed Notice was distributed via first-class mail to anyone who called the toll-free information line or wrote or emailed the Claims Administrator to request one. The Detailed Notice has also been available since January 9, 2015, on the Settlement Website, www.CableSettlement.com, as a PDF file (in both English and Spanish).

11. Also, on March 20, 2015, the Settlement Administrator, Rust Consulting, Inc. ("Rust"), mailed a follow-up Postcard Notice to 9,170 Current Commercial Subscribers to clarify the benefits available to them. This Postcard Notice to Current Commercial Subscribers was mailed based on the agreement of the Parties after Comcast's Counsel indicated that Comcast was unable, due to certain contractual provisions, to provide one of the free Settlement benefits (the option of receiving six free pay-per-view movies) to Current Commercial Subscribers. The Postcard Notice to Current Commercial Subscribers informed them that this option was not available to them. I understand that all other benefits available to Class Members who are Current Subscribers under the Settlement are available to Current Commercial Subscribers.

12. Specific information regarding the direct mail portion of the Notice Program is provided in the Declaration of Joel Botzet of Rust Consulting, Inc.

## Media Notice Program

13. The Media Notice Program was designed to specifically reach consumers who no longer subscribe to Comcast cable services and would not be reached by Direct Notice. It used both print and broadcast media. All advertising carried a toll-free number and the Settlement Website address for potential Class Members to request or access the Detailed Notice.

14. The Publication Notice appeared in the following newspapers[1]:

| Newspaper | Ad Dimensions | Page | Date | Circulation |
|---|---|---|---|---|
| *Allentown Morning Call* | 4.195" x 7" | A10 | March 29, 2015 | 127,512 |
| *Beaver County Times* | 5.05" x 7" | A5 | March 29, 2015 | 31,041 |
| *Bedford Gazette* | 5.75" x 7" | 3 | March 28, 2015 | 10,838 |
| *Carlisle Sentinel* | 4.888" x 7" | A5 | March 29, 2015 | 12,974 |
| *Centre Daily Times* | 5.042" x 7" | A3 | March 29, 2015 | 22,883 |
| *Courier Express* | 5.5" x 7" | B3 | March 29, 2015 | 13,561 |
| *Daily News – Huntingdon* | 5.75" x 7" | A11 | March 28, 2015 | 9,035 |
| *Delaware County Daily Times* | 5.06" x 7" | 14 | March 29, 2015 | 28,284 |
| *Derrick News* | 5.55" x 7" | 5 | March 27, 2015 | 27,575 |
| *Easton Express-Times* | 5.388" x 7" | A9 | March 29, 2015 | 35,468 |

---

[1] *Parade*'s circulation dropped in 2015, and it was no longer distributed in some newspapers. To maintain the Notice Plan we reported to the Court, we placed the publication notice as a regular advertisement in the news section of each of the individual newspapers (except for the *DuBois Tri-County Sunday*, *Bucks County Courier Times*, *Philadelphia Savings*, *Sunbury Daily Item*, and *Allentown (Hoy)*. The advertisement appeared in the news section and did not appear as part of the *Parade* supplement. The difference in newspapers did not affect the overall reach of the Notice Program because the regions covered by the *DuBois Tri-County Sunday*, *Bucks County Courier Times*, *Philadelphia Savings*, and *Sunbury Daily Item* were covered by other newspapers in the plan. Also, *Allentown (Hoy)* is no longer published, so we placed the advertisement in *The Morning Call*, the primary newspaper in Allentown.

| | | | | |
|---|---|---|---|---|
| *Erie Times-News* | 4.75" x 7" | 3A | March 29, 2015 | 60,957 |
| *Gettysburg Times* | 5.25" x 7" | A5 | March 27, 2015 | 9,392 |
| *Harrisburg Patriot-News* | 5.37" x 7" | D3 | March 29, 2015 | 125,054 |
| *Hazelton Standard Speaker* | 4.888" x 7" | A5 | March 29, 2015 | 15,992 |
| *Johnstown Tribune Democrat* | 5.75" x 7" | A9 | March 29, 2015 | 30,234 |
| *Lancaster Sunday News* | 5.45" x 7" | A5 | March 29, 2015 | 90,009 |
| *Latrobe Bulletin* | 5.75" x 7" | A7 | March 28, 2015 | 8,031 |
| *New Castle News* | 5.083" x 7" | A3 | March 28, 2015 | 12,727 |
| *Norristown Times Herald* | 4.888" x 7" | 2A | March 29, 2015 | 19,904 |
| *Philadelphia Inquirer/Daily News* | 4.944" x 7" | A4 | March 29, 2015 | 465,835 |
| *Pittsburgh Post-Gazette* | 5.687" x 7" | A11 | March 29, 2015 | 241,470 |
| *Pottstown Mercury* | 4.888" x 7" | C11 | March 29, 2015 | 24,601 |
| *Pottsville Republican Herald* | 4.888" x 7" | B7 | March 29, 2015 | 21,553 |
| *Reading Eagle* | 5.75" x 7" | A11 | March 29, 2015 | 64,329 |
| *Record Herald* | 5.05" x 7" | A7 | March 28, 2015 | 9,500 |
| *Sayre Morning Times* | 5.125" x 7" | A9 | March 28, 2015 | 6,000 |
| *Scranton Times-Tribune* | 4.888" x 7" | A7 | March 29, 2015 | 53,697 |
| *Shamokin News-Item* | 4.888" x 7" | A9 | March 29, 2015 | 7,414 |
| *Sharon Herald* | 5.097" x 7" | A3 | March 29, 2015 | 15,856 |
| *State College Daily Times* | 5.032" x 7" | A3 | March 29, 2015 | 22,883 |
| *Stroudsburg Pocono Record* | 5.708" x 7" | D7 | March 29, 2015 | 15,837 |
| *The Intelligencer* | 4.986" x 7" | A15 | March 29, 2015 | 31,972 |
| *Times Leader Wilkes-Barre* | 4.87" x 7" | 13A | March 29, 2015 | 39,126 |
| *Towanda Daily Review* | 4.888" x 7" | A7 | March 29, 2015 | 8,091 |
| *Tyrone Daily Herald* | 5.75" x 7" | A7 | March 28, 2015 | 8,000 |
| *Uniontown Herald Standard* | 4.888" x 7" | C6 | March 29, 2015 | 20,175 |

DECLARATION OF KATHERINE KINSELLA

5

| Washington Observer Reporter | 4.888" x 7" | A2 | March 29, 2015 | 31,392 |
| Wayne Independent | 5.083" x 7" | A3 | March 28, 2015 | 2,972 |
| West Chester Daily Local News | 4.888" x 7" | 8A | March 29, 2015 | 24,364 |
| Williamsport Sun Gazette | 4.95" x 7" | B4 | March 29, 2015 | 26,721 |

15. A 30-second television commercial ("TV Spot"), which prominently featured the toll-free number and the Settlement Website address, ran from March 16, 2015, to March 29, 2015, across local market cable channels in Philadelphia. The TV spots ran throughout the day in different program environments in order to reach the highest number of viewers. The TV Spots delivered an estimated 12 gross rating points ("GRPs")[2], resulting in an estimated 86,923,800 gross impressions.[3,4] A copy of the TV Spot script is attached as **Exhibit 1**.

### Effectiveness of Notice Program

16. The two basic measurements used to measure media penetration of a targeted demographic and ensure the adequacy of a notice program are *reach* and *frequency*. *Reach* is the estimated percentage of a target audience reached one or more times by a media vehicle. *Frequency* is the estimated average number of opportunities the audience member has to see the notice.

17. The Media Notice Program, which included both print and television advertising as outlined above, delivered the following estimated reach and frequency measurements: an

---

[2] *Gross Rating Points* (GRPs) represent the sum of all ratings delivered by the media vehicles in a schedule. A rating is the percentage of households or persons in the target audience who have been exposed to the media vehicles in the schedule. One GRP equals 1% of a given target population.

[3] *Gross impressions* are the total number of times a media vehicle containing the Notice is seen. This figure does not represent the total number of unique viewers of the Notice, as some viewers/readers will see the Notice in more than one media vehicle.

[4] The TV spots ran as planned, but the final number of gross impressions and GRPs will not be available until KM receives the post-buy analysis in June 2015.

estimated 90.8%[5] of Adults 35+ in Philadelphia were reached with an average estimated frequency of 1.5 times.

### Plain Language Notices

18. Rule 23(c)(2) of the Federal Rules of Civil Procedure requires that class action notices must be written in "plain, easily understood language."  My staff and I drafted the Notices in collaboration with Plaintiffs' and Defendants' Counsel.  We applied the plain language requirement of Fed. R. Civ. P. 23(c)(2) in developing the Notices.  KM maintains a strong commitment to adhering to the plain language requirement while drawing on its experience and expertise to draft notices that effectively convey the necessary information to potential Settlement Class Members.

### Other

19. On January 9, 2015, a Settlement website was established at www.CableSettlement.com, enabling potential Class Members to acquire additional information on the Settlement and file a claim.

20. On January 9, 2015, an email address was established at info@cablesettlement.com to enable potential Settlement Class Members to get information on the Settlement.

21. On January 9, 2015, a toll-free number was established to enable potential Settlement Class Members to get information on the Settlement.

### III. CONCLUSION

22. It is my opinion that the reach of the target audience and the number of exposure opportunities to the notice information is the best notice practicable under the circumstances, and it is consistent with the standards employed by KM in notification

---

[5] This calculation includes an estimated direct notice reach (of 81.9%) from information provided by Defendants' Counsel.

programs designed to reach unidentified members of settlement groups or classes. The Notice Program, as designed and implemented, is fully compliant with Rule 23 of the Federal Rules of Civil Procedure and satisfies due process requirements.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 6, 2015, in Washington, D.C.

*Katherine Kinsella*
_____
Katherine Kinsella