IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STANFORD GLABERSON, et al., | CIVIL ACTION |
| Plaintiffs, | NO. 03-6604 |
| v. | The Honorable John R. Padova |
| COMCAST CORPORATION, et al., | |
| Defendants. | |

**MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR APPEAL BOND OF OBJECTOR, MARK L. RHOADES**

Objector, Mark L. Rhoades ("Rhoades") submits this memorandum of law in opposition to Plaintiff's Motion for Appeal Bond ("the Motion").

**PRELIMINARY STATEMENT**

With the Motion, class counsel is seeking to erect barriers to prevent litigants from accessing the Court and to create new law in the Third Circuit. Class counsel's effort is particularly egregious here given that it is being pursued in a class action that, by definition, allows a lawyer not hired by the litigant to bargain away the litigant's rights. Now that an objector is pursing his rights to have the merits of the settlement reviewed on appeal, class counsel is seeking to have a bond imposed that is not authorized by the Rules or the binding precedents of this Court. In fact, the facts in the key case upon which the Plaintiff relies – *In re Nutella Mktg. & Sales Practices Litig.*, Nos. 12-3456, 12- 3457, 12-4629, 589 F. App'x 53 (2014) ("Nutella")[1] – do not in any way relate to the facts of this case.[2]

---

[1] *Nutella* is not binding authority in the Third Circuit. According to the Internal Operating Procedures of the Third Circuit, unpublished opinions "are not regarded as precedents that bind the court because they do not circulate to the full court before filing." Third Circuit Internal Operating Procedures at 5.7.

First, whereas the objector in *Nutella* did not dispute that he was a serial class action objector, Rhoades vehemently denies this allegation. In fact, the instant objection is the first objection to any class action filed by Rhoades and the first class action for which he has filed a Notice of Appeal.

Second, whereas the objector in *Nutella* did not provide any substantial response to the motion for an appeal bond, or provide any evidence as to how his appeal was meritorious, Rhoades actively sought out class counsel to discuss the merits of his objection and, as detailed herein, has a valid basis for his objection. In fact, neither class counsel nor counsel for Comcast will deny that Comcast intends to distribute settlement credits before issuing payment credits thus depleting the settlement fund before the cash payments are made.

Third, whereas in *Nutella* the District Court's decision was based, in part, on the failure of the objector to state that he could pay the costs on appeal, here, Rhoades provided a Declaration to class counsel certifying that he had the ability to pay the costs on appeal authorized by Rule 39(e) of the Federal Rules of Appellate Procedure. Moreover, Rhoades is willing to post a bond or other security to more than cover the costs of an appeal as authorized by Rule 39(e) of the Federal Rules of Appellate Procedure - costs that class counsel acknowledges are estimated to be only $550.

---

[2] Class counsel's efforts are so egregious that on November 11, 2015, Rhoades advised class counsel of his intent to seek sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure if the Motion was not withdrawn. A true and correct copy of Rhoades' November 11, 2015 letter is attached as Exhibit "A". As detailed in the letter, in an attempt to intimidate Rhoades, class counsel had a copy of the Motion and related exhibits posted to the front door of his residence – despite the fact that class counsel's filed certificate of service for the Motion indicates only that it was served via first class mail. The posting of the filing at Rhoades' residence was nothing more than an attempt at intimidation, particularly given that class counsel knew that Rhoades is a practicing attorney with an office in Philadelphia where class counsel could have obtained valid service of the Motion.

Therefore, because there is no basis for imposing a bond in the amount sought by class counsel (*i.e.,* $28,150), and because Rhoades is willing to post a bond to cover the normal costs of the appeal as authorized by the Rules, the Motion should be denied.

## LEGAL ARGUMENT

Rule 7 of the Federal Rules of Appellate Procedure provides that "the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of ***costs on appeal***." (Emphasis added). Likewise, "costs on appeal" are defined in Rule 39(e) as the following: "(1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and (4) the fee for filing the notice of appeal." Nowhere in the Rules are the increased administrative costs incurred by a claims administrator purportedly incurred during the pendency of an appeal included in the costs on appeal.

The only basis for Plaintiff's request to have those costs included is the unreported and non-precedential opinion of the Third Circuit in *Nutella*. However, in *Nutella* the request for an extraordinary bond was necessary because, as the District Court found, "the appeal is meritless, the appealing objectors are 'serial objectors,' and there is a risk of non-payment by the Objectors given their geographic diversity." A true and correct copy of the November 20, 2012 Letter Order of Judge Wolfson ("the Wolfson Letter Order") is attached as Exhibit "B".

The facts concerning Rhoades' objection are diametrically opposed to the facts of *Nutella*. More specifically, the objection here is meritorious, Rhoades is not a serial objection and he is willing to provide security for the true appeal costs as defined by Rule 39(e) of the Federal Rules of Appellate Procedure.

**A. Rhoades' Appeal is Meritorious and He Actively Sought Out Class Counsel to Discuss The Merits of the Appeal.**

During the month of October, Rhoades attempted to reach class counsel to start a discussion regarding the basis for his appeal. After exchanging voicemails with class counsel on several occasions, the two finally discussed the basis for the appeal in detail on October 29, 2015. During that call, Rhoades explained his concern that, notwithstanding the parties' representations to the Court that there was sufficient cash available from the settlement to pay the former subscribers, that former subscribers like himself would not be compensated. More specifically, he questioned whether there was sufficient cash available to provide cash credits to current subscribers and cash payments to former subscribers given that from the $16,670,000 cash portion of the settlement, $15,000,000 was earmarked for counsel fees and that all of the claims administration expenses are to be paid from that fund. However, during the call they did not discuss the issue of whether the purported increase in claims administration expenses due to the pending appeal could be satisfied from the $16,670,000 cash portion of the settlement.

More fundamentally, during the October 29 telephone call, Rhoades' concern that the settlement agreement would allow Comcast to avoid making any cash payments to former subscribers was discussed. Specifically, Rhoades pointed out that glaringly absent from the settlement agreement is any obligation for Comcast to issue the cash payments and cash credits *before* issuing the settlement credits. Therefore, Comcast is free to issue settlement credits to current subscribers before issuing any cash credits or payments. Because the settlement agreement is clear that the maximum that Comcast will pay in both service credits and cash payments is capped at $50,000,000, if the service credits are issued before the cash payments, the settlement fund may be depleted before Comcast issues any cash payments to former subscribers. If that occurs, the former subscribers will receive nothing. However, if the settlement agreement

4

was revised to require Comcast to make the cash payments to former subscribers before issuing the service credits, the former subscribers would be protected.

During the October 29 telephone call, class counsel's only response was that he believed that Comcast would implement the settlement in "good faith." When Rhoades advised class counsel that depleting the settlement funds by issuing service credits before issuing any cash payments would be in accordance with the terms of the settlement agreement and not necessarily in bad faith, class counsel had no response.

**B.**     **Rhoades is Not a Serial Objector**

Unlike the objector in *Nutella* who did not dispute that he was a serial objector, Rhoades is not a serial objector. His objection in this case was his first ever class action objection and his appeal of the settlement is his first appeal of a class action settlement. Given those facts, it is impossible for class counsel to argue that Rhoades is a serial objector. Rather, his motivation for the objection is as a disgruntled former Comcast subscriber frustrated with his specific experiences with Comcast and his concerns with the fairness of class action settlements in general.

In addition, unlike the briefing filed by the objector in *Nutella*, because he has never filed any prior objections to a class action settlement, the instant briefing is not a "cut and paste" filing like those in *Nutella* that led to the imposition of the increased bond by Judge Wolfson. The fact that the objector in *Nutella* recycled old briefs from prior cases in a haphazard fashion was a key issue in the District Court's decision to require the objectors to post a bond in an increased amount to cover the increased administrative fees purportedly incurred pending the appeal. *See* Exhibit "B", the Wolfson Letter Order at 3.

5

**C. Rhoades Has Provided a Declaration Stating That He Can Pay The Costs On Appeal As Authorized by Rule 39(e) and Will Provide Adequate Security for the Same if Needed.**

Included as Exhibit "B" to the November 11, 2015, letter to class counsel advising of the intent to seek sanctions (attached hereto as Exhibit "A"), was a Declaration from Rhoades stating that he would be able to pay fully the costs on appeal as allowed by Rule 39(e) of the Federal Rules of Appellate Procedure. In *Nutella* the District Court based its decision to order an extraordinary bond, in part, on the fact that the objectors "have not provided any evidence or certification representing that they will be able to pay fully the costs of an appeal." See Judge Wolfson's Letter Order at 3. Therefore, because Rhoades has provided a Declaration that he is able to pay the costs on appeal, again, the *Nutella* decision is of no moment in this case.

**D. A More Recent Decision From Another District Court in the Third Circuit Has Denied Requests for Extraordinary Bonds in Class Action Objections.**

In addition to the facts in *Nutella* being diametrically opposed to the facts of the instant case, another District Court in the Third Circuit has denied a more recent request to include purported increased administrative costs over and above those enumerated in Rule 39 in the context of appeals of class action settlements.

In *Rossi v. The Proctor & Gamble Co.*, No. 11-7238, (D.N.J. March 17, 2014) (J. Linares)[3], the District Court declined class counsel's request to impose a bond in the amount of $30,000.[4] Like in this case, in *Rossi*, class counsel sought the bond against an objector to a class action settlement to cover not only the costs on appeal, but also increased administrative costs

---

[3] Rossi is an unpublished decision of the District Court. A true and correct copy of the decision is attached as Exhibit "C".

[4] Class counsel apparently did not locate the *Rossi* decision in their research given that the case was not cited by them despite the fact that it is directly on-point.

and attorneys' fees due to the objection and appeal. In *Rossi*, Judge Linares denied the request because administrative costs are not specifically enumerated in Rule 39:

> As to the inclusion of additional administrative costs caused by the delay in disbursement of settlement funds, this Court applies reasoning consistent with that set forth in *Hirschensohn*. ***This Court thus denies inclusion of any administrative costs that are not specifically enumerated in Rule 39.*** See *Hirschensohn*, 1997 WL 307777, at *2-*3 (holding that attorneys' fees may not be included in a Rule 7 appeal bond because they are not listed in Rule 39). ***Because Rule 39 does not enumerate any additional administrative costs caused by delay in the disbursement of settlement funds, inclusion of these costs is denied***.

*Rossi* at 4 (emphasis added).

Just as Judge Linares found *Rossi*, there is no authority for the imposition of a bond for an amount in excess of the "costs on appeal" as established by Rule 39 in this case. Therefore, the Court should deny the Motion.

**E.  The Motion Should be Denied on the Basis of Fairness and The Fundamental Right of Citizens to Have Access to the Courts.**

With the Motion, class counsel is asking the District Court to have a "mini-trial" on the merits of an objector's objection. Although it is clear that the District Court retains jurisdiction to hear a motion for an appeal bond, class counsel is asking the District Court to act effectively as a gatekeeper to determine whether an appeal of an objector has merit. By including an analysis of the strengths and weakness of Rhoades' appeal in the context of whether to grant the Motion and require the posting of an extraordinary bond, class counsel is inappropriately trying to litigate the merits of the objection twice. First in the District Court and, if unsuccessful in getting an extraordinary bond, again in the Third Circuit. The Court should not allow class counsel to have two bites of the appeal apple.

However, more fundamentally, if the Motion is granted and Rhoades, as a first-time objector, is required to post a bond, class counsel will have succeeded in erecting barriers that chill the ability for any subsequent member of a class to appeal a class action settlement and have their voices heard.  Access to the Courts is an imperative in a nation of laws.  In the context of a class action, the need for absent class members to have unfettered access to the Courts is even more important.  In class actions, class action lawyers litigate cases and sign away the rights of the absent class members.  To now allow class counsel to impose the significant burden of obtaining a bond to include purported increased administrative costs will create new law in the Third Circuit that will severely limit access to the Courts.  Rather than placing onerous burdens upon absent class members, the Court should be concerned that absent class members have a complete opportunity to review and challenge settlements negotiated behind closed doors between class counsel and counsel for the Defendant.

Therefore, for all of these reasons, Rhoades respectfully requests that the Motion be denied.[5]

Respectfully submitted,

/s/ Mark L. Rhoades
Mark L. Rhoades, Esquire (I.D. No. 80641)
*Pro Se*
**RHOADES LLC**
One Liberty Place, 1650 Market Street
36th Floor
Philadelphia, PA  19103
215-496-9002 telephone
rhoades@rhoadesllc.com

Dated:  November 23, 2015

---

[5] If the Court does not deny the Motion on the papers, Rhoades specifically requests the opportunity to cross-examine the representative from the claims administrator, Joel Botzet, who provided a Declaration as to the purported increased costs resulted from the appeal.  From the face of the Declaration and the attached exhibits, there are significant questions regarding the propriety of the claimed expenses.