IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STANFORD GLABERSON, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COMCAST CORPORATION, et al. | : | NO. 03-6604 |

**<u>MEMORANDUM</u>**

**Padova, J.**                                                                                                        **December 3rd 2015**

      Presently pending before the Court is Plaintiffs' Motion for Appeal Bond pursuant to Federal Rule of Appellate Procedure 7. For the reasons that follow, the Motion is granted.

      On September 22, 2015, the Court granted the Motion of the Class to approve the final settlement in this matter (Docket Entry 621) and the Motion for award of attorneys' fees and cost (Docket Entry 615). As part of that decision, the Court overruled the objection of Mark Rhoades, finding that the factual bases for his objection were untrue.[1] (<u>See</u> Docket Entry 640 at 9.) Rhoades filed a Notice of Appeal of our decision on October 21, 2015. (Docket Entry 643.) Shortly thereafter, the Class filed the pending Motion pursuant to Rule 7 to require Rhoades to post an appeal bond in the amount of $28,150, consisting of $550 in direct appeal costs, and $27,600 in administrative costs that the Class asserts the Claims Administrator will reasonably incur during the prosecution of the appeal to maintain the settlement website and toll-free telephone number and to respond to class member inquiries.[2]

---

[1] We found that the factual record presented in support of the Class's Motion for Final Approval belied the Objector's assertions that the "Settlement Credits" misrepresented the true value of the Settlement Fund and that the "Settlement Cash Amount" would be insufficient to pay all cash settlements as well as the requested counsel fees and costs. (Docket Entry 640 at 9.)

[2] The Class has appended to its Motion the October 30, 2015 Declaration of Joel Botzet, a representative of the claims administrator Rust Consulting Inc., asserting that the anticipated monthly costs of maintaining the administration of the settlement fund totals $2,300; thus if the

>Appellate Rule 7 provides in pertinent part:
>
>In a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal.

Fed. R. App. P. 7. The purpose of the bond is to ensure against nonpayment by the appellant of the costs of the appeal should the appeal prove unsuccessful. Adsani v. Miller, 139 F.3d 67, 79 (2d Cir. 1998). The need for an appeal bond and the amount of the bond are within our discretion. See Fed. R. App. P. 7, 1979 advisory committee note ("The amended rule would leave the question of the need for a bond for costs and its amount in the discretion of the court.").

Some of the factors courts use to determine the need for an appeal bond include: (1) the risk that the appellant will not pay the costs if he loses the appeal, see, e.g., In re Initial Pub. Offering Sec. Litig., 728 F. Supp. 2d 289, 292 (S.D.N.Y. 2010) (citing In re AOL Time Warner, Inc. Sec. & ERISA Litig., Civ. A. No. 02-5575, 2007 WL 2741033, at *2 (S.D.N.Y. Sept. 20, 2007)); Fleury v. Richemont N. Am. Inc., Civ. No. 05-4525, 2008 WL 4680033, at *6 (N.D. Cal. Oct. 21, 2008) (citations omitted); (2) the appellant's financial ability to post the bond, In re Initial Pub. Offering, 728 F. Supp. 2d at 292; Fleury, 2008 WL 4680033 at *6 (citing Azizian v. Federated Dep't Stores, Inc., 499 F.3d 960, 961 (9th Cir. 2007); and (3) whether the bond requirement will effectively preclude pursuit of the appeal; In re Diet Drugs Prods. Liab. Litig., MDL 1203, Civ. No. 99-20593, 2000 WL 1665134, at *5 (E.D. Pa. Nov. 6, 2000) (citing Lindsey v. Normet, 405 U.S. 56, 77-79 (1970). See also, Newberg on Class Actions § 14:15 (5th

---

appeal were to take one year to be adjudicated, the estimated cost would be $27,600. (Pl. Mot. Ex. B.) In a footnote at the end of his Response, Rhoades requests the opportunity to cross-examine the representative, asserting that "[f]rom the face of the Declaration and the attached exhibits, there are significant questions regarding the propriety of the claimed expenses." (Resp. at 8 n.5.) Rhoades has not, however, provided a counter-declaration or any other factual matter to make a preliminary factual showing supporting his request and does not specify the "significant questions" to which he alludes.

ed.) (listing as factors (1) appellant's financial ability to post bond, (2) the merits or frivolousness of the appeal, (3) the risk of nonpayment, and (4) whether the appellants have shown bad faith or vexatious conduct, but noting that the tests vary by circuit and that considering the merits of the appeal is "problematic" since "it asks the very court whose decision is being reviewed to weigh in on the quality of its own performance").[3]

Factors used to determine the amount of the bond begin with the items that may be taxed as costs under Federal Rule of Appellate Procedure 39(e). Accordingly, "an appeal bond may include the costs of preparation of and transmission of the record, the costs of obtaining any necessary transcripts, printing costs and other copying costs, premiums or costs for supersedeas bonds or other bonds to secure rights pending appeal, and fees for filing the notice of appeal." In re Nutella Mktg. & Sales Practices Litig., 589 F. App'x 53, 60-61 (3d Cir. 2014) (citing 28

---

[3] While the Third Circuit has implied that the issue of whether an appeal is frivolous may be considered when deciding whether to require an appeal bond, courts are split on the question. Compare In re Nutella Mktg. & Sales Practices Litig., 589 F. App'x 53, 61 (3d Cir. 2014) (stating that the District Court did not abuse its discretion in imposing an appeal bond on the objectors where it "reasoned that an appeal bond was appropriate here because (1) the objectors did not respond in a meaningful way to the plaintiffs' contentions that their appeals were meritless. . ."), Sckolnick v. Harlow, 820 F.2d 13, 15 (1st Cir. 1987) (per curiam) (stating that the district court did not abuse its discretion where its "decision to set the amount at $5,000 implied a view that the appeal might be frivolous and that an award of sanctions against plaintiff on appeal was a real possibility"), and Adsani, 139 F.3d at 73 (stating that the Sckolnick court believed that Rule 7 permitted a bond which sought security to cover possible sanctions imposed under Federal Rule of Appellate Procedure 38 for bringing a frivolous appeal), with In re Diet Drugs Prods. Liab. Litig., 2000 WL 1665134, at *5 ("Rule 7 was not intended to be used as a means of discouraging appeals, even if perceived to be frivolous.") (citing In re Am. President Lines, Inc., 779 F.2d 714, 717 (D.C. Cir. 1985) (denying bond requested because it failed as legitimate means of protecting appellee against possibility that appeal might turn out to be frivolous)), and Dewey v. Volkswagen of Am., Civ. A. No. 07-2249, 2013 WL 3285105, at *2 (D.N.J. Mar. 18, 2013) ("While it is tempting to also consider whether the appeal is frivolous when deciding whether to require a bond, and cases such as Adsani suggest that the potential outcome of the appeal can inform the bond decision, 'the court of appeals is the best forum to litigate the merits of the appeal and to account for any frivolity that harms the [appellees].'" (quoting In re Am. Inv'rs Life Ins. Co. Annuity Mktg. & Sales Practices Litig., 695 F. Supp. 2d 157, 166 (E.D. Pa. 2010) (alteration in original))).

U.S.C. § 1920 and Fed. R. App. P. 39(e)).  Whether an appellee Class may seek to include in the bond the expenses of administering the class action settlement throughout the appeal period is not settled; however, the United States Court of Appeals for the Third Circuit has held that it was not an abuse of the district court's discretion to require that administrative costs be secured by a Rule 7 bond.  Id. at 61.  In Nutella, the settling class had sought an appeal bond in the amount of $42,500, which included $40,000 attributed to the expense of administering the settlement fund over a two-year period.  Id.  The District Court granted the request in part, decreasing the amount of the requested bond from $40,000 to $20,000 "in order to limit the amount of administrative costs related to the settlement fund to a one-year period."  Id.  The Third Circuit found no abuse of discretion in requiring the posting of a bond "[g]iven the fact that the objectors were nonresponsive in their briefing objecting to the imposition of the appeal bond."[4]  Id.  The Court held that the amount of the bond determined by the District Court, which included the administrative costs, was also not an abuse of discretion.  Id.

     The Class's Motion asserts that a bond should be required for several reasons:  (1) Rhoades appears to have the financial ability to post a bond; (2) there is a significant risk of non-payment should his appeal fail since Rhoades has not offered to guarantee payment of costs that may be assessed against him; (3) his written objections were found to be meritless, and he did not appear at the September 9, 2015 final fairness hearing to argue them; and (4) there are no meritorious appellate issues.  Rhoades responds that his objections and his appeal are meritorious since "neither class counsel nor counsel for Comcast will deny that Comcast intends to distribute

---

[4] In addition to the fact that they never responded to the request for the bond, the Court referenced the District Court's observation that the objectors in Nutella were "serial objectors." Nutella, 589 A. App'x at 61.  Rhoades seeks to distinguish Nutella on the ground that he has filed a substantive response and that this is the first time he has objected to a class action settlement.  (Resp. at 2.)  This latter assertion is not challenged by the Class, but we do not find either factor determinative on the issues presented.

[service] credits before issuing payment credits thus depleting the settlement fund before the cash payments are made." (Resp. at 2.) He contends that, were this to happen, "former subscribers will receive nothing." (Id. at 4.) He has provided with his Response a Declaration certifying that he has the ability to pay the costs on appeal, limited to $550, the amount the Class estimates may be taxed under Rule 39(e) for appellate fees and for producing the appellate record. (Resp. Ex. B.)

We find that an appeal bond must be posted. We note, initially, that the factors we consider on the question of the need to post the bond and the amount of the bond are linked. Essentially, Rhoades argues that he need not post a bond because any exposure for costs he may incur is limited to the costs that may be taxed pursuant to Rule 39(e) and does not include the type of administrative costs the Class seeks to secure through the appeal bond. Accordingly, he asserts he has shown through his Declaration that he has the financial ability to pay Rule 39(e) costs, amounting to $550, without the need for a bond. We cannot agree with his underlying premise.

The Nutella decision holds that it is not an abuse of discretion to require an appeal bond that covers the costs to administer the class settlement during the pendency of an appeal. Nutella, 589 F. App'x at 61. We find that including the costs of administering the class settlement in the appeal bond is appropriate under the present circumstances. Out of a class consisting of over 800,000 claimants, only three claimants decided to opt out of the settlement, and the Court received only three objections. Given our previous findings concerning the fairness of the settlement, taking into consideration the relative merits of the surviving Class claims, the substantial risk of obtaining and maintaining class recertification following the Supreme Court's decision vacating certification, and the overwhelming support the settlement

received, we conclude that permitting one lone objector, asserting a cash claim valued at $15, to significantly delay receipt by the other Class members of their settlement benefits — while causing the Class to incur substantial additional costs without some guarantee that those costs, if taxed, will be recoverable — weighs heavily in favor of requiring a bond for the full amount sought by the Class.[5]

We also find that the risk that Rhoades will not pay the costs if he loses the appeal weighs in favor of requiring a bond. Nothing in his Response acknowledges the possibility of significantly greater financial exposure should the administrative costs be assessed against him, and his Declaration does not assert that he has the ability to pay that amount. Rhoades, a practicing attorney, has the apparent financial ability to post the bond, and we find that the bond

---

[5] To the extent that Nutella permits consideration of the merit of the appellate issues, this too would weigh heavily in favor of requiring a bond inclusive of the administrative costs. We note that, in his Response to the Motion, Rhoades argues that his primary concern in filing his Notice of Appeal is his belief that there will be insufficient cash available in the settlement fund to pay cash claims, given that the bulk of the cash fund will be used to pay counsel fees and claims administration expenses. He asserts that the settlement agreement will "allow Comcast to avoid making any cash payments to former subscribers" because "glaringly absent from the settlement agreement is any obligation for Comcast to issue the cash payments and cash credits ***before*** issuing the [service credits component of the settlement fund]." (Resp. at 4 (emphasis in original).) He contends that because Comcast's obligations are capped at $50 million, if the service credits are issued before the cash payments, the settlement fund may be depleted before Comcast issues any cash payments to former subscribers like himself. We have already found that these factual assertions are untrue. (See Docket Entry 640 at 3 (finding that the settlement agreement provides that "[i]f the cash obligations exceed the value of the cash component, Comcast agrees to contribute additional cash to the settlement fund, with the amount of settlement credits for services to current subscribers correspondingly reduced."); id. at 3 n.4 (stating that "[a]ll counsel concur that, in granting Plaintiffs' counsel the full amount of the fees and expenses they request, totaling $15 million, the cash fund would have sufficient resources to satisfy all cash claims that have been made by class members."); id. at 9 (finding that Rhoades's assertion that the cash component will be insufficient to pay all counsel fees and the cash settlement "inaccurate").) These findings of fact are reviewed under a clearly erroneous standard. See, e.g., Sullivan v. DB Invs., Inc., 667 F.3d 273, 329 (3d Cir. 2011) (en banc). Since Rhoades did not appear at the final fairness hearing or create a factual record to support his assertions, any appeal based on them would lack serious merit.

requirement will not effectively preclude his pursuit of the appeal. Accordingly, we grant the Motion of the Class and direct that Rhoades post an appeal bond in the amount of $28,150.

An appropriate Order follows.

BY THE COURT:

/s/John R. Padova

JOHN R. PADOVA, J.