IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STANFORD GLABERSON, et al.     :     CIVIL ACTION
                               :
          v.                   :
                               :
COMCAST CORPORATION, et al.    :     NO. 03-6604

## MEMORANDUM

Padova, J.                                          October 26, 2016

Presently pending before the Court are Motions filed by Co-Lead Counsel for the Plaintiffs' Class, Heins Mills & Olson, P.L.C. ("HMO") and Susman Godfrey L.L.P. ("SG") (collectively "Co-Lead Counsel"). The Motions ask the Court to allocate between the two firms attorneys' fees that the Court previously awarded. Because final resolution of this issue will require the Court to make factual findings, in the Order that will be entered herewith we set a date for an evidentiary hearing. We issue this preliminary Memorandum to discuss legal issues raised in the Motions that are not dependent on factual findings.

**I.     BACKGROUND**

In the Final Judgment entered in this Class Action, we collectively awarded Class Counsel $15 million in attorneys' fees and expenses, and directed Co-Lead Counsel to allocate fees and expenses among those firms that worked for the Class on a "fair, reasonable and transparent basis applying factors courts consider in awarding and allocating fees in class action litigation."  (See ECF No. 642 ¶ 17 ("Final J.").)  We also retained jurisdiction over implementation of the Final Judgment.  (Id. ¶ 18.)  Co-Lead Counsel have fully reimbursed expenses incurred by all class counsel, and have distributed fees to all class counsel other than themselves. The fee distribution was based on the application of the same negative multiplier (.2456) to each plaintiff firm's lodestar.

A dispute has arisen between HMO and SG on how to allocate the balance of the award ($4,664,137.96) between the two firms. HMO seeks to allocate the fees between Co-Lead Counsel based on the same methodology used in distributing fees to all other class counsel, namely, by applying the uniform negative multiplier (.2456) to each Co-Lead Counsel firm's respective lodestar. SG disagrees with HMO's view that a distribution based on the two firms' respective lodestar is appropriate. It asserts that doing so would entitle HMO to receive more than 70 percent of the remaining fee award attributable to the two firms' joint work. It argues that SG and HMO entered into a Cable Cooperation Agreement ("CCA") at the outset of this case that provided they would "each strive to contribute as between themselves equivalent productive time to the Litigation." SG argues that the CCA thus made "equivalent productive time" – not lodestars – the standard for allocating any fee award between the two law firms. It asserts that SG and HMO contributed "equivalent productive time" and made roughly equivalent "contributions" to the success of the case, and the remaining funds should be divided equally between SG and HMO.

We directed the two firms to file formal motions for the allocation of the fees, along with statements of undisputed facts and proposed findings of fact and conclusions of law. Having reviewed the factual submissions, we find that an evidentiary hearing is necessary to resolve the dispute.

**II.     UNDISPUTED FACTS**

1.      On September 22, 2015, we issued a Memorandum and entered a Final Judgment, granting final approval of the settlement of this class action antitrust action. (ECF No. 642, Glaberson v. Comcast Corp., Civ. A. No. 03-6604, 2015 WL 5582251 (E.D. Pa. Sept. 22, 2015).)

2.      We awarded Class Counsel attorneys' fees, costs, and expenses in the amount of $15,000,000, finding the award to be fair and reasonable. (Final J. ¶ 17.) The Final Judgment

provides in part:

> Co-Lead Class Counsel shall allocate the fees and expenses amount among the Plaintiff's counsel on a fair, reasonable and transparent basis applying factors courts consider in awarding and allocating fees in class action litigation, including, for example, the factors set forth in Gunter v. Ridgeway Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000)[1], each firm's contribution to the litigation for the benefit of the Settlement Class, the risks borne by counsel in litigating the case on a contingency basis, leadership and other roles assumed, lodestars, the quality of work performed, contributions made, the magnitude and complexity of assignments executed and the time and effort expended by counsel.

(Id.)

3. We retained jurisdiction "for the purpose of enabling any party to this Final Judgment to apply to the Court at any time for such further orders and directions as may be necessary and appropriate for the carrying out of this Final Judgment." (Id. ¶ 18.)

4. Pursuant to the Final Judgment, Co-Lead Counsel HMO and SG have fully reimbursed expenses incurred by all Class Counsel, including Co-Lead Counsel, and have distributed fees to all other Class Counsel based on the application of the same negative multiplier (.2456) to each plaintiff firm's lodestar. (See June 10, 2016 Decl. of David Woodward in Supp. of Co-Lead Counsel Heins Mills & Olson, P.L.C.'s Mot. for Order Approving Allocation of Remainder of Att'ys' Fee Award Between Co-Lead Counsel Based on the Same Methodology Applied to All

---

[1] In Gunter, the United States Court of Appeals for the Third Circuit stated that, in common fund cases where the attorneys' fees and the clients' award come from the same source,

> district courts should consider several factors in setting a fee award. Among other things, these factors include: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

Id. at 195 n.1 (citing In re Prudential Ins. Co. of Am. Sales Practices Litig., 148 F.3d 283, 336-40 (3d Cir. 1998); In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litig., 55 F.3d 768, 819-22 (3d Cir. 1995); Moore's Federal Practice, Manual for Complex Litigation (Third) § 24.121 at 207 (1997).

Class Counsel ¶ 2 & Ex. 1, ECF Nos. 661, 661-1 ("Woodward June Decl.").)

5. None of the other Class Counsel firms have raised any concerns or objections to the distributions of expenses, or to the allocation of attorneys' fees based on application of the same negative multiplier (.2456) to each plaintiff firm's lodestar. (HMO's Mem. at 1, ECF No. 660-1.)

6. The remaining amount of undistributed attorneys' fees awarded by the Court is $4,664,137.96.

7. From the inception of the case through December 31, 2015, HMO devoted 33,561.75 hours to the litigation, resulting in a lodestar amount of $13,331,895. (Woodward June Decl. Ex. 1, ECF No. 661-1.) For the same time period, SG reported spending 11,851.56 hours for a total lodestar of $5,660,187. (Id.) Of the total combined hours Co-Lead Counsel incurred in representing the class (45,413.31 hours), HMO's time (33,561.75 hours) represents 73.90%, and SG's time (11,851.56 hours) represents 26.10%.

8. The total hours reported by all plaintiff firms in prosecuting this litigation through December 31, 2015, is 62,858.68. (Id.)

9. Of the total collective time incurred by all Class Counsel (62,858.68 hours) on behalf of the class, HMO's work comprises 53.39% of all work on behalf of the class and SG's work comprises 18.85%.

10. In moving for an award of attorneys' fees and reimbursement of expenses, Co-Lead Counsel jointly represented to the Court that all work of Co-Lead Counsel was reasonable and beneficial to the class. (See Jan. 12, 2015 Decl. of David Woodward in Supp. of Pl.'s Appl. for Award of Att'ys' Fees, Reimbursement of Expenses and Payment of Service Award to Class Representative ¶¶ 47-54, ECF No. 615-2 ("Woodward Jan. Decl.").)

11. HMO has moved the Court for an order allocating the remaining attorneys' fees

($4,664,137.96) between Co-Lead Counsel based on the same methodology used, upon the agreement of Co-Lead Counsel, in distributing fees to all other Class Counsel. Specifically, HMO moves to apply the identical negative multiplier (.245583289) to each Co-Lead Counsel firm's respective lodestar amount. (HMO's Mot., ECF No. 660.) Under this methodology, HMO would receive an allocation from the remaining undistributed attorneys' fees of $3,274,090.62,[2] and SG would receive an allocation from the remaining undistributed attorneys' fees of $1,390,047.34.[3]

12.     SG has moved the Court for an order allocating the remaining undistributed attorneys' fees on a "50/50" basis as between Co-Lead Counsel. (SG's Mot., ECF No. 662.) Under SG's proposal, HMO and SG would each receive $2,332,068.98. SG's proposal would result in SG receiving an allocation reflecting a negative multiplier of approximately .41, and HMO receiving a negative multiplier of approximately .17.

13.     Based upon the summaries of time and lodestar submitted to the Court in support of Co-Lead Counsel's request for an award of attorneys' fees and expenses (see Woodward Jan. Decl. at Ex. A; Jan. 12, 2015 Decl. of Barry Barnett ("Barnett Jan. Decl.") at Ex. A, both filed at ECF No. 615-5), the blended average hourly rate for HMO's attorneys is $446.64 and the blended average hourly rate for SG attorneys is $519.97. SG's lodestar therefore reflects average attorney rates 16.4% higher than HMO's average attorney rates.

14.     Based upon the summaries of time and lodestar submitted to the Court in support of Co-Lead Counsel's request for an award of attorneys' fees and expenses (see id.), SG's average hourly rate for attorney and non-attorney time incurred in this case is $477.85, which is 21%

---

[2] HMO's total lodestar of $13,331,895 multiplied by the .245583289 multiplier equals $3,274,090.62.

[3] SG's total lodestar of $5,660,187 multiplied by the .245583289 multiplier equals $1,390,047.34.

higher than the average attorney and non-attorney rate of $394.82 for HMO. SG's firm's lodestar therefore reflects average overall hourly rates 21% above HMO's firm's overall hourly rates.

15. Before filing the complaints that initiated this litigation, Samuel D. Heins of HMO, discussed with Barry Barnett of SG the possibility of cooperating and coordinating between their firms and other plaintiff firms in the organization and prosecution of this litigation. (June 30, 2016 Decl. of Samuel D. Heins ¶ 2, ECF No. 667 ("Heins Decl.").)

16. On April 9, 2003, Mr. Barnett emailed Mr. Heins a draft of the CCA. (Id. ¶ 3 & Ex. 1, ECF Nos. 667, 667-1.) Barnett stated in his email that "I think [the Agreement] reflects the gist of our intentions about how we're going to handle cable antitrust." (Id., Ex. 1.)

17. Mr. Barnett's draft CCA included a provision that any attorneys' fees that may be awarded in the litigation would be divided on a 50/50 basis. (Id. ¶ 4 & Ex. 1 ¶ 5 ("Class Counsel shall divide any fees that (a) are payable to Class Counsel and (b) result from pursuit of Class Claims against the defendants in this Litigation ("Counsel Fees") so that HMO receives fifty percent (50%) and SG receives fifty percent (50%) of any Counsel Fees.").)

18. This version of the Agreement was never executed. (Heins Decl. ¶ 5.)

19. The provision in Mr. Barnett's draft CCA addressing the division of any fees that might be awarded by the Court was never agreed upon and was deleted from the executed CCA. (Id. ¶ 6.)

20. The CCA agreed to and executed by HMO and SG provides: "SG and HMO shall each strive to contribute as between themselves equivalent productive time to the Litigation." (Id. ¶ 8 & Ex. 2 ¶ 5 (ECF No. 667-2).)

21. Neither HMO nor SG disclosed the CCA to any Plaintiff or the class. Neither HMO nor SG obtained the consent of any Plaintiff or the class to the CCA.

## III.  DISCUSSION

In their individual Statements of Fact and other submissions, Co-Lead Counsel dispute the meaning of the CCA, the application of the CCA to the fee dispute that has arisen between them, and the proper method by which the remainder of the class fees should be distributed.  SG argues that the fee dispute "boils down to a question of whether or not the firms complied with their commitment, before the filing of the litigation, to 'strive to contribute as between themselves equivalent productive time to the Litigation.'"  ECF No. 662 at 7 (quoting CCA ¶ 5). SG argues that the Final Judgment, wherein we charged Co-Lead Counsel with allocating fees "on a fair, reasonable and transparent basis applying factors courts consider in awarding and allocating fees in class action litigation," mandated that fees need not simply be distributed mathematically as a ratio of firms' respective lodestars, but rather required a multi-variable consideration of "each firm's contribution to the litigation for the benefit of the Settlement Class, the risks borne by counsel in litigating the case on a contingency basis, leadership and other roles assumed, lodestars, the quality of work performed, contributions made, the magnitude and complexity of assignments executed and the time and effort expended by counsel."  (Final J. ¶ 17.4.)  SG argues that the "productive time" requirement in the CCA represents an important part of any "fair, reasonable and transparent basis" for allocating the fee award as between SG and HMO – the only parties that signed the Agreement.  SG further contends that the firms' leadership roles, the amounts at stake, and other factors also warrant a more qualitative evaluation of their respective contributions.

HMO rejects SG's argument, noting that there was no agreement between the firms addressing the division of a potential fee award.  HMO argues that, while Mr. Barnett's first draft of the CCA included a provision that awarded fees be divided on an equal basis, it is undisputed that the provision was unacceptable to and rejected by HMO and, consequently, it was deleted

7

from the executed version of the CCA. HMO argues further that the language in Paragraph 5 of the CCA, calling on the firms to "strive to contribute as between themselves equivalent productive time to the Litigation," may not be construed as a fee-splitting term because if any fee sharing agreement had been reached, counsel would have been required by ethical rules to disclose to, and obtain the consent of, the client. See Model Rules of Professional Conduct, Rule 1.5(e) ("A division of a fee between lawyers who are not in the same firm may be made only if: (1) the division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation; (2) the client agrees to the arrangement, including the share each lawyer will receive, and the agreement is confirmed in writing; and (3) the total fee is reasonable."); Pennsylvania Rules of Professional Conduct, Rule 1.5(e); Minnesota Rules of Professional Conduct, Rule 1.5(e); and Texas Disciplinary Rules of Professional Conduct, Rule 1.04(f). See also In re TFT-LCD (Flat Panel) Antitrust Litig., No. M 07-1827 SI, MDL No. 1827, 2013 WL 1365900, at *11 (N.D. Cal. Apr. 3, 2013) (approving fee allocations, rejecting contention by one firm that it had an agreement to split fees 50/50, finding that it had "failed to demonstrate the existence of such an agreement" and noting that "even if an agreement . . . existed, it would likely be unenforceable" because "[b]oth federal law and California law require that any fee-allocation agreement among attorneys that are not members of the same firm be in writing and signed by the clients, and be made in proportion to the services performed and responsibilities assumed") (citations omitted). HMO asserts that it did not disclose any such fee sharing agreement to the named Plaintiffs or the Class, and it is unaware of any such disclosure by SG. It argues that no such disclosure was made or required because there was no fee sharing agreement entered into by Co-Lead Counsel.

     We find that HMO is correct that the CCA cannot be construed as a fee splitting agreement since it was never disclosed to the named Plaintiffs or the Class. See Pennsylvania

Rules of Professional Conduct, Rule 1.5(e) ("A lawyer shall not divide a fee for legal services with another lawyer who is not in the same firm unless: (1) the client is advised of and does not object to the participation of all the lawyers involved"). We also find that HMO is correct that the "equivalent productive time" clause in the CCA cannot be construed as an agreement on the allocation of fees among the firms.

"Unless otherwise specified, a contract's language shall be given its plain and ordinary meaning." Wert v. Manorcare of Carlisle PA, LLC, 124 A.3d 1248, 1259 (Pa. 2015) (citing TruServ Corp. v. Morgan's Tool & Supply Co., 39 A.3d 253, 260 (Pa. 2012)). We find that the ordinary meaning of the "equivalent productive time" term merely set forth the firms' mutual expectations that they would contribute the same level of effort in conducting the litigation. The term cannot reasonably be read to provide for an even allocation of fees if that expectation was not realized in fact. For example, had the two firm's billable hours been roughly equivalent, the tasks assigned to each firm and the appropriate staffing for those tasks could still vary substantially, thus resulting in different lodestar amounts. Conversely, when two cooperating firms' billable hours are not roughly equivalent, there may be legitimate reasons for the variation, notwithstanding the initial intention to provide equivalent productive time to the litigation.

However, our holding that the CCA does not constitute a fee sharing agreement does not mandate that we allocate the fees according to a mathematical ratio of the firms' lodestars. In the Final Judgment we explicitly provided the method by which the total fee award would be allocated among Plaintiffs' counsel, ruling that considerations would include, *inter alia*, each firm's qualitative contribution to the litigation for the benefit of the Settlement Class. (See Final J. ¶ 17 (stating that the Court would consider the risks borne by counsel, their leadership and other roles assumed, lodestars, the quality of work performed, contributions made, the magnitude

9

and complexity of assignments executed and the time and effort expended by counsel.) Accordingly, each firm's qualitative contributions, as well as their respective lodestars, are equally relevant to the allocation of fees to each firm.

The submission of a fee application in a federal court, and the allocation of fees among the attorneys who have provided services, implicates the court's equitable review function. This is especially true when counsel seeks payment from a common fund. See, e.g., Camden I Cond. Ass'n, Inc. v. Dunkle, 946 F.2d 768, 771 (11th Cir. 1991) (explaining that historically the rationale entitling counsel to a percentage of the common fund derives from the equitable power of the court) (citing Internal Imp. Fund Trustees v. Greenough, 105 U.S. 527 (1881) and Central R.R. & Banking Co. v. Pettus, 113 U.S. 116 (1885)). Unfortunately, as noted by the United States Court of Appeals for the Ninth Circuit in In re FPI/Agretech Sec. Litig., 105 F.3d 469, 473 (9th Cir. 1997), "there is very little case law concerning the allocation of attorneys' fees among co-counsel."[4] At least one court has upheld a special master's determination that the same factors that courts use to determine whether to grant fees from a common fund should also be used to assess the allocation among firms when the allocation is disputed *ex post* the court's award. See In re Trans Union Corp. Privacy Litig., Civ. A. No. 00-4729, 2009 WL 4799954, at

---

[4] Most of the reported cases involve a district court's discretion to reject or modify an allocation agreed to among the attorneys. The majority view recognizes the district court's broad discretion when the issue arises in a class action settlement that establishes a common fund. See, e.g., In re Synthroid Marketing Litig., 325 F.3d 974, 977 (7th Cir. 2003) (concluding that an agreement as to fees reached by counsel in a class action is not binding, rather it must be approved by the court); In re Agent Orange Prod. Liab. Litig., 818 F.2d 216, 222-26 (2nd Cir. 1987) (discussing the district court's role as protector of the class interests under Fed. R. Civ. P. 23(e) and its role to assure reasonableness in the awarding of fees in equitable fund cases); Longden v. Sunderman, 979 F.2d 1095, 1103 (5th Cir. 1992) (same, citing In re Agent Orange Prod. Liab. Litig.); Smiley v. Sincoff, 958 F.2d 498, 501-02 (2nd Cir. 1992) (concluding that court may reject an attorneys' fee agreement if it "finds good reason to do so"); Prandini v. National Tea Co., 557 F.2d 1015, 1019 (3rd Cir. 1977) (noting that district court judge correctly rejected fee agreement which divided fees without regard to work performed), *disapproved on other grounds by* Evans v. Jeff D., 475 U.S. 717 (1986). In such cases, the court must provide a "concise but clear explanation" of its reasons. FPI/Agretech, 105 F.3d at 473.

*23 (N.D. Ill. Dec. 9, 2009), *order modified and remanded*, 629 F.3d 741 (7th Cir. 2011) ("Some of the *ex ante* factors . . . appear to remain relevant after all to the *ex post* analysis: risk of nonpayment, quality of performance and amount of work (lodestar). All of these relate to the overarching factor noted above: the extent to which each group of lawyers contributed to the ultimate success of the case. Thus, the analysis below will focus on this question of 'contribution,' with attention paid to additional factors such as relative risk and lodestars.")

      As each firm disputes the other firm's averments concerning their roles in the litigation and the importance of their assignments/contributions to the success of the litigation, an evidentiary hearing is required before a final allocation can be determined. Other than our determinations that the CCA does not control the allocation of fees, and that a mathematical application of a ratio of the firms' lodestars is not mandated, we express no opinion here on the ultimate fee allocation. An appropriate Order follows scheduling the hearing.

                                      BY THE COURT:

                                      /s/ John R. Padova
                                      JOHN R. PADOVA, J.